Zheng "Andy" Liu (S.B. # 279327)
Jingyi Guo (S.B. # 335448)
***Aptum Law***
1660 S Amphlett Blvd Suite 315
San Mateo, CA 94402
Tel.: (650) 475-6289
Fax: (510) 987-8411
Email: Andy.Liu@AptumLaw.us
*Attorneys for Plaintiff Ran Zheng*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAN ZHENG, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH MAROUN JR.; JOSEPH MAROUN SR.; LINYUE LUAN; FREDRICK WILLIAM VOIGTMANN; LAW OFFICE OF FRED VOIGTMANN; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No: _____<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

1

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

Plaintiff Ran Zheng ("Plaintiff") alleges, upon personal knowledge as to Plaintiff's own conducts and experience and on information and belief as to all other matters based on an investigation by counsel, the following for her Complaint against Joseph Maroun Jr. ("Defendant Maroun Jr."), an individual; Joseph Maroun Sr. ("Defendant Maroun Sr.") an individual; Linyue Luan ("Defendant Luan"), an individual; Fredrick William Voigtmann ("Defendant Voigtmann"), an individual; and Law Office of Fred Voigtmann ("Defendant Voigtmann Law Firm"), a professional corporation (collectively, "Defendants"):

## NATURE OF THE ACTION

1.      Plaintiff brings this action against Defendants for their violations of Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), because Defendants, who are not unlicensed security broker-dealers, induced Plaintiff into buying unregistered securities, resulting in Plaintiff's loss.

2.      Defendants induced Plaintiff to buy securities from Azour LLC for $1,000,000. To evade the Exchange Act's registration requirement, Defendants claimed on the contract for selling securities (the "Subscription Agreement"; a true and correct copy of which is attached as **Exhibit A**) that the securities were being sold to persons outside the United States, even though Defendants signed an earlier contract (the "Membership Purchase Agreement," a true and correct copy of which is attached as **Exhibit B**) to purchase these securities on behalf of persons within the United States.

3.      Additionally, Defendants Voigtmann and Voigtmann Law Firm, as well as Maroun Jr. induced and forced, by way of false promises and duress, Plaintiff to cancel a $700,000 obligation Defendants Maroun Sr. and Maroun Sr. owed to Plaintiff under the Membership Purchase Agreement.

4.      Plaintiff also brings this action against Defendants Voigtmann and Voigtmann Law Firm for their professional negligence, breach of fiduciary duties, arising out of Defendants Voigtmann and Voigtmann Law Firm's working against Plaintiff's interest, while representing Plaintiff on the very same legal matter, including sharing Plaintiff's attorney-client privileged documents with Defendant Maroun Jr.'s without Plaintiff's knowledge or consent, assisting Defendant Maroun Jr. to pressure Plaintiff into cancelling a $700,000 obligation, and advising Plaintiff in a million-dollar corporate security transaction without proper knowledge or skills in this area.

## THE PARTIES

### A. Defendants with True Names

5.      Plaintiff Ran Zheng ("Plaintiff") is a proud full-time caretaker of her three children. Plaintiff is a citizen of the People's Republic of China but has obtained conditional residency in the United States. Plaintiff resides in the state of Washington.

6.      Defendant Linyue Luan ("Defendant Luan") is a citizen of California and resides in Rolling Hills Estates, California.

7.      Defendant Joseph J. Maroun ("Defendant Maroun Jr.") is a citizen of California and resides in of Union City, California.

8.      Defendant Joseph M. Maroun ("Defendant Maroun Sr." or "Joe Sr.") is a citizen of California and resides in Union City, California.

9.      Defendant Fredrick Voigtmann ("Defendant Voigtmann") is a citizen of California and resides in Los Angeles County, California.

10.      Defendant Law Office of Fred Voigtmann, P.C. ("Defendant Law Firm"), is a professional corporation with its principal place of business in Woodland Hills,

California.

### B. Doe Defendants

11.     Plaintiff does not presently know the true names and capacities of Defendants DOES 1 through 20, inclusive, and therefore sue these defendants by their fictitious names. Plaintiff will amend this Complaint to assert the true names and capacities of Defendants DOES 1 through 20 when they are ascertained. Plaintiff is informed and believes that each of the factiously named defendants sued as DOES 1 through 20, inclusive, is responsible in some manner for the acts, occurrences, liabilities, matters, and damages alleged herein, whether such acts and occurrences were committed intentionally, negligently, recklessly, or otherwise, and that each said DOE defendant is liable therefore to Plaintiff for the damages Plaintiff is suffered, as set forth in this Complaint.

12.     Each and every Defendants DOES 1 through 20 is, and at all times herein mentioned was, a co-employer, agent, servant, employee, successor, assignee, transferee and/or joint venturerer of each and every other defendant, and in doing the things alleged in this cross-complaint, was acting within the course and scope of such employment, agency, and joint venture and with the consent, permission, and authority of each of the remaining defendants. At all relevant times, defendants, and each of them, did ratify, approve, and consent to the acts and omissions of their respective co-employer, agent, servant, employee, successor, assignee, transferee, and joint venturerer, and did ratify, approve and consent to the acts and omission of the co-employer, agent, servant, employee, successor, assignee, transferee, and joint venturerer of their co-defendants.

### C.     Alter Ego Allegations Against Defendants Voigtmann and Voigtmann Law Firm

13.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned Defendant Voigtmann Law Firm was the alter ego of Defendant Voigtmann, and

DOES 1 through 20, and that there exists, and at all times herein mentioned has existed, a unity of interest and ownership between Defendants Voigtmann and Voigtmann Law Firm such that any individuality and separateness between them ceased to exist.

14.     Defendant Voigtmann established Voigtmann Law Firm. Defendant Voigtmann has been the only President, CEO, CFO, secretary and director of Voigtmann Law Firm. *See* **Exhibit C**.

15.      Plaintiff is informed and believes and thereon alleges that at all times herein mentioned Defendant Voigtmann: (1) used assets of Voigtmann Law Firm for his personal use and otherwise treated assets of the trust as their own, (2) caused assets of Voigtmann Law Firm to be transferred to himself without adequate consideration, (3) authorized the diversion of Voigtmann Law Firm's funds and assets for purposes other than authorized uses, (4) commingled his personal funds and assets with those of Voigtmann Law Firm, (5) failed to adequately capitalize and/or insure Voigtmann Law Firm, (6) diverted assets from Voigtmann Law Firm to him to avoid creditors, and (7) disregarded legal formalities required to adhere to the corporate form, including but not limited to holding corporate meetings, maintaining relevant corporate papers, and conducting corporate accountings.

16.     Plaintiff is informed and believes and thereon alleges that at all times herein that Voigtmann Law Firm is, and at all times herein mentioned was, merely a shell, instrumentality, and conduit through which Defendant Voigtmann carried on his business in the name of the corporation while exercising complete control and dominance over such businesses to such extent that any individuality or separateness between these defendants does not, and at all times herein mentioned did not, exist.

17.     Plaintiff is informed and believes and thereon alleges that Voigtmann Law Firm is, and at all times herein mentioned was, insolvent, uninsured, and entirely lacked

trust assets. Plaintiff further alleges that Defendant Voigtmann entered into business agreements by and through Voigtmann Law Firm solely as a shield to avoid personal liability for her unlawful business activities, and/or use the corporate form as a subterfuge to engage in such activities.

18.     Based on the foregoing, it would be unjust and inequitable to adhere to the fiction of the separate existences of Voigtmann Law Firm as an entity distinct from Defendant Voigtmann and would permit an abuse of the trust privilege.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over the claims asserted in this Complaint (1) for violations of Section 27 of the Exchange Act, 15 U.S.C. § 78aa, (2) under the general federal question statute, 28 U. S. C. §1331, and (2) the diversity jurisdiction statute, 28 U. S. C. §1332.

20.     As mentioned above, Plaintiff is a citizen of the State of Washington, while the Defendants are citizens of the State of California. Thus, complete diversity exists among Plaintiff and all Defendants. The amount-in-controversy is at least $1,000,000, which exceeds $75,000.

21.     This Court has personal jurisdiction over all Defendants. Because all Defendants reside in California.

22.     Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa, and under 28 U.S.C. § 1391 because this District is the place where a substantial part of the liabilities and obligations complained about in this Complaint arose as to all Defendants, where Defendants used the instrumentalities of interstate commerce including wire and mail in connection with the sale of securities by unregistered broker-

dealers and associated persons, where the purchase of the securities were solicited, and to which district Plaintiff sent payments to Defendants Maroun Jr. and Maroun Sr. for the purchase of those securities, and where Plaintiff and Defendants entered into one or more binding contracts that are the subjects of this Complaint. Additionally, Defendants Maroun Jr and Maroun Sr. reside in this district.

## FACTUAL ALLEGATIONS

### I.    *Defendant Luan attempted to solicit Plaintiff to sell Chinese insurance policies without a license*

23.    In or about 2008, Defendant Luan arrived in the San Francisco Bay Area from China to accompany her husband's study.

24.    Defendant Luan first resided in the City of Newark, Alameda County from March 2009 to February 2010. During this time, Defendant Luan became acquainted with Defendants Maroun Jr. and Maroun Sr.

25.    In or about February 2010, Defendant Luan moved to the County of Los Angeles. Having no job and thus no income, Defendant Luan applied for an insurance agent license and began selling life insurance policies to individuals, mostly Chinese nationals, within the State of California, including the Counties of Los Angeles and Alameda. Defendant Luan lost her insurance agent license in December 2019.

26.    Further, at no relevant times, was Defendant Luan licensed to broker stocks or any other type of financial securities. A stock broker (also referred to as an investment advisor) is a person that that makes investment recommendations or conducts securities analysis in return for a fee, as defined in the Investment Advisers Act of 1940.

27.    In or about 2013, Plaintiff was a financial manager working at AVIC Trust Co. Ltd., one of the largest and trust-worthy asset management companies in China.

28.     Around late 2013, Defendant Luan, through a common friend, reached out to Plaintiff to inquire about selling life insurance policies to Chinese nationals and citizens located in the State of California. Plaintiff stated that it was not her expertise to sell Chinese life insurance policies to individuals located in the United States, because the Chinese laws and regulations may prohibit the sales of such policies to non-China citizens.

29.     The conversation did not stop there, however.

## II.   *Defendant Luan's unauthorized practice of law and unauthorized brokerage of sales of securities issued by Defendants Maroun Jr. and Maroun Sr. to Plaintiff*

30.     Seeing an opportunity to make a profit, Defendant Luan asked Plaintiff whether she and her family were interested in immigrating to the United States. Curious about this potential opportunity, Plaintiff asked Defendant Luan how she could help migrate her family to the United States.

31.     Defendant Luan told Plaintiff that she had connections to powerful people in the Unites States and could help Plaintiff's family obtain their permanent residences (which are colloquially referred to as green cards).

32.     Around October 2013, Defendant Luan advocated for Plaintiff to use the EB-5 Immigrant Investor Program ("EB-5") provided by the United States Citizenship and Immigration Services ("USCIS").

33.     Defendant Luan misrepresented that through the EB-5 program, Plaintiff and all her family members would obtain green cards by investing at least $1 million to finance a U.S. business's new commercial enterprise that would employ at least ten American

workers full-time[1].

34.     Defendant Luan misrepresented to Plaintiff that, although there was another much cheaper way to obtain green card through investment by investing only $500,000 (which is often referred to as investment through Regional Center), making an investment through a Regional Center is much more risky and less likely to obtain a permanent green card. Defendant Luan further misrepresented that investing $1 million in a business she designated would give Plaintiff much more control over her $1 million investment.

35.     At no relevant time, was Defendant Luan a licensed immigration attorney, or a credited immigration representative recognized by USCIS.

36.     Defendant Luan, however, volunteered to and did represent Plaintiff in various immigration matters relating to Plaintiff's green card applications. True and correct copies of various emails Defendant Luan sent to Plaintiff promoting the new business with Defendants Maroun Jr. and Maroun Sr. are provided in **Exhibit D**.

37.     In October 2013, Defendant Luan provided legal advice, without a license to practice law, to Plaintiff about the requirements for making a qualifying EB-5 investment and the immigration benefits (e.g., conditional residency at first, then removing the conditions and obtaining permanent residency) a qualifying EB-5 investment would confer on Plaintiff and her immediate family members, the legal requirements for Plaintiff's children to obtain their own permanent residency, different kinds of EB-5 investments, which kinds of EB-5 investment would provide Plaintiff a greater chance of obtaining her

---

[1] After an EB-5 applicant chooses a U.S. business to invest in, they make the capital investment and have an immigration attorney file an I-526 petition with USCIS. The I-526 petition proves, *inter alia*, the applicant invested the required capital into a new commercial enterprise and the enterprise's business plan is credible.
https://www.eb5diligence.com/articles/eb5-process-step-by-step

immigration benefits, and how to remove conditions on her residency, thereby becoming a permanent green card holder of the United States.

38.     After performing a great amount of legal analysis on Plaintiff's investment plans and potential immigrations benefits, Defendant Luan advised Plaintiff to invest $1 million in a franchise business model rather than investing $500,000 through a Regional Center.

39.     More specifically, Defendant Luan counselled Plaintiff on the benefits of a non-Regional Center investment, stating that such investment would provide an easier pathway for Plaintiff to obtain permanent residence in the United States. Defendant Luan further advised Plaintiff that the USCIS would be more convinced of the "authenticity, feasibility, and success rate" of a non-Regional Center investment. (*See* **Exhibit D**; emails entitled "Fwd: 关于特许经营" and "Fwd: About franchising".)

### III.     *Defendants' inducement of Plaintiff to purchase securities from unauthorized brokerage for $1 million*

40.     At no relevant time, were Defendants Luan, Maroun Jr., and Maroun Sr. were licensed security or investment brokers recognized by the United States Security Exchange Commission or the State of California. Despite their lack of proper licenses, Defendants Luan, Maroun Jr., and Maroun Sr. brokered securities transactions involving at least Plaintiff and Azour LLC.

41.     On or about October 31, 2013 Defendant Luan, acting as Plaintiff's EB-5 broker-dealer, contacted Defendant Maroun Jr. on behalf of Plaintiff to inquire about investing in a new business enterprise with Defendants Maroun Jr and Maroun Sr. to create a chain of bagel shops.

42.     Defendants Luan, Maroun Jr., and Maroun Sr. worked together to induce

Plaintiff to invest in the new business enterprise. (*See* **Exhibit D**; emails entitled "FW: EB-5 advice") Defendant Luan strongly advocated for Plaintiff to make a non-Regional Center investment using a franchise business model to join and create a chain of bagel shops named "The Posh Bagel".

43.     The Posh Bagel is one of the oldest bakeries in the Bay Area and was successful until the growth of the bagel shop industry in the region. Defendants Maroun Jr. and Maroun Sr. wanted to expand their bagel enterprise but did not have the financial resources to do so.

44.     Plaintiff offered the financial resources Defendants Maroun Jr. and Maroun Sr. lacked. Defendants Maroun Jr. and Maroun Sr. set out to expand the bagel shop's locations and catering with a $1 million investment from Plaintiff.

45.     As a mother, Plaintiff yearned to immigrate to the United States to provide a better life for her children, herself, and her husband. She would like to invest in a company (which turned out to Azour LLC) to immigrate her family to the United States from China through the EB-5 program.

**IV.    *Defendants structured sham transactions to enable selling their unregistered securities to Plaintiff and yet evade SEC detection***

46.     Before making her $1 million dollar investment, Plaintiff was concerned with primarily two issues:

    a.   the certainty of the immigration benefit (e.g., unconditional Green Cards for her entire family) that this investment would bring about; and

    b.   the risk and return of her investment after she obtains the immigration benefit (e.g., unconditional Green Cards for her entire family).

47.     With respect to Plaintiff's question (a), Defendant Luan provided legal

advice to Plaintiff, without a law license: namely that Plaintiff should invest in Azour LLC, rather than through a Regional Center project, because the former provides a higher degree of "authenticity, feasibility, and success rate." Defendant Luan also provided Plaintiff an analysis of how many employees Azour LLC would hire in its first two years of operations and how this estimated number of employee would prove to the USCIS that Plaintiff and her family's green cards should be approved first and conditions removed later.

48.    With respect to Plaintiff's question (b), Defendants Luan, Maroun Jr. and Maroun Sr. also provided their solution—structuring security transactions in such a way that appears to carry a lower risk to Plaintiff.

49.    To this end, Defendants Luan, Maroun Jr. and Maroun Sr. proposed a buy-back option, namely that Plaintiff would invest $1 million upfront, but at the same time of Plaintiff's making her investment, Defendants Luan, Maroun Jr. and Maroun Sr. would contractually agree to buy back Plaintiff's investment at a later time.

50.    Defendants Luan, Maroun Jr. and Maroun Sr. assured Plaintiff that this simultaneously-sell-and-agree-to-buy-back approach was lawful and legitimate from the perspectives of both immigration law and securities law, because both the Subscription Agreement and the Membership Purchase Agreement, as well as the Green Card through investment paperwork have all been reviewed and approved by relevant lawyers.

51.    Defendants Maroun Jr. and Maroun Sr. also provided Defendant Luan with information about Azour LLC and its members to ease Plaintiff's concerns about her EB-5 investment of $1,000,000 in Azour LLC. Defendants Maroun Jr. and Maroun Sr. encouraged Defendant Luan to broker the security transaction between themselves and Plaintiff, knowing that such a transition would require a licensed security dealer/broker and that Defendant Luan was not so licensed.  (*See* **Exhibit D**; emails entitled "Store design

sketches",  "Fwd: Signature page" email from  Exhibit A in state court verified complaint, and "Fwd: Passport" email).

52.     On or about November 11, 2013, Pacific Time zone (and thus November 11, 2013, Beijing Time zone) to further entice Plaintiff to transfer $1 million quicker, Defendants Maroun Jr. and Maroun Sr. contractually agreed to pay Plaintiff at least $700,000 back. Defendants named this contract "FORMULA FOR CALCULATING PURCHASE PRICE," a true and correct copy of which is attached as **Exhibit E**.

53.     With this "FORMULA FOR CALCULATING PURCHASE PRICE" contract, Defendants Luan, Maroun Jr. and Maroun Sr. urged Plaintiff to make her $1 million investment as soon as possible. Plaintiff obliged.

54.     On or about November 13, 2013, Defendants Maroun Jr. and Maroun Sr. formed Azour LLC as a member-managed California Limited Liability Company. A true and correct copy of Azour's Articles of Organization is attached as **Exhibit F**.

55.     On the same day, Defendants Luan, Maroun Jr. and Maroun Sr. entered into the Subscription Agreement with Plaintiff, selling 50% of Azour LLC's interest for $1 million to Plaintiff. *See* **Exhibit A**.

56.     Also on the same day, Defendants Luan, Maroun Jr. and Maroun Sr. entered into a Membership Purchase Agreement with Plaintiff, agreeing to buy 50% of Azour LLC's interest back from Plaintiff. Membership Purchase Agreement incorporates by reference the terms in the FORMULA FOR CALCULATING PURCHASE PRICE Agreement. *See* **Exhibit B**.

57.      Plaintiff invested a significant portion of her life savings in order to produce the $1 million needed to invest in Azour and achieve her dream of migrating her family to the United States. In fact, Plaintiff had to sell her residence in China to come up with the $1

million investment.

58.     Defendants Maroun Jr and Maroun Sr. assisted Defendant Luan in these securities transactions (e.g., pricing, selling, and buying back) with Plaintiff, by providing banking information, wire transfer information, funding account numbers, regular and as-needed information updates, such financial information related to these securities as return on investment, potential gain, and risk or lack thereof. (*See* **Exhibit D;** emails entitled "Fwd_ 汇款信息" (redact bank account wiring info?), "Fwd: bank account info" (redact bank account wiring info?);  "Checking In" email; "Transfer" email; "bank account update", "2bank account update", "azour statement"; "3bank account update"; "2transfer" )

59.     Some of these securities transactions structured by these Defendants are pure sham transactions conducted for the sole purpose of defrauding the Security and Exchange Commission and evade the security registration requirements. For example, in the Subscription Agreement, Defendants asked Plaintiff to represent to themselves that Plaintiff was purchasing securities in her own account and not for the account or benefit of any U.S. person, which the exact opposite was true.  Defendants knew that Plaintiff purchasing securities for the benefit and account of Defendants Maroun Jr and Maroun Sr., who are U.S. person and had agreed to buy Plaintiff's securities at a guaranteed minimum prices at a later time.

60.     Plaintiff was not aware of the fraudulent nature of these transactions, because she was neither a legal professional or a security professional. Plaintiff simply wanted a lower risk way of obtaining Green Card through investment.  Plaintiff never asked Defendants to structure sham security transactions to reduce her risk; and as it turns out later, these sham transactions are of a much higher risk, not lower risk.

61.     Defendant Luan charged Plaintiff $20,000 for brokering the securities

transactions and providing immigration law advice to Plaintiff in connection with her green card application through investment with Azour LLC.

62.     Defendants Maroun Jr. and Maroun Sr. benefited from working with Defendant Luan to sell Azour LLC's securities to Plaintiff. (See "RE Thanksgiving" email)

63.     In or about December 2013, after receiving Plaintiff's $20,000 commission, Defendants Luan, Maroun Jr. and Maroun Sr.  lost interest in "helping" Plaintiff personally. When Plaintiff began asking these Defendants for follow up legal advice about her EB-5 investment, these Defendants introduced Plaintiff to Defendant Voigtmann and Voigtmann Law Firm. Defendants Luan then quickly cut all ties with Plaintiff.

64.     Defendant Voigtmann was and is a license attorney in the State of California and professed to be an experienced EB-5 immigration attorney. Defendant Voigtmann was the principal attorney of Voigtmann Law Firm.

65.     For $15,000, Defendants Voigtmann and Voigtmann Law Firm agreed to provide legal services to Plaintiff—and Plaintiff only—in connection with her EB-5 immigration investment.  Plaintiff was the client of Defendant Voigtmann, not Defendants Luan, Maroun Jr., or Maroun Sr. As explained below, however, Defendants Voigtmann and Voigtmann Law Firm breached various duties they owed to Plaintiff as a legal service client of theirs.

66.     Having been introduced to Plaintiff by Defendants Luan, Maroun Jr. and Maroun Sr., Defendants Voigtmann and Voigtmann Law Firm have always taken more action more favorable to Defendants Luan, Maroun Jr. and Maroun Sr. than to Plaintiff.

67.     For example, Defendants Voigtmann and Voigtmann Law Firm quickly urged Plaintiff to deposit her $1 million in to Azour's bank account to begin drafting Plaintiff's green card application, even though such a deposit was not required. *See* **Exhibit**

**D;** emails entitled "About the receipt."

## V. Depositing the $1 Million investment in to Azour, LLC

68.     On November 20, 2013, Defendants Maroun Jr., Maroun Sr., and Luan sent sketches of the Posh Bagel stores to Plaintiff. The sketches included diagrams of the design for the storefront and the backroom. Unfortunately, these sketches did not come to fruition. *See* **Exhibit D;** emails entitled "Store Design Sketches."

69.     Over the course of about four months, beginning on or about the end of November 2013 and ending on or about February 2014, as urged by Defendants, Plaintiff deposited her $1 million investment in to Azour by transferring the money from her bank account into Azour's bank account.

70.     Upon receipt of the first $210,000 Plaintiff transferred in to the Azour bank account, Defendant Maroun Jr. stated in his December 12, 2013 email that "Joe Sr. and I would like to thank you for your support and trust in us." Little did Plaintiff know, her trust was misplaced. *See* **Exhibit D;** emails entitled "RE: RE: happy thanksgiving" email.

71.     By February 12, 2014, $1,000,000 (minus some wire transfer fees) of funds for The Posh Bagel were sitting in Azour's bank account. *See* **Exhibit D;** emails "Azour Statement" email.

72.     Azour's bank's bank statement and wire transfer receipts (**Exhibit G**) showing Plaintiff transferred $1,000,000 into various bank accounts designated by Defendants Maroun Jr. and Maroun Sr., and they were in control of Plaintiff's funds.

## VI. Plaintiff's inquiries into Bagel Shop Progress and the Conditional Green Card

73.     The success of the bagel shops, most importantly in regards to hiring 10 full-time American workers, was imperative for Plaintiff's immigration to the United States.

74.     On April 2, 2014, Plaintiff asked Defendant Maroun Jr. about the project's

status, including whether a lease was signed and when the bagel shops would open. Defendant Maroun Jr. replied that he was working on the Castro Valley and Mountain View planned bagel shop locations and he has been "working with Joanna and [Defendants Voigtmann and Voigtmann Law Firm] on all the necessary information needed to keep the EB-5 application moving forward". *See* **Exhibit D**; emails entitled "Hi Joe."

75.     On or about June 19, 2014, Plaintiff again asked the status of the bagel shops to which Defendant Maroun Jr. replies, "I promise you as things unfold I will keep you updated." *See* **Exhibit D**; emails entitled "RE: Reply." Alas, Defendant Maroun Jr. 's promise was empty.

76.     This same day, Plaintiff voiced her concerns to Defendant Maroun Jr. about the delayed submission of her I-526 petition (immigration petition by alien investor) to USCIS to which Defendant Maroun Jr. replied five days later "rest assured you have very competent people working for you". *See* **Exhibit D**; emails entitled "RE: Reply."

77.     On or about June 27, 2014, Plaintiff's immigration attorney filed an I-526 petition (which is also known as a petition for temporary green card through investment).

78.     On July 3, 2014, Plaintiff again inquired with Defendant Maroun Jr. about the status of the bagel shops, to which he replied Defendants Voigtmann and Voigtmann Law Firm "is fully aware of everything we are doing and is comfortable with the progress we have made." *See* **Exhibit D**; emails entitled "Hi Joe."

79.     Based on the promises made by Defendant Maroun Jr., the USCIS approved Plaintiff, granting her with a 2-year conditional green card on or about June 25, 2018.

80.     Because of the subsequent events described in this Complaint, Plaintiff's application for permanent residency has not been approved by the USCIS.

*VII.*   ***Plaintiff's request for proof of 10 full-time U.S. employees and needed for compliance with EB-5 requirements***

81.     Plaintiff made many requests to Defendant Maroun Jr. for updates on the business and the major EB-5 requirement of hired U.S. full-time employees, which Defendant Maroun Jr. ignored.

82.     Due to Defendant Maroun Jr.'s lack of communication, on September 24, 2014, Plaintiff was forced to ask Defendants Voigtmann and Voigtmann Law Firm the status of the bagel shops and number of employees. Surprisingly, Defendants Voigtmann and Voigtmann Law Firm did not know the status of the bagel shops/employees despite this knowledge being imperative for Plaintiff's immigration to be successful. *See* **Exhibit D**; emails entitled "FW_Ran Zheng's I-529".

83.     On or about June 2016, anxious to know the business progress, Plaintiff asked Defendant Maroun Jr. for the 10 full-time U.S. employees W-2 forms.

84.     Plaintiff needed the 10 W-2s to meet the EB-5 requirement of her $1 million investment creating 10 full-time U.S. employed jobs. Defendant Maroun Jr. did not produce the W-2s.

85.     Because of Defendant Maroun Jr.'s lack of response, Plaintiff hired legal counsel to demand the 10 employee W-2s on her behalf.

86.     When Defendant Maroun Jr. finally produced the W-2s, they did not comply with the EB-5 required Comprehensive Business Plan. The 10 W-2s showed that employees earned, on average, $700 for the entire year. Obviously, an employee who is only making $700 a year is not working full-time.

87.     Due to Defendant Maroun Jr.'s failure to properly manage the LLC, Azour did not comply with the EB-5 required Comprehensive Business Plan, making Plaintiff

ineligible for permanent legal residence through the EB-5 program.

## VIII.   *Defendant Voigtmann, Voigtmann Law Firm, and Defendant Maroun Jr. Enticed and Forced Plaintiff to Cancel the Membership Purchase Agreement*

88.     By 2016, Defendants Maroun Jr. and Maroun Sr. had already squandered most of Plaintiff's $1 million investment, by paying themselves high salaries, hiring only minimum wage employees at the bagel shops they opened under Azour, and diverting Azour's assets to themselves without Plaintiff's consent.

89.     Due to Defendants Maroun Jr. and Maroun Sr.' financial misconduct, Azour was going down in flames and there was no real possibility that Azour would be worth anywhere close to $1 million.

90.     Recall that under the Membership Purchase Agreement, Defendants Maroun Jr. and Maroun Sr. agreed to purchase Plaintiff's interest in Azour by December 31, 2018 for at least $700,000. See **Exhibit B**.

91.     To eliminate their obligations under the Membership Purchase Agreement, on or about November 2016, Defendant Maroun Jr. approached Defendant Voigtmann about cancelling they obligations under the Membership Purchase Agreement.

92.     Defendants Maroun Jr. and Maroun Sr.'s excuse was that, without the Membership Purchase Agreement, Azour could sell the bagel shop business to third parties through a lease-to-own agreement (the "Lease-to-Own Agreement," a true and correct copy of which is attached as **Exhibit H**) and salvage at least some of Plaintiff's $1 million investment.

93.     On November 30, 2016, before even seeing the Membership Purchase Agreement between Plaintiff and Defendants Maroun Jr. and Sr., Defendants Voigtmann

and Voigtmann Law Firm already began drafting a cancellation agreement of the Membership Purchase Agreement —at the sole direction of Defendant Maroun Jr.

94.     In fact, Defendants Voigtmann and Voigtmann Law Firm did not see the Membership Purchase Agreement until at least December 2, 2016, nor did they ever ask Plaintiff about the Membership Purchase Agreement. Instead, Defendants Voigtmann and Voigtmann Law Firm blindly followed the instructions of Defendant Maroun Jr. to cancel the Membership Purchase Agreement.

95.     As Plaintiff's immigration attorneys, Defendants Voigtmann and Voigtmann Law Firm did not even ask Defendant Maroun Jr. how the Lease-to-Own Agreement with third parties would be constructed to ensure compliance with Plaintiff's EB-5 permanent residence goal. Neither Defendants Voigtmann and Voigtmann Law Firm nor Plaintiff ever saw the Lease-to-Own Agreement until February 14, 2017, nearly a month after Plaintiff was forced to cancel the Membership Purchase Agreement.

96.     Defendants Voigtmann, Voigtmann Law Firm, and Maroun Jr. knew that obtaining permanent residency in the U.S. was important to Plaintiff and her family, and these defendants used that to their advantage. Defendant Voigtmann and Voigtmann Law Firm told Plaintiff that she had to cancel the Membership Purchase Agreement or sacrifice her goal of immigrating to the United States, but without advising Plaintiff any of her risks and losses, from both an immigration perspective and a business perspective.

97.     In his communications to Plaintiff, Defendants Voigtmann and Voigtmann Law Firm advocated for Defendant Maroun Jr. and Azour, insisting that Plaintiff cancel the Membership Purchase Agreement immediately.

98.     Simultaneously, Defendant Maroun Jr. sent Plaintiff several emails trying to guilt Plaintiff into cancelling the Membership Purchase Agreement.

99.     In response to these rushed requests, Plaintiff made many requests to Defendants Voigtmann and Voigtmann Law Firm asking them to make sure the cancellation would in fact benefit Plaintiff's permanent green card goal. Alarmingly, Plaintiff's requests were ignored.

100.     The more she pleaded for a semblance of information about the lease-to-own agreement, the more Defendants Voigtmann, Voigtmann Law Firm, and Maroun Jr. pushed the threat of a failed immigration on to Plaintiff.

101.     Ignoring his duties as Plaintiff's immigration attorney and her immigration's dependence upon ownership in Azour LLC, Defendants Voigtmann and Voigtmann Law Firm acted as Azour and Defendant Maroun Jr.'s business attorney, advocating against Plaintiff's interests.

102.     In fact, Defendant Voigtmann drafted the cancellation agreement—at the direction of Defendant Maroun Jr.—for the benefit of Defendant Maroun Jr., and Defendant Maroun Sr.

103.     Fearful of the impending failed green card that Defendants Voigtmann, Voigtmann Law Firm, and Maroun Jr. portrayed, on January 18, 2017, Plaintiff was forced to sign an agreement (the "Cancellation Agreement") cancelling the Membership Purchase Agreement. A true and correct copy of the Cancellation Agreement is attached as **Exhibit I**.

104.     Together, through false promise and threats that Plaintiff and her family would not only not receive her permanent residency but also lose her entire $1 million investment, unless Plaintiff immediately cancel the Membership Purchase Agreement, Defendants Voigtmann, Voigtmann Law Firm, and Maroun Jr. induced and pressured Plaintiff to cancel the Membership Purchase Agreement. As a result of this cancellation, Plaintiff lost at least $700,000.

### IX. *Catastrophic effect of the lease-to-own agreement following the cancellation of the Membership Purchase Agreement.*

105. Defendants Voigtmann and Voigtmann Law Firm also failed to advise his client, Plaintiff, about any events and timelines that would be necessitated by the Lease-to-Own Agreement (e.g., the transfer of Azour's assets and employees to the new lessee or owner) before Plaintiff signed Cancellation Agreement.

106. For example, Defendants Voigtmann and Voigtmann Law Firm knew that (1) under the Lease-to-Own Agreement, Azour LLC was to lease the two bagel shop businesses to third parties for three years and at the end of which, in early 2020, the third parties would have ownership of those bagel shops, and (2) as soon as the Lease-to-Own Agreement goes into effect, Plaintiff would have absolute no control over the lessee/owner over how many employees these two bagel shop businesses would hire—a critical requirement under the EB-5 investment program for Plaintiff and her family to obtain permanent residency.

107. The planned sale of the bagel shops in early 2020 was a catastrophic blow to Plaintiff's chance at EB-5 immigration.

108. Although Plaintiff asked on several occasions how and if the Lease-to-Own Agreement would affect her EB-5 immigration, Defendant Voigtmann and Voigtmann Law Firm failed to advise Plaintiff on these immigration issues. Defendant Voigtmann and Voigtmann Law Firm simply dismissed Plaintiff's concerns and kept telling her to sign the Cancellation Agreement.

109. On January 17, 2017, Defendant Maroun Jr. reiterated his plan to sell Azour's assets in an email to Defendants Voigtmann and Voigtmann Law Firm, confirming that the two bagel shop businesses would be sold in early 2020—before Plaintiff could

obtain her unconditional green card.

110.    On January 18, 2017, Defendants Voigtmann and Voigtmann Law Firm told Defendant Maroun Jr. that Plaintiff "must sustain her investment during the conditional period and the business must have created full-time jobs by June 2020 or within a reasonable period of time thereafter. The business must remain under Azour LLC ownership…until she receives her permanent green card (condition removed), which hopefully will be in 2020, but could roll over into 2021." (emphasis added)

111.    Thus, by Defendants Voigtmann and Voigtmann Law Firm's own admission, selling the bagel shop businesses to third parties in the beginning of 2020 would not divest Azour of its ownership of and control over the bagel shop businesses during the requisite time period for Plaintiff to obtain her permanent residency. Thus, executing the Lease-to-Own Agreement dashed any hope that Plaintiff could satisfy her EB-5 program requirements.

112.    Defendants Voigtmann and Voigtmann Law Firm thus should have informed Plaintiff of these important points and advise Plaintiff not to sign the Cancellation Agreement or intervene in the planned lease-to-own Azour's business to third parties. At a minimum, Defendants Voigtmann and Voigtmann Law Firm should have advised Plaintiff to consult a business attorney about the financial impacts of the Cancellation Agreement and advised Plaintiff the immigration impacts of the Lease-to-Own Agreement.

113.    Defendants Voigtmann and Voigtmann Law Firm did neither.

114.    If Plaintiff had the opportunity to leave the Membership Purchase Agreement as it was, she would have gained $700,000.  Signing the Cancellation Agreement caused Plaintiff to lose $700,000 and relieved Defendants Maroun Jr. and Maroun Sr. of their impending $700,000 payment to Plaintiff.

115.    Defendants Voigtmann and Voigtmann Law Firm aided and abetted Defendant Maroun Jr. to cause Plaintiff that financial loss.

116.    Even after Defendants Maroun Jr. and Maroun Sr. unlawfully dissolved Azour, Defendants Voigtmann and Voigtmann Law Firm again requested Plaintiff to hire them to prove to the USCIS that Azour could still potentially hire more employees to satisfy Plaintiff's EB-5 requirements. Without heeding the fact that Azour had already been dissolved, Defendants Voigtmann and Voigtmann Law Firm were simply trying to get the last bit of money from Plaintiff under the disguise of providing legal advice.

117.    In fact, a cursory review reveals that Defendants Voigtmann and Voigtmann Law Firm have been similarly sued by other EB-5 applicants like Plaintiff and paid significant damages. See

**X.    Late Discovery of Defendant Luan, Maroun Jr. and Maroun Sr.'s Misconduct**

118.    Upon conferring with new legal counsel in November 2020, Plaintiff became aware of of Defendant Luan's role as her EB-5 broker-dealer and as her immigration specialist or attorney.

119.    On or about December 1, 2020, Plaintiff was shocked to learn that Defendant Luan was neither a licensed broker-dealer nor a licensed immigration specialist or attorney and that Defendant Luan had only a license to sell insurance policies, but even that license had been lost in 2019.

120.    At the same time, Plaintiff was shocked to learn that Defendants Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm knew that Defendant Luan was never licensed as a security broker-dealer, immigration specialist, or immigration attorney, when they worked with Defendant Luan to facilitate the sale of Azour LLC's securities to Plaintiff and advised Plaintiff on the immigration consequences of this security transaction.

**XI.     *Late Discovery of Defendants Voigtmann and Voigtmann Law Firm's***
***Professional Legal Malpractice***

121.    In or about late April 2021, through the discovery process of another lawsuit, Plaintiff for the first time discovered that Defendants Voigtmann and Voigtmann Law Firm's breached her confidence and duty of care.

122.    For example, Plaintiff for the first time discovered that, on or about January 18, 2017, Defendants Voigtmann and Voigtmann Law Firm forwarded several privileged email communications between Defendants Voigtmann and Voigtmann Law Firm and Plaintiff to Defendant Maroun Jr.

123.    For another example, Plaintiff for the first time discovered that, in or about January 2017, Defendants Voigtmann and Voigtmann Law Firm advised Plaintiff to sign the Cancellation Agreement at the urge of Defendant Maroun Jr.

124.    For a third example, Plaintiff for the first time discovered that, signing the Cancellation Agreement would allow Defendants Maroun Jr. and Maroun Jr. to move forward with the Lese-to-Own Agreement, under which Azour would lose ownership and control of the two bagel shop businesses and Plaintiff would fail to obtain her permanent residency.

125.    In doing these things, Defendants Voigtmann and Voigtmann Law Firm breached their client-attorney relationship with Plaintiff and the duties of confidentiality and care that come with it.

126.    At no relevant time did Plaintiff authorize or consent to Defendant Defendants Voigtmann and Voigtmann Law Firm's use, disclosure, or distribution of her confidential communications with these defendants to a third party.

# FIRST CAUSE OF ACTION

*(Unregistered Broker-Dealer – Violation of Section 15(a) of the Exchange Act Against Defendants Maroun Jr. and Maroun Sr.)*

127.     Plaintiff hereby realleges and incorporates by reference the allegations stated in preceding paragraphs as though fully set forth herein.

128.     Defendants Maroun Jr. and Maroun Sr. acted as brokers in the securities transactions between Plaintiff and Azour LLC.

129.     Defendants Maroun Jr. and Maroun Sr. promoted unregistered broker-dealer Defendant Luan to Plaintiff.

130.     Defendants Maroun Jr. and Maroun Sr. were not registered with the Securities Exchange Commission (SEC) at any time during the transactions.

131.     At all relevant times, Defendants Maroun Jr. and Maroun Sr. were aware that Defendant Luan was also not registered with the Securities Exchange Commission (SEC) at any time during the transactions.

132.     Defendants Maroun Jr. and Maroun Sr. participated in discussions and negotiations between Plaintiff and Azour LLC.

133.     Defendants Maroun Jr. and Maroun Sr. assisted in structuring the securities transaction.

134.     Defendant Maroun Jr. sent various emails through the internet to Plaintiff endorsing Azour LLC and Defendant Luan to induce Plaintiff to purchase securities in Azour LLC.

135.     Defendants Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm assisted in funding the securities transaction.

136.     Defendants Maroun Jr. and Maroun Sr. used wire transfers to complete the sale of securities for several iterations of thousands of dollars, totaling to $1,000,000

transferred from Plaintiff as payment for Plaintiff's securities in Azour LLC.

137.    Defendants Maroun Jr. and Maroun Sr. benefited from the sale of securities in Azour LLC to Plaintiff.

138.    By reason of the foregoing, Defendants Maroun Jr. and  Maroun Sr. have violated Section 15(a) of the Exchange Act.

139.    As a direct and proximate result of Defendant Maroun Jr. and Maroun Sr.'s conduct, Plaintiff has suffered monetary damages in an amount to be proven at trial, in connection with the securities transaction.

## SECOND CAUSE OF ACTION

*(Aiding and Abetting Unregistered Broker-Dealer – Violation of Section 15(a)(1) of the Exchange– Against Defendants Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm)*

140.    Plaintiff hereby realleges and incorporates by reference the allegations stated in preceding paragraphs as though fully set forth herein.

141.    Defendants Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm acted as associated persons of unregistered broker-dealer Defendant Luan.

142.    Defendant Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm worked with unregistered broker-dealer Defendant Luan to effectuate securities transactions.

143.    Defendants Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm promoted unregistered broker-dealer Luan to Plaintiff.

144.    Defendants Maroun Jr. and Maroun Sr. participated in discussions and negotiations between Plaintiff and Azour LLC.

145.    Defendants Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm

assisted in structuring the securities transaction.

146.    Defendants Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm assisted in funding the securities transaction.

147.    Defendant Maroun Jr. and Voigtmann sent various emails through the internet to Plaintiff endorsing Azour LLC and Defendant Luan to induce Plaintiff to purchase securities from Azour LLC.

148.    Defendants Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm were not registered with the SEC at any time during the transactions.

149.    At all relevant times, Defendants Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm, Luan were aware that none of them was registered with the SEC at any time during the transactions.

150.    Defendants Maroun Jr., Maroun Sr., Voigtmann, Voigtmann Law Firm, and Luan were compensated in connection with the securities transactions with Plaintiff.

151.    By reason of the foregoing, Defendants Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm have violated Section 15(a) of the Exchange Act.

152.    As a direct and proximate result of Defendant Maroun Jr., Maroun Sr., Voigtmann, and LOFV's conduct, Plaintiff has suffered monetary damages in an amount to be proven at trial, in connection with the securities transaction.

## THIRD CAUSE OF ACTION

*(Negligence – Unauthorized Practice of Law Against Defendant Luan)*

153.    Plaintiff hereby realleges and incorporates by reference the allegations stated in preceding paragraphs as though fully set forth herein.

154.    At all relevant times, Defendant Luan was not a licensed attorney in the

State of California or any other jurisdiction of the United States.

155.    At all relevant times, Defendant Luan was not a licensed immigration specialist in the State of California or any other jurisdiction of the United States.

156.    From October 2013 to March 2014, Defendant Luan provided legal advice to Plaintiff in at least the area of immigration law, e.g., the EB-5 related immigration law.

157.    For example, Defendant Luan advised Plaintiff on what kinds of investments would qualify Plaintiff under the EB-5 Immigration Program, what are the risks and benefits involved in each kind of EB-5 immigration investments, which kind of EB-5 immigration investments are more trusted and credible to the USCIS and thus more likely to be approved; whether immigration benefits would Plaintiff and her immediate family members received if her EB-5 immigration investment is successful, and what legal documents need to be prepared for her EB-5 immigration investment and her green card applications.

158.    Defendant Luan owed Plaintiff a duty of care not to provide Plaintiff legal advice when Defendant Luan was not a license immigration attorney or specialist.

159.    Defendant Luan breached this duty of care by providing the above-identified legal advice to Plaintiff when Defendant Luan was not a license immigration attorney or specialist.

160.    Defendant Luan breached this duty of care by providing the above-identified legal advice to Plaintiff when Defendant Luan was not a license immigration attorney or specialist.

161.    Defendant Luan violated California Business & Professions Code § 6126 when holding herself out as practicing or entitled to practice immigration law in the State of California when Defendant Luan was not a license immigration attorney or specialist.

162.    The negligent acts and omissions of Defendant Luan was below the standard of care.

163.    Defendant Luan's breach of her duty not to advise on legal matters was a substantial factor in Plaintiff's loss of her $1 million investment, and Plaintiff's failed EB-5 immigration petition tied to this failed investment.

164.    As a direct and proximate result of Defendants' incompetence and professional negligence, Plaintiff has suffered great damages in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION

*(Intentional Interference with Prospective Economic Advantage Against Defendants Voigtmann and Voigtmann Law Firm)*

165.    Plaintiff hereby realleges and incorporates by reference the allegations stated in preceding paragraphs as though fully set forth herein.

166.    Through the Membership Purchase Agreement, Plaintiff had an economic relationship with Defendants Maroun Jr. and Maroun Sr. with the future economic benefit to Plaintiff of at least $700,000.

167.    Defendants Voigtmann and Voigtmann Law Firm knew of the existence of the Membership Purchase Agreement and Plaintiff's economic relationship with Defendants Maroun Jr. and Maroun Sr.

168.    Defendants Voigtmann and Voigtmann Law Firm engaged in wrongful conduct, which disrupted the relationship between Plaintiff and Defendants Maroun Jr. and Maroun Sr. For example, Defendants Voigtmann and Voigtmann Law Firm wrongfully induced and pressured Plaintiff to cancel the Membership Purchase Agreement using Defendants Voigtmann and Voigtmann Law Firm's position as Plaintiff's legal counsel.

169.    As a direct result of Defendants Voigtmann and Voigtmann Law Firm's interference, there was a breach or disruption of Plaintiff's economic relationship with Defendants Maroun Jr. and Maroun Sr.

170.    Because of Defendants Voigtmann and Voigtmann Law Firm's actions, Plaintiff suffered economic harm of at least $700,000, the exact amount of which will be proven at trial.

## FIFTH CAUSE OF ACTION

*(Professional Negligence (Legal Malpractice) – Against Defendants Voigtmann and Voigtmann Law Firm)*

171.    Plaintiff hereby realleges and incorporates by reference the allegations stated in preceding paragraphs as though fully set forth herein.

172.    In December 2013, Plaintiff retained Defendants Voigtmann and Voigtmann Law Firm to provide legal services to Plaintiff in connection with her EB-5 immigration program, thereby establishing an attorney-client relationship between the parties.

173.    As Plaintiff's counsel, Defendants Voigtmann and Voigtmann Law Firm owed a duty of care to Plaintiff, requiring them to exercise the knowledge, skill and ability ordinarily exercised by other similar situated attorneys. Further, as a purported specialist in immigration law, the professional services rendered by Defendants Voigtmann and Voigtmann Law Firm should have been comparable to other immigration law specialists, imposing upon Defendants Voigtmann and Voigtmann Law Firm a higher, specialist standard of care.

174.    Moreover, as Plaintiff's counsel, Voigtmann and Voigtmann Law Firm owed a duty of loyalty to Plaintiff, requiring them to represent Plaintiff's interest without being influenced by their personal or financial interests or the interests of other clients or

third parties; and to keep attorney-client communications confidential. Likewise, Voigtmann and Voigtmann Law Firm also owed a duty of confidentiality to Plaintiff, requiring them not to affirmatively disclose information related to the representation of Plaintiff as their client.

175.    Contrary to these duties, Defendants Voigtmann and Voigtmann Law Firm were professionally negligent in disclosing attorney-client communications between Plaintiff and Voigtmann to Defendant Maroun Jr. and forcing Plaintiff to sign the MPA cancellation agreement under duress, resulting in the loss of $700,000 to Plaintiff and relieving Defendants Maroun Jr. and Maroun Sr. of having to make that $700,000 payment. Moreover, Voigtmann and Voigtmann Law Firm disregarded the fact that the Azour lease-to-own agreement's sale of the business to third parties in early 2020 would result in the sale of the business significantly before Plaintiff would be eligible for a permanent green card, which in turn triggered the failure of Plaintiff's EB-5 immigration petition. As an attorney in general, but particularly as a specialized immigration attorney, Voigtmann should have raised concern over this obvious discrepancy with EB-5 requirements, informed Plaintiff of the discrepancy, advised her on the issue, and advocated for her. Defendants Voigtmann and Voigtmann Law Firm's failure to do so was professionally negligent.

176.    The negligent acts and omissions of Voigtmann and Voigtmann Law Firm were below the standard of care for comparable attorneys who practice in this community, especially attorneys like Voigtmann and Voigtmann Law Firm, who specialize in handling immigration cases. Defendants' professional negligence was a substantial factor in Plaintiff's loss of at least $700,000 in the cancellation of the Membership Purchase Agreement and Plaintiff's failed EB-5 immigration petition tied to her investment in Azour

LLC.

177.    As a direct and proximate result of Defendants' incompetence and professional negligence, Plaintiff has suffered great damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

*(Breach of Fiduciary Duties Against Defendants Voigtmann and Voigtmann Law Firm)*

178.    Plaintiff hereby realleges and incorporates by reference the allegations stated in preceding paragraphs as though fully set forth herein.

179.    A client's retention of a law firm and attorney gives rise to a fiduciary relationship between the parties. The scope of an attorney's fiduciary obligations are determined as a matter of law based on the California Rules of Professional Conduct, together with other statues and general principles relating to other fiduciary relationships. These fiduciary duties include duties of care and loyalty, and an obligation to keep the client informed.

180.    In breach of their fiduciary duties and professional responsibilities to Plaintiff, Defendants Voigtmann and LOFV committed the following wrongful acts and omissions:

    a.  Divulging attorney-client information between Plaintiff and Voigtmann and Voigtmann Law Firm to Defendant Maroun Jr.;

    b.  Being influenced by Voigtmann and Voigtmann Law Firm's personal interests and the interests of Defendants Maroun Jr. and Maroun Sr.;

    c.  Failing to properly inform Plaintiff of his close contacts with Defendant Maroun Jr.;

    d.  Ignoring Plaintiff's constant requests for information regarding her EB-5,

the Membership Purchase Agreement, and the Lease-to-Own Agreement;

   e.   Forcing Plaintiff to sign the MPA cancellation agreement for the benefit of Defendants Maroun Jr. and Maroun Sr.;

   f.   Failing to conduct proper research, analysis, and investigation regarding the sale of the business to third parties and that sale's effect on Plaintiff's EB-5 immigration;

   g.   Failing to inform Plaintiff of the catastrophic effect of the sale of the business to third parties on her EB-5 immigration; and

   h.   Failing to competently advocate for Plaintiff.

181.   As a direct and proximate result of Defendants' various fiduciary breaches, Plaintiffs have suffered damages in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION

*(Rescission - Against Defendants Maroun Jr. and Maroun Sr.)*

182.   Plaintiff hereby realleges and incorporates by reference the allegations stated in preceding paragraphs as though fully set forth herein.

183.   Under California Civil Code § 1689, a party to a contract may rescind the contract in the following cases:

   (1) ***If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party.***

   (2) If the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as

to whom he rescinds.

(3) If the consideration for the obligation of the rescinding party becomes entirely void from any cause.

(4) If the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause.

***(5) If the contract is unlawful for causes which do not appear in its terms or conditions, and the parties are not equally at fault.***

(6) If the public interest will be prejudiced by permitting the contract to stand.

(7) Under the circumstances provided for in Sections 39, 1533, 1566, 1785, 1789, 1930 and 2314 of this code, Section 2470 of the Corporations Code, Sections 331, 338, 359, 447, 1904 and 2030 of the Insurance Code or any other statute providing for rescission.

184.     Under California Corporations Code § 25501.5, a person who purchases a security from or sells a security to a broker-dealer that is required to be licensed and has not, at the time of the sale or purchase, applied for and secured from the commissioner a certificate under Part 3 (commencing with Section 25200), that is in effect at the time of the sale or purchase authorizing that broker-dealer to act in that capacity, ***may bring an action for rescission of the sale or purchase or, if the plaintiff or the defendant no longer owns the security, for damages.***

185.     Plaintiff entered into the Subscription Agreement, the Cancellation Agreement, and the Operating Agreement of Azour by way of duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds,

or of any other party to the contract jointly interested with such party: Defendants Maroun Jr. and Maroun Sr.'s unlawful sales of unregistered securities, Defendant Luan's unauthorized practice of law, Defendants Luan, Maroun Jr. and Maroun Sr. intentionally sending less than full pages of these agreement for signature and represented the incomplete agreements as full agreements and later replaced the original pages of the version signed by Plaintiff with pages that were not seen or review by Plaintiff, Defendant and Voigtmann and Voigtmann Law Firm's professional negligence and duress and Defendants' aiding and abetting of each other's wrongful conduct).

186.    Plaintiff entered into the Subscription Agreement, the Cancellation Agreement, and the Operating Agreement of Azour also as a direct and proximate result of Defendants Maroun Jr. and Maroun Sr.'s unlawful sales of unregistered securities under California Corporations Code § 25501.5.

187.    Thus, the Subscription Agreement, the Cancellation Agreement, and the Operating Agreement, or individually or altogether, should be rescinded.

188.    Alternatively, should the Court determine that Plaintiff no longer owns the securities in Azour, because Defendants illegally dissolved Azour without Plaintff's consent, Defendant should be ordered to pay damages to Plaintiff under at least California Corporations Code § 25501.5.

**EIGHTH CAUSE OF ACTION**

*(Unlicensed Broker-Dealer – Violation of California Corporations Code § 25501.5 Against*

*Defendants Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm)*

189.    Plaintiff hereby realleges and incorporates by reference the allegations stated in preceding paragraphs as though fully set forth herein.

190.     Defendants Maroun Jr. and Maroun Sr. acted as brokers in the securities transactions between Plaintiff and Azour LLC as described in this Complaint.

191.     Defendants Maroun Jr. and Maroun Sr. promoted unlicensed broker-dealer Defendant Luan to Plaintiff.

192.     Defendants Maroun Jr. and Maroun Sr. were unlicensed with the SEC or authorities of the State of California at any time during the transactions.

193.     At all relevant times, Defendants Maroun Jr. and Maroun Sr. were aware that Defendant Luan was also unlicensed with the SEC or authorities of the State of California at any time during the transactions.

194.     Defendants Maroun Jr. and Maroun Sr. participated in discussions and negotiations between Plaintiff and Azour LLC about purchase and sales of securities between these parties.

195.     Defendants Maroun Jr. and Maroun Sr. assisted in structuring the purchase and sales of securities between these parties.

196.     Defendant Maroun Jr. sent various emails through the internet to Plaintiff endorsing Azour LLC and Defendant Luan to induce Plaintiff to purchase securities in Azour LLC.

197.     Defendants Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm assisted in funding the securities transaction.

198.     Defendants Maroun Jr. and Maroun Sr. used wire transfers to complete the sale of securities for several iterations of thousands of dollars, totaling to $1,000,000 transferred from Plaintiff as payment for Plaintiff's securities in Azour LLC.

199.     Defendants Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm benefited from the sale of securities in Azour LLC to Plaintiff.

200.    By reason of the foregoing, Defendants Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm have violated California Corporations Code § 25501.5 and California Code of Civil Procedure § 101293.8.

201.    As a direct and proximate result of Defendants Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm's conduct, Plaintiff has suffered monetary damages in an amount to be proven at trial, in connection with the securities transaction.


### NINTH CAUSE OF ACTION

*(Aiding and Abetting Unregistered Broker-Dealer – Violation of California Corporations Code § 25501.5 – Against Defendants Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm)*

202.    Plaintiff hereby realleges and incorporates by reference the allegations stated in preceding paragraphs as though fully set forth herein.

203.    Defendants Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm acted as associated persons of unlicensed broker-dealer Defendant Luan.

204.    Defendant Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm worked with unlicensed broker-dealer Defendant Luan to effectuate securities transactions.

205.    Defendants Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm promoted unlicensed broker-dealer Luan to Plaintiff.

206.    Defendants Maroun Jr. and Maroun Sr. participated in discussions and negotiations between Plaintiff and Azour LLC.

207.    Defendants Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm assisted in structuring the securities transaction.

208.    Defendants Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm assisted in funding the securities transaction.

209.   Defendant Maroun Jr. and Voigtmann sent various emails through the internet to Plaintiff endorsing Azour LLC and Defendant Luan to induce Plaintiff to purchase securities from Azour LLC.

210.   Defendants Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm were not unlicensed with the SEC or authorities of the State of California at any time during the transactions.

211.   At all relevant times, Defendants Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm, Luan were aware that none of them was registered with the SEC or authorities of the State of California at any time during the transactions.

212.   Defendants Maroun Jr., Maroun Sr., Voigtmann, Voigtmann Law Firm, and Luan were compensated in connection with the securities transactions with Plaintiff.

213.   By reason of the foregoing, Defendants Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm have violated California Corporations Code § 25501.5 and California Code of Civil Procedure § 101293.8.

214.   As a direct and proximate result of Defendant Maroun Jr., Maroun Sr., Voigtmann, and Voigtmann Law Firm's conduct, Plaintiff has suffered monetary damages in an amount to be proven at trial, in connection with the securities transaction.

## PRAYER FOR RELIEF

Wherefore, Plaintiff pray for judgment against Defendants, and each of them, as set forth more particularly below:

1.   For actual and compensatory damages in an amount to be proven at trial;

2.   For restitution and disgorgement by Defendants of all ill-gotten gains, profits, and benefits, and imposition of a constructive trust regarding such monies;

3.  For damages against each Defendant according to proof a trial;

4.  For punitive and exemplary damages on such claims and in such amounts

    permitted by law;

5.  For costs of suit herein;

6.  For pre- and post-judgment interest on any amounts awarded; and

7.  For such other and further relief and the court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.


Dated:  October 8, 2021                    Respectfully submitted,


By  _____
    Zheng "Andy" Liu
    Attorney for Plaintiff Ran Zheng

# EXHIBIT A

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

## AZOUR LLC
## SUBSCRIPTION AGREEMENT

Azour LLC
33333 Western Ave
Union City, CA 94587

To Whom It May Concern:

1. **Subscription.** The undersigned (the "Investor") hereby subscribes for and agrees to purchase 50% percentage interest (the "Interests") in Azour LLC (the "Company") with a capital commitment in the amount of One Million United States Dollars (US$ 1,000,000), which subscription is accepted by all the members of the Company (the "Members"), as evidenced by their signatures hereto. The Investor further acknowledges that it will be bound by all the terms and provisions of the Operating Agreement of the Company (as amended from time to time, the "Operating Agreement") with respect to the Interests.

2. **Representations and Warranties of the Investor.** To induce the Company to accept this subscription, the Investor represents and warrants as follows:

(a)    The Investor has received and reviewed the Operating Agreement of the Company dated as of November 13, 2013. The Investor has obtained all information about the Company which the Investor believes is relevant to the decision to purchase the Interest. The Investor confirms that he, she or it has had the opportunity to ask questions of, and to receive answers from, the Company or an agent or representative of the Company concerning the terms and conditions of the investment and the business and affairs of the Company, and has obtained any additional information necessary to verify such answers.

(b)    The Investor represents that the offer to sell the Interests to the Investor was made to the Investor outside of the United States, and the Investor (i) was, at the time of the offer and will be, at the time of the sale and is now, outside the United States, (ii) has not engaged in or directed any unsolicited offers to purchase the Interests in the United States, (iii) is neither a U.S. Person nor a Distributor (as such terms are defined in Section 902(a) and 902(c), respectively, of Regulation S under the United States federal Securities Act of 1933, as amended (the "Securities Act")), (iv) has purchased the Interests for its own account and not for the account or benefit of any U.S. Person, (v) is or by this Subscription Agreement will become the sole beneficial owner of the Interests and has not pre-arranged any sale with a purchaser in the United States, and (vi) is familiar with and understands the terms and conditions and requirements contained in Regulation S, specifically, without limitation, the Investor understands that the statutory basis for the exemption claimed for the sale of the Interests would not be present if the sale, although in technical compliance with Regulation S, is part of a plan or scheme to evade the registration provisions of the Securities Act.

(c)    The Investor understands that the Interests have not been registered under the Securities Act, the securities laws of any state thereof or the securities laws of any other

jurisdiction, nor is such registration contemplated. The Investor understands and agrees further that the Interests may not be offered, resold, pledged or otherwise transferred unless they have been registered under the Securities Act and any applicable state or other securities laws or unless an exemption from such registration is available. Even if such an exemption is available, the assignability and transferability of the Interests will be governed by the Operating Agreement, which imposes restrictions on transfer. The Investor understands that legends stating that the Interests have not been registered under the Securities Act and any applicable state or other securities laws and setting out or referring to the restrictions on the transferability and resale of the Interests will be placed on all documents evidencing the Interests.

(d) The Investor has the power and authority to execute and deliver this Subscription Agreement, the Operating Agreement and each other document required to be executed and delivered by the Investor by this Subscription Agreement and the Operating Agreement, and the execution and delivery of such agreements and documents and the performance of the Investor's obligations thereunder and the consummation of the transactions contemplated thereby have been duly authorized.

(e) The Investor realizes that this investment involves a high degree of risk. The Investor is able to bear the economic risk of the investment, including the total loss of such investment. The Investor believes, in light of the information provided pursuant to Section 2(a) above and the Investor's investment objectives and financial needs, that investing funds pursuant to the terms of this Agreement is an appropriate and suitable investment for the Investor.

(f) The Investor understands that (i) the Company has engaged legal counsel to represent the Company in connection with the offer and sale of securities contemplated herein, (ii) legal counsel engaged by the Company does not represent the Investor or the Investor's interests, and (iii) the Investor is not relying on legal counsel engaged by the Company. The Investor has had the opportunity to engage, and obtain advice from, the Investor's own legal counsel with respect to the investment contemplated herein.

3. **Tax Information.** The Investor agrees to execute properly and provide to the Company in a timely manner any tax documentation that may be reasonably required by the Company.

4. **Further Representation and Assurances.** The Investor agrees to provide such information and execute and deliver such documents as the Company may reasonably request from time to time to verify the accuracy of the Investor's representations and warranties herein, to comply with any law or regulation to which the Company may be subject, including compliance with anti-money laundering laws and regulations, or for any other reasonable purpose.

5. **Indemnity.** The Investor understands that the information provided herein will be relied upon by the Company for the purpose of determining the eligibility of the Investor to purchase Interests in the Company. The Investor agrees to provide, if requested, any additional information that may reasonably be required to determine the eligibility of the Investor to purchase Interests in the Company. To the fullest extent permitted by law, the Investor agrees to indemnify and hold harmless the Company and each member thereof from and against any loss,

2

704892900v1

damage or liability due to or arising out of a breach of any representation, warranty or agreement of the Investor contained in this Subscription Agreement or in any other document provided by the Investor to the Company or in any agreement (other than the Operating Agreement) executed by the Investor with the Company in connection with the Investor's investment in the Interests. Notwithstanding any provision of this Subscription Agreement, the Investor does not waive any rights granted to it under the Operating Agreement or applicable securities laws.

6.      *Miscellaneous.*  Neither this Subscription Agreement nor any of the Investor's rights or Interests herein or hereunder is transferable or assignable by the Investor without the prior written consent of the other members of the Company. The representations, warranties, covenants, agreements and confirmations made by the Investor in this Subscription Agreement will survive the closing of the transactions contemplated hereby and any investigation made by the Company. This Subscription Agreement may be executed in one or more counterparts, all of which together will constitute one instrument, and will be governed by and construed in accordance with the laws of the State of California.

[*Remainder of Page Intentionally Left Blank*]

IN WITNESS WHEREOF, the undersigned have executed this Subscription Agreement as of November 1, 2013, in _____.

"INVESTOR"

_Juna CHEN RAU_

Acknowledged and accepted by:

"MEMBER"                    "MEMBER"

_Joseph M. Maroun_          _Joseph J. Maroun_

Amur LLC Subscription Agreement.docx                    4

## EXHIBIT C

### ALLOCATIONS

The Members intend to share in the Company's Profits, Losses, assets, liabilities, and other items if any, including but not limited to distributions upon dissolution of the Company as provided in this Exhibit C.

For the period commencing on the Operation Commencement Date, and ending December 31, 2018, Losses and Profits shall be allocated 50% to Joseph M. Maroun and 50% to Joseph J. Maroun. Thereafter, Profits and Losses shall be allocated 25% to Joseph M. Maroun, 25% to Joseph J. Maroun, and 50% to the Investor.

IN WITNESS WHEREOF, the undersigned have executed this Subscription Agreement as of November ___, 2013, in _____.

"INVESTOR"

_____

Acknowledged and accepted by:

"MEMBER"                                    "MEMBER"

_____        _____
Joseph M. Maroun                          Joseph J. Maroun

# EXHIBIT B

## MEMBERSHIP PURCHASE AGREEMENT

This Membership Purchase Agreement is entered into on November 13, 2013 by and among Joseph M. Maroun and Joseph J. Maroun (collectively, the "Buyers") and Zheng Ran (the "Seller").

WHEREAS, the Seller owns fifty percent (50%) membership interest ("Seller's Interest") in Azour LLC, a California limited liability company (the "Company");

WHEREAS, the business and affairs of the Company are governed by an Operating Agreement dated November 13, 2013 made between the Buyers and the Seller, as the sole members of the Company (the "Operating Agreement").

WHEREAS, the Seller desires to sell and the Buyers desire to purchase the Seller's Interest in accordance with the terms of this Agreement.

NOW, THEREFORE, in consideration of the mutual promises, representations, warranties, and covenants contained in this Agreement, the parties agree as follows:

1.  **Purchase and Sale of Seller's Interest**. Subject to the terms and conditions of this Agreement, the Buyers agree to purchase from the Seller, and the Seller agrees to sell to the Buyers, Seller's Interest in the Company. In consideration thereof, the Buyers agree to pay to the Seller at the Closing, a purchase price equal to an amount calculated according to the formula set forth in Exhibit A of this Agreement ("Purchase Price") by wire transfer of immediately available funds in accordance with written instructions delivered by Seller to Buyers no less than ten (10) days before the Closing.

2.  **Closing**. The closing of the transactions contemplated by this Agreement (the "Closing") shall take place on December 31, 2018 or such other date as the parties may designate by written agreement between them (the "Closing Date"). At the Closing, the Seller shall deliver to the Buyers the Assignment of the Membership Interest in the form attached as Exhibit B and the Buyers shall deliver to the Seller the Purchase Price as provided in Article 1 of this Agreement.

3.  **Representations and Warranties of the Seller**. The Seller represents and warrants to the Buyers as of the date of this Agreement and as of the Closing that:

    (a)  The Seller has full power and authority to execute and deliver this Agreement and to perform Seller's obligations thereunder, and that this Agreement constitutes the valid and legally binding obligation of the Seller, enforceable in accordance with its terms and conditions.

    (b)  Neither the execution and delivery of this Agreement nor the consummation of the transactions contemplated by it will constitute a default under or require any notice under any agreement other than the Operating Agreement to which the Seller is a party or by which the Seller is bound.

(c)    The Seller holds of record, and owns beneficially, the Seller's Interest, free and clear of any restrictions on transfer (other than any restrictions under the Operating Agreement or applicable law), taxes, security interests, options, warrants, purchase rights, contracts, commitments, equities, claims, or demands.

4.    **Representations and Warranties of the Buyers**.  The Buyers, jointly and severally make the following representations and warranties for the benefit of the Seller:

(a)    Each of the Buyers has full power and authority to execute and deliver this Agreement and to perform his obligations thereunder, and that this Agreement constitutes the valid and legally binding obligation of each of the Buyers, enforceable in accordance with its terms and conditions.

(b)    Neither the execution and delivery of this Agreement nor the consummation of the transactions contemplated thereunder will constitute a default under or require any notice under any agreement to which any of the Buyers is a party or by which any of the Buyers is bound.

5.    **Waiver and Consent**.  The Buyers and the Seller, being all members of the Company, hereby consent to the transfer of Seller's Interest under this Agreement and waive any restrictions on transfer that may exist under the Operating Agreement.

6.    **Taxation**.  The Buyers and the Seller shall each be responsible for its own taxes and fees incurred in connection with this Agreement, including without limitation, all transfer, documentary, sales, use, stamp, registration, value added and other taxes and fees (including any penalties and interest), and, if applicable, the tax imposed against the Seller under the Foreign Investment in Real Property Tax Act ("FIRPTA").  The Seller agrees to complete, sign and deliver any documents that are necessary to determine if she is a foreign person or a non-resident alien pursuant to the FIRPTA, and acknowledges that if the Seller is a foreign person or a non-resident alien, the Buyer or the Company must withhold a tax equal to 10% of the purchase price, unless an exemption applies.

7.    **Indemnity of the Seller**.  The Seller shall indemnify, hold harmless, and defend the Buyers from and against any and all liability arising at any time the Seller owned the Seller's Interest.

8.    **Covenant Not to Compete; Promise of Confidentiality**.  Until December 31, 2023, the Seller shall not, directly or indirectly, compete with the Company in any respect, engage in any business or enterprise offering any products or services identical to, similar to, or competitive with any products or services that have been offered by the Company; or contact, solicit, or attempt to contact or solicit for any purpose, any past or present customer, employee, or supplier of the Company.  Further, at all times the Seller shall not use or disclose any intellectual

property, trade secrets or information, knowledge, or data relating in any way to the past or present business affairs, conditions, customers, efforts, employees, operations, practices, products, processes, properties, sales, or services of or relating in any way to the Company in whatever form. The Seller expressly agrees and acknowledges that a loss arising from a breach of any provision under this Article 7 may not be reasonably and equitably compensate by money damages. Therefore, the Seller agrees that in the case of any such breach, the Company shall be entitled to injunctive and other equitable relief to prevent the Seller from engaging in any prohibited activity, which relief shall be cumulative in addition to any and all other additional remedies that the Company may be entitled to at law or in equity. If any court of competent jurisdiction shall determine that any part or all of any provision of this Article 7 is unenforceable or invalid due to the scope of the activities restrained or the geographical extent of the restraints, or otherwise, the parties expressly intend, agree, and stipulate that under such circumstances, the provisions of this Article 7 shall be enforceable to the fullest extent and scope permitted by law. The parties also agree to be bound by any judicial modifications to these provisions that any court of competent jurisdiction may make to carry out the intent and purpose of this Article 7.

9. **Entire Agreement**. This Agreement, including any attached exhibits, embodies the entire agreement and understanding of the parties with respect to its subject matter and supersedes all prior discussions, agreements, and undertakings between the parties.

10. **Headings and Exhibits**. All headings in this Agreement are inserted only for convenience and ease of reference and are not to be considered in the construction or interpretation of any provision of this Agreement. All exhibits attached to this Agreement are incorporated in this Agreement and are to be treated as if set forth in this Agreement.

11. **Governing Law**. This Agreement shall be governed by, and construed under, the laws of the State of California, without regard to the laws of California regarding conflict of laws.

12. **Jurisdiction**. All of the Buyers and the Seller hereby consents to the exclusive jurisdiction of the state and federal courts in California in any action on a claim arising out of, under or in connection with this Agreement or the transactions contemplated thereby.

13. **Successors and Assigns**. This Agreement shall be binding on and inure to the benefit of the parties, their respective successors and assigns.

14. **Amendments**. This Agreement may not be amended or modified except in writing signed by the parties.

*[Remainder of Page Intentionally Left Blank]*

ScanD310.JPG

IN WITNESS WHEREOF, each of the undersigned, intending to be legally bound hereby, has duly executed this Membership Purchase Agreement as of the date and year first written above.

"BUYER"
JOSEPH M. MAROUN,

"BUYER"
JOSEPH J. MAROUN

Date: 11-13-13

Date: 11-13-13

"SELLER"
[ ]

Date:

15.

## EXHIBIT A
### FORMULA FOR CALCULATING PURCHASE PRICE

The Purchase Price under Article 1 of the Membership Interest Purchase Agreement shall be calculated in accordance with the following formula:

(a) $700,000, plus (b) one-half of the amount by which the aggregate of the income of Azour allocable to Joseph M. Maround and Joseph J. Maroun over the first five years after the [ * ] exceeds $700,000, calculated on an after-tax basis.

冉峥

ZHENG RAN        Z. R.

11. 12. 2013

# EXHIBIT C

**VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

# State of California
## Secretary of State

**S**

## E-T41926

## FILED

### Statement of Information
**(Domestic Stock and Agricultural Cooperative Corporations)**
**FEES (Filing and Disclosure): $25.00.**
**If this is an amendment, see instructions.**
### IMPORTANT - READ INSTRUCTIONS BEFORE COMPLETING THIS FORM

In the office of the Secretary of State of the State of California

**1. CORPORATE NAME**

LAW OFFICE OF FRED VOIGTMANN, P.C.

21700 OXNARD STREET, SUITE 360
WOODLAND HILLS CA 91367

## Jul - 23  2013

**2. CALIFORNIA CORPORATE NUMBER**   C3416293

This Space For Filing Use Only

**No Change Statement** ( Not applicable if agent address of record is a P.O. Box address. See instructions.)

**3. If there have been any changes** to the information contained in the last Statement of Information filed with the California Secretary of State, or no statement of information has been previously filed, this form must be completed in its entirety.

☐ If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed **to Item 17.**

**Complete Addresses for the Following** (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

| | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 4. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | | | |
| 21700 OXNARD STREET, SUITE 360  WOODLAND HILLS  CA 91367 | | | |
| 5. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | | | |
| 21700 OXNARD STREET, SUITE 360  WOODLAND HILLS  CA 91367 | | | |
| 6. MAILING ADDRESS OF CORPORATION, IF DIFFERENT THAN ITEM 4 | | | |

**Names and Complete Addresses of the Following Officers**  (The corporation must list these three officers.  A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 7. CHIEF EXECUTIVE OFFICER/ | | | | |
| FREDRICK  WILLIAM VOIGTMANN  21700 OXNARD STREET, SUITE 360   WOODLAND HILLS CA  91367 | | | | |
| 8. SECRETARY | | | | |
| FREDRICK WILLIAM  VOIGTMANN  21700 OXNARD STREET, SUITE 360   WOODLAND HILLS   CA 91367 | | | | |
| 9. CHIEF FINANCIAL OFFICER/ | | | | |
| FREDRICK  WILLIAM VOIGTMANN  21700 OXNARD STREET, SUITE 360   WOODLAND HILLS  CA  91367 | | | | |

**Names and Complete Addresses of All Directors, Including Directors Who Are Also Officers**  (The corporation must have at least one director. Attach additional pages, if necessary.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 10. NAME | | | | |
| FREDRICK WILLIAM  VOIGTMANN  21700 OXNARD STREET, SUITE 360   WOODLAND HILLS  CA | | | | |
| 11. NAME | | | | |
| 12. NAME | | | | |

13. NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY:      0

**Agent for Service of Process**  If the agent is an individual, the agent must reside in California and Item 15 must be completed with a California street address, a P.O.Box address is not acceptable.  If the agent is another corporation, the agent must have on file with the California Secretary of S address certificate pursuant to California Corporations Code section 1505 and Item 15 must be left blank.

| | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 14. NAME OF AGENT FOR SERVICE OF PROCESS | | | |
| FREDRICK WILLIAM VOIGTMANN | | | |
| 15. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, **IF AN INDIVIDUAL** | | | |
| 21700 OXNARD STREET, SUITE 360   WOODLAND HILLS  CA  91367 | | | |

**Type of Business**

16. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION
LAW OFFICE

17. BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE CALIFORNIA SECRETARY OF STATE, THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| 07/23/2013 | FREDRICK WILLIAM VOIGTMANN | PRESIDENT | |
|---|---|---|---|
| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |

SI-200 (REV 01/2012)                                                            APPROVED BY SECRETARY OF STATE

**3416293**

**FILED**
in the office of the Secretary of State
of the State of California

## Articles of Incorporation

SEP **1 6** 2011

I

The name of this corporation is <u>LAW OFFICE OF FRED VOIGTMANN, P.C.</u>

II

The purpose of the corporation is to engage in the **Profession** of <u>practice of law</u> and any other lawful activities (other than the banking or trust company business) not prohibited to a corporation engaging in such profession by applicable laws and regulations.

III

This corporation is a professional corporation within the meaning of Part 4, Division 3, Title 1, California Corporations Code.

IV

The name and address in the State of California of this corporation's initial agent for service of process is:

Name <u>Fredrick w. Voigtmann</u>

Address <u>301 N. Canon Drive, Suite 215</u>

City <u>Beverly Hills</u> State <u>California</u> Zip <u>90210</u>

V

This corporation is authorized to issue only one class of shares of stock; and the total number of shares which this corporation is authorized to issue is This corporation is authorized to issue only one class of shares of stock; and the total number of shares which this corporation is authorized to issue is <u>10,000</u>.

Fredrick W. Voigtmann, Incorporator

# EXHIBIT D

**VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

 Gmail

---

## Fwd: 关于特许经营

Fri, Sep 4, 2020 at 12:51 AM

---------- 转发的邮件 ----------
发件人: **Joanna Luan** <joanna.luan@gmail.com>
日期: 2013年11月2日 周六上午7:25
主题: Fwd: 关于特许经营
收件人: <zhengranbeijing@163.com>

---------- 转发的邮件 ----------
发件人: **Joanna Luan**
日期: 2013年10月29日星期二
主题: 关于特许经营
收件人: feichang1990@gmail.com

想循EB-5投资移民管道移民美国的朋友刚开始都会面临到一个问题，就是该选择自主经营项目还是区域中心项目好。不管是自主经营或区域中心，都要符合投资移民的基本三要件：50到100万的投资额，提供资金合法来源证明，和创造十个就业机会。目前自主经营项目约佔投资移民总量的10%，经营模式为自己投资和经营管理。今天就想跟大家谈谈自主经营中的特许经营 (Franchise) 模式，为什麽它会是投资移民的好选择，以下会就特许经营是什麽，和所具备的特点如何满足EB5的要求来做解析。

### 特许经营是什麽?

特许经营 (Franchise) 简单来说就是加入加盟店，是指特许经营权拥有者，以合同约定的形式，允许被特许经营者有偿使用其名称，商标，专有技术，产品及运作管理经验来从事经营活动的商业经营模式。最常见的例子像是加盟麦当劳 (McDonald) 或汉堡王 (Burger King) 等等，对于在国内没有经商经验又不想选择区域中心，或者已经有经营经验但苦于对美国市场不了解的投资人来说，特许经营都是很好的EB-5选择。

### 特许经营的特点如何满足EB-5的要求?

选择直接加盟特许经营有下面几个可以满足EB-5要求的特点：

•可遵从的商业模式：

不论是广告、行销、雇员培训、选址、营运模式都可获得总公司的指导。EB-5自主经营项目要求要亲自参与日常的经营管理，加盟对于没有经营经验的投资者来说，只要遵循总公司的既定方针经营即可，既方便又有保障。

•品牌优势：

加盟的是已经具备全美或全世界知名度的连锁品牌，投资者不会有自创品牌认知度不足的疑虑，投资风险相对来说也较小。

•没有区域限制：

不像区域中心是固定的地点让你选择，特许经营可以自己选择在想要的地方投资开店。

•容易满足创造就业机会的标准：

EB-5自主经营项目，只有I-526批准后两年内直接就业（direct jobs）才被移民局承认。直接就业是指被你的投资确实地创造出来的全职工作，。而特许经营雇用的雇员数每个加盟店都有一定的数额来确保营运目标的达成。

•资金的回收因为风险较低，成功率也提高：

很多投资移民人顾虑投资金额会无法回收，选择特许经营的话，因为是连锁品牌旗下的一员，相对来说营运也较平稳，风险当然大大降低。

•审查通过率大幅提高：

显而易见的，因为已经具有的品牌保障，加上总公司制定的完善营运财务管理计划，完备的交易文件，投资人在申请EB-5审查的时候当然更能说服移民局其投资计划的真实性，可行性和成功率。

**结论**

从上面总结我们可以看到，特许经营做为EB-5自主经营项目中的一项，对外籍投资者有巨大的优势和吸引力，但是选择 好的特许经营项目需要做足功课，我们不可以忽略它可能带来的风险

TRANSLATION BY PLAINTIFF

**Fwd: About franchising**

**RAN ZHENG** <yolanda201469@gmail.com>                                                                Fri, Sep 4, 2020 at 12:51 AM
To: "bjliuzheng@gmail.com" "bjliuzheng@gmail.com>

---------- Forwarded mail ----------
From: **Joanna Luan** <joanna.luan@gmail.com >
Date: Saturday, November 2, 2013 at 7:25 am
Subject: Fwd: About Franchising
Recipient: < zhengranbeijing@163.com >

---------- Forwarded mail----------
From: **Joanna Luan**
Date: Tuesday, October 29, 2013
Subject: About Franchising
Recipient: feichang1990@gmail.com

Friends who want to immigrate to the United States through the EB-5 investment immigration pipeline will face a problem at the beginning, which is whether to choose an
The central project is good. Regardless of whether it is an independent business or a regional center, it must meet the three basic requirements of investment immigration:
Proof of the legal source of funds, and create ten job opportunities. Currently, self-management projects account for about 10% of the total investment immigration, and th
Own investment and management. Today I want to talk to you about the Franchise model in self-management and why it is an investment shift.
A good choice for the people, the following will analyze what franchise is and how its features meet the EB5 requirements.

**What is franchising?**

Franchise (Franchise) simply means joining a franchise store. It refers to the franchise owner who is allowed to be
It is a business model that allows operators to use their names, trademarks, know-how, products, and operational management experience for a fee to engage in business ac
Common examples include joining McDonald or Burger King, etc. For those who have no business experience in China and don't want to
Franchising is a good EB-5 for investors who choose a regional center or who already have business experience but who are not familiar with the US market.
select.

**How do the characteristics of franchising meet the EB-5 requirements?**

Choosing to franchise directly has the following characteristics that can meet the EB-5 requirements:

•Compliant business model:

Regardless of advertising, marketing, employee training, site selection, and business model, you can get the guidance of the head office. EB-5 self-management project re
Participate in daily management and join. For investors without operating experience, they only need to follow the established guidelines of the head office.
Convenient and guaranteed.

•branded advantages:

The franchise is a chain brand that already has a national or global reputation. Investors will not have the doubt of insufficient recognition of their own brand.
The risk is relatively small.

• No regional restrictions:

Unlike the regional center, which is a fixed location for you to choose, the franchise can choose to invest and open a store where you want.

• Easily meet the criteria for job creation:

For EB-5 self-employed projects, only direct jobs within two years of I-526 approval will be recognized by the Immigration Bureau. Direct employment means being
Your investment actually creates a full-time job. The number of employees employed by the franchise has a certain amount for each franchise store to ensure
To achieve the goal.

•Recovery of funds is less risky and the success rate is also improved:

Many investment immigrants worry that the investment amount will not be recovered. If they choose franchising, because they are a member of a chain brand, relatively s
Operations are also relatively stable, and risks are of course greatly reduced.

• Significant increase in review pass rate:

Obviously, because of the brand protection already, coupled with the perfect operational financial management plan formulated by the head office, and complete transactio
When investors apply for EB-5 review, they can certainly convince the USCIS of the authenticity, feasibility and success rate of their investment plans.

**in conclusion**

From the above summary, we can see that franchising, as one of the EB-5 self-management projects, has huge advantages and attractiveness for foreign investors.
Gravity, but choosing a good franchise project requires a lot of homework, and we cannot ignore the risks it may bring



## Fwd: 有关美国投资移民的步骤，时间

Fri, Sep 4, 2020 at 12:50 AM

---------- 转发的邮件 ---------
发件人：**Joanna Luan** <joanna.luan@gmail.com>
日期：2013年11月1日 周五下午7:13
主题：Fwd: 有关美国投资移民的步骤，时间
收件人： <zhengranbeijing@163.com>

The whole process of Investment immigration
-

---

### 5 attachments



**img133.jpg**
903K



**img134.jpg**
1045K

**img135.jpg**
818K





**img136.jpg**
865K



**img137.jpg**
810K

TRANSLATION BY PLAINTIFF

**Fwd: Steps and time for investment immigration in the United States**

**RAN ZHENG** <yolanda201469@gmail.com>                                    Fri, Sep 4, 2020 at 12:50 AM
To: "bjliuzheng@gmail.com" <bjliuzheng@gmail.com>

---------- Forwarded mail ----------
From: **Joanna Luan** <joanna.luan@gmail.com >
Date: Friday, November 1, 2013 at 7:13 pm
Subject: Fwd: Steps and time for investment immigration in the United States
Recipient: < zhengranbeijing@163.com >

T
-

 Gmail

Andy Liu <ajliucheng@gmail.com>

## Fwd: 签字页

RAN ZHENG <zhr04201470@gmail.com>
To: 1353zheng@gmail.com <1353zheng@gmail.com>

Fri, Sep 4, 2020 at 12:59 AM

---------- 转发的邮件 ---------
发件人：**Joanna Luan** <joanna.luan@gmail.com>
日期：2013年11月20日 周三下午2:57
主题：签字页
收件人：zhengranbeijing <zhengranbeijing@163.com>

Dear Ran,

我今天特别忙。上午去银行把钱转给Azure LLC 帐户了，扣了40刀。我的帐户15刀，转给她们25刀，他们收到后我们分别会写收据扫描给你。另外他们也将公司成立的复印件用ups快递给我，因为实在太多了，如果需要我明天收到后先将有你名字的信息拍照微信发你，同时再复印给你邮寄去北京。

我跟老先生沟通了你家人的担心，他说他理解，但是不必担心，他不知道要怎么做才能解除你父亲和奶奶的顾虑。但是他欢迎您父亲来洛杉矶和旧金山考察，我会陪您父亲参观老先生曾经的工厂，厂房还属于他，他仍然有办公室，他的房子和与他家人会面。同时今天我按照老先生给我的信息，尽快完成他的简历。他当老板35年，基本用不上简历这样的东西了。关于老先生的报道：


http://www.lau.edu.lb/news-events/news/archive/bot_secretary_joseph_maroun_re/


http://www.alfusa.org/maroun.htm

他儿子joseph的孩子的报道：
http://www.moreaucatholic.org/s/768/2col.aspx?sid=768&gid=1&pgid=789

律师这边我和他约了时间，也许要到明天下午才能跟他通电话，有什么信息，我及时跟你更新。

祝一切顺利！

林悦

---

**4 attachments**

Articles of organization.pdf
119K

LLC Operating Agreement.pdf
30K

Membership Agreement.pdf
31K

Subscription Agreement.pdf
26K

TRANSLATION BY PLAINTIFF

Andy Liu <bjliuzheng@gmail.com>

**Fwd: Signature page**

**RAN ZHENG** <yolanda201469@gmail.com>                                                                Fri, Sep 4, 2020 at 12:59 AM
To: "bjliuzheng@gmail.com" <bjliuzheng@gmail.com>

---------- Forwarded mail ----------
From: **Joanna Luan** <joanna.luan@gmail.com >
Date: Wednesday, November 20, 2013 at 2:57 pm
Subject: Signature Page
To: zhengranbeijing <zhengranbeijing@163.com >

Dear Ran,

I am very busy today. In the morning, I went to the bank to transfer the money to the Azure LLC account and deducted $40. My account is $15, and I transfer it to them for $25. After they receive it, we will write a receipt and scan it for you. In addition there I also sent a copy of the establishment of the company by UPS, because there are too many, if I need to receive it tomorrow, I will take a photo of the message with your name and send it to you on WeChat, and then copy it to you and mail it to Beijing.

I communicated with the old man about your family's concerns. He said he understands, but don't worry. He doesn't know what to do to relieve your father and grandma's concerns. But he welcomes your father to Los Angeles and San Francisco During the inspection, I will accompany your father to visit the old man's factory. The factory still belongs to him. He still has an office, his house and meets with his family. At the same time, today I follow the information given to me by the old man and finish him Resume. He has been the boss for 35 years and basically doesn't need something like a resume. Reports about the old man:

http://www.lau.edu.lb/news-events/news/archive/bot_secretary_joseph_maroun_re/

http://www.alfusa.org/maroun.htm

Report from his son Joseph's child:
http://www.moreaucatholic.org/s/768/2col.aspx?sid=768&gid=1&pgid=789

I have an appointment with him for the lawyer. Maybe I won't be able to talk to him on the phone until tomorrow afternoon. If I have any information, I will update you in time.

wish all the best!

Lin Yue

**4 attachments**

rticles of organization.pdf
9K

LC Operating Agreement.pdf
K

embership Agreement.pdf
K

ibscription Agreement.pdf
K

**From:**         Joanna Luan
**Sent:**         Fri, 17 Jan 2014 21:09:00 -0800
**To:**           zhengranbeijing
**Subject:**      Re: Amendment

Dear Joseph,

I got it and forward it to Ran, as soon as I recceive it , I will forward it to you.

Regards,

Joanna

Joanna Luan <joanna.luan@gmail.com>于2014年1月17日星期五写道：

> ---------- 转发的邮件 ----------
> 发件人: **joseph maroun** <joemarounjr@gmail.com>
> 日期: 2014年1月17日星期五
> 主题: Amendment
> 收件人: Joanna Luan <joanna.luan@gmail.com>
>
> Hi Joanna,
>
> Please find attached the copy of the amendment to the LLC.  Please have Ran sign the signature page and e-mail it back to me as soon as possible.  Joe Sr. and I have already singed the document.  Once I receive the singed  document from Ran I will have Jeff and Will sign as well.  I will then send you and Ran a copy of the document with all signatures for your records.  We have changed nothing to the original agreement.  The only change is Joe Sr. and I have given up half our shares to bring Jeff and Will on board.  Any questions please let me know.
>
> Thanks,
>
> Joe Jr.
>
>
> --
> *******************************************
> *Joanna Luan*

**From:**        joseph maroun
**Sent:**        Thu, 19 Jun 2014 15:10:50 -0700
**To:**          Yolanda;Joanna Luan;Fredrick Voigtmann
**Subject:**     Re: Reply

Hi Ran,

Welcome to the USA!!!  Please let me know when you are available to come up to Northern CA. I will be out of town from July 29th to August 14th. I spoke to Fred the EB-5 lawyer today and he will file within the coming week.  I have provided all the necessary info and we are in good shape according to Fred.  Fred also told me that you will be meeting with him as well.  I hope you feel confident after the meeting.  Please let me know your feelings after the meeting.

Castro Valley Location:

1.  Tenants are due to vacate the property on July 1st.
2.  Two weeks ago we entered in to a contract with a construction company to do the drawings and permitting.  If all goes well with the city and permitting process we should have the location open by September.

Mountain View Location:

1.  The site is still under construction and we hope to take possession of a vacant building by end of August.
2..  Once the location is turned over to us it will be 6 to 8 weeks for construction.  I hope to have the store operational by October or November at the latest.  Please keep in mind timing of construction depends on the city and the permitting process.

I hope you enjoy you stay in the USA.  Please keep in mind that Fred is on top of your case and has been very committed to make sure you will achieve your goals.  Thank you for your confidence in the Maroun family and Joanna who is a very honest and caring Lady.  Any questions please let me know.

All the best,
Joseph Maroun Jr.

On Thu, Jun 19, 2014 at 12:31 AM, Yolanda <zhengranbeijing@163.com> wrote:
   hi,Joseph,
   You are all well? We have just arrived in Los angeles, everything is strange.
   you have already submitted materials I-526? How to progress in our restaurant? Completed the decoration?

I also arranged no time to see you, placed the new family needs to spend a lot of time and effort, but expect to meet with you。

Best regards!
Ran

Sent from my iPhone

On Apr 3, 2014, at 4:04 PM, joseph maroun <joemarounjr@gmail.com> wrote:


Hi Ran,

Your English is very good.  Doing business in the states is a bit different than China.  I want you to remember that we respect your investment and we want to find locations that will be the most profitable.  With that said, it takes some time to find the right location and we want to make sure the business will be successful.  This is important for the EB-5 process as well.  I know we have not had the opportunity to meet face to face and now you have a visa, you might want to consider coming to the states for a meeting.  I ask you to be patient and let us do our job.  Your investment will allow us to open two POSSIBLY three stores depending on the location.  Please if you have any question e-mail me.  Joanna cannot give you the answers you require concerning the status of the business only I can.  I promise you as things unfold I will keep you updated.
All the best,
Joseph Maroun Jr.

| | |
|---|---|
| **From:** | Joanna Luan |
| **Sent:** | Fri, 1 Nov 2013 19:20:39 -0700 |
| **To:** | zhengranbeijing@163.com |
| **Subject:** | Fwd: FW: EB-5 advice |

---------- 转发的邮件 ----------

发件人：**joseph maroun**

日期：2013年10月31日星期四

主题：Fwd: FW: EB-5 advice

收件人：Joanna Luan <joanna.luan@gmail.com>

Hi Joanna,

Please read the thread of e-mails below.  I will give you a call after 2:00pm tomorrow to discuss the e-mail.  Please let me know if you will be available to chat.

Thanks,

Joseph

---------- Forwarded message ----------

From: **Shoesmith, Thomas M.** <thomas.shoesmith@pillsburylaw.com>

Date: Thu, Oct 31, 2013 at 11:55 AM

Subject: FW: EB-5 advice

To: "joemarounjr@gmail.com" <joemarounjr@gmail.com>, "Fredrick Voigtmann (fred@igvlaw.com)" <fred@igvlaw.com>

Cc: "Bebb, Richard S." <richard.bebb@pillsburylaw.com>

Joe, I took the liberty of reaching out to the son of a very close acquaintance of mine from Shanghai days, Fred Voigtmann. His father, also named Fred, was the Chairman of the board of directors of the Concordia International School Shanghai, on which I served for many years. The son is a leading EB-5 lawyer based in LA. Both father (who is also an immigration lawyer) and son speak Mandarin and spent much of their lives in Taiwan.

Please see the thread below about the threshold concern that I had, which I mentioned on our call the other day. I think it would be a very good idea to have an conference call at your convenience to let Fred introduce himself to you and have a preliminary chat about the EB-5 issues involved.

Fred, please meet Joe Maroun, a long-time client of one of my partners and a seasoned entrepreneur here in the Bay Area.

Joe, if you agree it would be useful to have a call, I will coordinate a time and circulate a dial-in.

**Tom Shoesmith** | Pillsbury Winthrop Shaw Pittman LLP
Partner
2550 Hanover Street | Palo Alto, CA 94304-1114
t 650.233.4553 | c 650.888.2611
tom.shoesmith@pillsburylaw.com | pillsburylaw.com

---

**From:** Fredrick Voigtmann [mailto:fred@igvlaw.com]
**Sent:** Thursday, October 31, 2013 11:38 AM
**To:** Shoesmith, Thomas M.
**Subject:** RE: EB-5 investor

Hi Tom:

You are not off base.

According to the USCIS, the new commercial enterprise must be principally doing business in a targeted employment area ("TEA") in order for the investor to qualify by investing the reduced capital investment amount of $500,000.  Otherwise, the requirement amount is $1 million.

Here is the language from the latest Policy Memo from USCIS (EB-5 Policy Memo, 05/30/2013):

*"For the purpose of the EB-5 Program, a new commercial enterprise is "principally doing business" in the location where it regularly, systematically, and continuously provides goods or services that support job creation. If the new commercial enterprise provides such goods or services in more than one location, it will be deemed to be "principally doing business" in the location that is most significantly related to the job creation. Factors to be considered in making this determination may include, but are not limited to, (1) the location of any jobs directly created by the new commercial*

*enterprise; (2) the location of any expenditure of capital related to the creation of jobs; (3) where the new commercial enterprise conducts its day-to-day operation; and (4) where the new commercial enterprise maintains its assets that are utilized in the creation of jobs. Matter of Izummi, 22 I&N Dec. at 174."*

I would be happy to discuss this with you or with them in greater detail.  Feel free to pass my information on to them.

Thanks,

Fred Voigtmann, Esq.

LAW OFFICE OF FRED VOIGTMANN, P.C.

21700 Oxnard Street, Suite 360

Woodland Hills, CA 91367

Tel: (818) 887-7839

www.igvlaw.com

---

**From:** Shoesmith, Thomas M. [mailto:thomas.shoesmith@pillsburylaw.com]
**Sent:** Thursday, October 31, 2013 10:18 AM
**To:** Fredrick Voigtmann
**Subject:** RE: EB-5 investor

We have a client in the fast-food business who has been approached by a Chinese finder about channeling EB-5 investment money into a new chain of restaurants. There is no Regional Center involved. The Chinese finder says "no problem" putting the principal place of business of the investee company in Location A (say, East Oakland), but hiring people and opening the restaurant in Location B (say, downtown Palo Alto). I am deeply skeptical. Am I off base?

**Tom Shoesmith** | Pillsbury Winthrop Shaw Pittman LLP
Partner
2550 Hanover Street | Palo Alto, CA 94304-1114
t 650.233.4553 | c 650.888.2611
tom.shoesmith@pillsburylaw.com | pillsburylaw.com

**From:**       Joanna Luan
**Sent:**       Fri, 15 Nov 2013 12:28:17 -0800
**To:**         zhengranbeijing
**Subject:**    Fwd: Investor Agreement
**Attachments:** Investor Agreement.pdf


亲爱的, 这张需要签中英文全名, 并尽快扫描回传

---------- Forwarded message ----------
From: **joseph maroun** <joemarounjr@gmail.com>
Date: 2013/11/15
Subject: Investor Agreement
To: Joanna Luan <joanna.luan@gmail.com>


Hi Joanna,

Please find attached the private agreement.  Please have the investor sign and date the document
as soon as possible.  Any questions please let me know.
Thanks,
Joe

**From:**          joseph maroun
**Sent:**          Fri, 3 Jan 2014 14:19:28 -0800
**To:**            ??;Joanna Luan;marounjoesr
**Subject:**       Bank Account Update
**Attachments:**   Bank Account 1.pdf

Hi All,

Happy New year!  Please find attached a copy of the bank account status as of today.  If you have any questions please let me know.

All the Best in the New Year,

Joe Maroun Jr.

**From:**      Joanna Luan
**Sent:**      Wed, 4 Dec 2013 10:23:45 -0800
**To:**        zhengranbeijing
**Subject:**   Fwd: Transfer

---------- 转发的邮件 ----------
发件人：**joseph maroun**
日期：2013年12月4日星期三
主题：Transfer
收件人：Joanna Luan <joanna.luan@gmail.com>

Good Morning Joanna,

The $50,000 has been transferred and is in our account.  Any questions please let me know.
Thank you for your help,

Joe Jr.


--
*******************************************

*Joanna Luan*

10 hillcrest mdws,
Rolling  Hills  Estates, CA 90274

**From:**        joseph maroun
**Sent:**        Thu, 19 Jun 2014 18:44:33 -0700
**To:**           Yolanda;Fredrick Voigtmann
**Subject:**    Re: Reply

Ran,

Ran, when you meet with Fred he will explain the process and that you are not compromised.
 Rest assured you have very competent people working for you.
Thanks,
Joe


On Thu, Jun 19, 2014 at 3:51 PM, Yolanda <zhengranbeijing@163.com> wrote:
> **Hi,Joseph,**
> **Fred reply me for two consecutive times that He will be in "this week", or "next week"**
> **submit the I - 526 material, today he tell you submitted until next week? I and he**
> **promised to submit materials after the time of entering the United States, don't know**
> **why has been delayed delivery date. I fear in the third quarter to submit, the situation is**
> **different。**
>
> **All the best!**
> **Ran**

Sent from my iPhone

On Jun 19, 2014, at 3:10 PM, joseph maroun <joemarounjr@gmail.com> wrote:


Castro Valley Location:

1.  Tenants are due to vacate the property on July 1st.
2.  Two weeks ago we entered in to a contract with a construction company to do
the drawings and permitting.  If all goes well with the city and permitting process
we should have the location open by September.

Mountain View Location:

1.  The site is still under construction and we hope to take possession of a vacant
building by end of August.
2..  Once the location is turned over to us it will be 6 to 8 weeks for construction.
 I hope to have the store operational by October or November at the latest.  Please
keep in mind timing of construction depends on the city and the permitting
process.

I hope you enjoy you stay in the USA.  Please keep in mind that Fred is on top of your case and has been very committed to make sure you will achieve your goals.  Thank you for your confidence in the Maroun family and Joanna who is a very honest and caring Lady.  Any questions please let me know.

**From:**         joseph maroun
**Sent:**          Thu, 12 Dec 2013 08:51:19 -0800
**To:**             郑冉;marounjoesr;Joanna Luan
**Subject:**       Re: Re: happy thanksgiving

Hello Ran,

I apologize for not getting back to you sooner.  Joe Sr. and I would like to thank you for your support and trust in us.  We are very excited about the new project and are working hard and fast to get the new business up and running.  We are currently in negotiations with a restaurant design firm and I have contracted a broker to find the first location.  I have been viewing several locations every week.  We must take our time and find the best location for the business. Currently we are focusing on the Silicon Valley area where there are several large tech companies with a very high concentration of employees.  As we progress I will keep you informed.  Thank you again for believing in us and the concept.  If you have any questions please feel free to e-mail me.

All the Best,
Joe Maroun Jr.


2013/12/10 郑冉 <[zhengranbeijing@163.com](mailto:zhengranbeijing@163.com)>

Hi ,Joe Jr

Today I send 150000 dollars to the AZOUR account, please inform me after the receipt, thank you!

All the best!

Ran ZHENG






郑冉 助理总经理
**[zhengranbeijing@163.com](mailto:zhengranbeijing@163.com)**

**公司名称：中航信托北京财富管理中心**

扫描该二维码，可以将电子名片迅速保存到手机 使用帮助

地址：北京西城区金融大街甲9号金融街中心南楼50
1C(100033)
电话：010-66523696
手机：13910039025
微博：http://weibo.com/onetwostart

At 2013-11-29 14:00:40,"joseph maroun" <joemarounjr@gmail.com> wrote:

Hi Ran,

Thank you for the e-mail.  Joe Sr. and I are looking forward to meeting you.  We are very
excited to start the new business and thank you for your support.

All the best,

Joe Jr.


2013/11/28 郑冉 <zhengranbeijing@163.com>

Hi,i'm Ran ZHENG.

Happy thanksgiving! Very glad to cooperate with you! Hope to meet in China!



郑冉 助理总经理

**zhengranbeijing@163.com**

公司名称：中航信托北京财富管理中心
地址：北京西城区金融大街甲9号金融街中心
南楼501C(100033)
电话：010-66523696
手机：13910039025
微博：http://weibo.com/onetwostart



扫描该二维码，可以将电子名片迅
速保存到手机 使用帮助

**From:** Yolanda
**Sent:** Wed, 27 May 2015 23:16:42 +0800
**To:** joseph maroun
**Subject:** Re: Ribbon Cutting

**Not now, may be at the end of each year. I need to know about the company's operations.**
**Or you can give me some better advice.**
**Thank you !**
**Ran**

发自我的 iPhone

在 May 27, 2015, 10:37 AM, joseph maroun <joemarounjr@gmail.com> 写道:

> Hi Ran,
>
> I do not think at this point in time it would be wise to spend the money for an
> outside company to audit an operation that has just begun operation.  I am a bit
> confused why you would request this?
> Thanks,
> Joe
>
>
> On Tue, May 26, 2015 at 6:01 PM, Yolanda <yolanda201469@gmail.com> wrote:
>> Hi, Joseph
>> **I think our company need an external audit to approve each year expected**
>> **economic goals, how do you think?**
>> **Wish your reply ! Thank you !**
>> **Ran**
>>
>> 发自我的 iPhone
>>
>> 在 Mar 28, 2015, 7:49 AM, joseph maroun <joemarounjr@gmail.com> 写道:
>>
>>
>>> Hi All,
>>>
>>> Please open the attachment.  If you have the time please attend the
>>> Ribbon Cutting that will be hosted by the Castro Valley Chamber of
>>> Commerce for our first Posh location.  Any questions please contact
>>> me at 510-755-6200.
>>>
>>> Thank you all for your support,
>>> Joe Maroun

Posh Bagel

<Ribbon Cutting.pdf>

**From:**       joseph maroun
**Sent:**       Thu, 3 Jul 2014 17:47:37 -0700
**To:**         RAN ZHENG;Joanna Luan;Fredrick Voigtmann;marounjoesr
**Subject:**    Re: Hi Joe


Location #1
20665 Rustic Dr.
Castro Valley, Ca 94546

The tenants will vacate July 15.  Architectural drawings will be completed in two weeks and will
be submitted to the city for approval.  The approval process takes two to four weeks. We are
doing a total remodel of the space so what you see is not what the location is going to look like.
We plan to open by September.  Please keep in mind this does not affect your application status.
 Fred is aware of everything I am doing.

Location #2
1040 Grant Rd.
Mountain View, Ca 94040

The site is still under construction.  The location is the last stall at the end of the shopping center
that is under construction.  This is a prime location.  Next Wednesday I will meet with the
Architect and builder to design a layout.  The site should be turned over to me sometime in
August.  We plan to be open for business early November.

Ran please keep in mind we are working as fast as we can and we are at the mercy of the county
and city for permits.  The most important thing to keep in mind is that your filing is not affected
by any delays.  As stated above Fred is fully aware of everything we are doing and is
comfortable with the progress we have made.  Starting a business in the US is very different than
China.  We need to make sure we comply will every regulation.  If you have any questions
regarding the locations please let me know.  My cell number is 510-755-6200

All the best,
Joe




On Thu, Jul 3, 2014 at 5:08 PM, RAN ZHENG <yolanda201469@gmail.com> wrote:
   My aunt has to go back to China on July 10, we plan to drive back to Los Angeles. It doesn't
   matter, or tell me the address of the two restaurants, we go and see if  pass by.


   2014-07-03 16:35 GMT-07:00 joseph maroun <joemarounjr@gmail.com>:

       Hi Ran,

I wish you could have given me more notice.  Joe Sr. and I will be out of town until
Tuesday.  Would it be possible to reschedule your trip for Thursday of next week?  Please
let me know.
Thanks,
Joe


On Thu, Jul 3, 2014 at 4:20 PM, RAN ZHENG <yolanda201469@gmail.com> wrote:
Hi, Joe,
My family and I are a line of seven people will stay on July 4-5 in San Francisco, I don't
know whether this two days you have time to meet? We really want to see our restaurant.
Looking forward to your reply .
Best wishes!

Ran


2014-04-02 11:21 GMT-07:00 joseph maroun <joemarounjr@gmail.com>:

Hi Ran,

Good to hear from you.  Here is an update on the locations:

1.  We are in the final stages of a lease agreement for the first location located in Castro
Valley California.  I should have the lease agreement by the beginning of next week.
 Once I sign the lease, the landlord will give notice to the current tenant and they will
have 30 days to vacate the building.  I have begun discussions with a contractor who
will remodel and install all the equipment in the new location.  This process should
take about 4 to 5 weeks if all goes well.

2.  We have sent a proposal to another landlord for a site in Mountain View California
(Silicon Valley Area).  The site is brand new and currently under construction.  We
should hear back from them in about two weeks.  This will be our second location and
construction should be completed by June or July if all goes well.  It will take us
another 4 to 5 weeks to install equipment and build the location.

Both locations are great and should do very well.  The goal is to have two locations
operating by the end of the year and have a third location in operation by the first
quarter of 2015.  I have been working with Joanna and the EB-5 lawyer on all the
necessary information needed to keep the EB-5 application moving forward.  So far
everything seems to be going as planned.  I will update you as soon a I sign the lease
on the first location and let you know about the second.  I hear you might be coming to
California to pay us a visit?  I look forward to meeting you in person.  Please if you
have any other questions please let me know.

All the best,
Joe Maroun Jr.


On Wed, Apr 2, 2014 at 8:33 AM, 冉 <zhengranbeijing@163.com> wrote:

How's the project coming along? Are you sign the lease?
and What time can open restaurant？
Wish you good luck and look forward to your reply！

Ran

发自我的 iPhone

**From:**      Yolanda
**Sent:**      Thu, 28 May 2015 11:29:10 +0800
**To:**        joseph maroun
**Subject:**   Re: Ribbon Cutting

OK, that's all right！Thank 有！

发自我的 iPhone

在 May 28, 2015, 9:15 AM, joseph maroun <joemarounjr@gmail.com> 写道:

> Let's wait until the end of the year to discuss this. I am working on the catering
> aspect of the business now and that will generate more sales.
> Thanks,
> Joe
>
> On Wed, May 27, 2015 at 8:16 AM, Yolanda <yolanda201469@gmail.com> wrote:
>> **Not now, may be at the end of each year. I need to know about the company's**
>> **operations. Or you can give me some better advice.**
>> **Thank you！**
>> **Ran**
>>
>> 发自我的 iPhone
>>
>> 在 May 27, 2015, 10:37 AM, joseph maroun <joemarounjr@gmail.com> 写道:
>>
>>> Hi Ran,
>>>
>>> I do not think at this point in time it would be wise to spend the
>>> money for an outside company to audit an operation that has just
>>> begun operation. I am a bit confused why you would request this?
>>> Thanks,
>>> Joe
>>>
>>> On Tue, May 26, 2015 at 6:01 PM, Yolanda
>>> <yolanda201469@gmail.com> wrote:
>>>> Hi, Joseph
>>>> **I think our company need an external audit to approve each**
>>>> **year expected economic goals, how do you think?**
>>>> **Wish your reply！Thank you！**
>>>> **Ran**

发自我的 iPhone

在 Mar 28, 2015, 7:49 AM, joseph maroun
<joemarounjr@gmail.com> 写道：

Hi All,

Please open the attachment.  If you have the time
please attend the Ribbon Cutting that will be hosted by
the Castro Valley Chamber of Commerce for our first
Posh location.  Any questions please contact me at
510-755-6200.

Thank you all for your support,
Joe Maroun
Posh Bagel

<Ribbon Cutting.pdf>

**From:**   Joanna Luan
**Sent:**   Fri, 3 Jan 2014 14:43:58 -0800
**To:**    joseph maroun
**Cc:**    郑冉;marounjoesr
**Subject:**   Re: Bank Account Update

Dear Joseph,

I just finished calling u and got this email. Thank you , I will be back to LA tonight. I will contact u next Monday.

Happy weekends.

Joanna

在 2014年1月3日星期五, joseph maroun 写道：

 Hi All,

 Happy New year!  Please find attached a copy of the bank account status as of today.  If you have any questions please let me know.

 All the Best in the New Year,

 Joe Maroun Jr.


--
*******************************************
*Joanna Luan*

| From: | Joanna Luan |
|---|---|
| **Sent:** | Fri, 17 Jan 2014 20:50:00 -0800 |
| **To:** | zhengranbeijing |
| **Subject:** | Fwd: Amendment |
| **Attachments:** | Amendment.pdf, Amendment 1.pdf |

---------- 转发的邮件 ----------
发件人：**joseph maroun** <joemarounjr@gmail.com>
日期：2014年1月17日星期五
主题：Amendment
收件人：Joanna Luan <joanna.luan@gmail.com>

Hi Joanna,

Please find attached the copy of the amendment to the LLC.  Please have Ran sign the signature page and e-mail it back to me as soon as possible.  Joe Sr. and I have already singed the document.  Once I receive the singed  document from Ran I will have Jeff and Will sign as well.  I will then send you and Ran a copy of the document with all signatures for your records.  We have changed nothing to the original agreement.  The only change is Joe Sr. and I have given up half our shares to bring Jeff and Will on board.  Any questions please let me know.

Thanks,

Joe Jr.

--
*******************************************
*Joanna Luan*

**From:**        Joanna Luan
**Sent:**        Mon, 2 Dec 2013 16:31:09 -0800
**To:**          zhengranbeijing
**Subject:**     Fwd: About the Receipt
**Attachments:** Legal Fee Receipt.pdf

---------- 转发的邮件 ----------
**发件人**: **Fredrick Voigtmann**
**日期**: 2013年12月2日星期一
**主题**: RE: About the Receipt
**收件人**: Joanna Luan <joanna.luan@gmail.com>
**抄送**: Lillian Huang <lillianh310@gmail.com>

Hi Joanna:

Attached please find the receipt.

If you need to ask legal questions, please ask me directly.  If you need to ask questions in Chinese, you can contact my Chinese paralegal in my Arcadia office. Her name is Lillian Huang and her phone number is 626-445-8789.   If you need to reach the person I work with in China, her name is 黄缡宽 Ivy Huang and she can be reached at: M(TW): +886-968763158 M(CN): +86-13301646838 Tel : +86-21-34280845

I prefer that you speak with either me or with Lillian, because Ivy is not familiar with Joe's EB-5 program at all; we can give the best answers here anyway.

Finally, I want to confirm that the investor can transfer the money in one of the following two ways;

1.      Investor transfers all of the funds at once to company or individual in China and then the same company or individual in Hong Kong transfers all of the funds to Investor's Hong Kong personal account; or

2.    Investor transfers funds to individuals in China ($50,000 each), then the individuals send the funds out of China to investor's personal bank account in Hong Kong or the U.S.

If you have any other questions, please contact me or Lillian.

Regards,

Fred Voigtmann, Esq.

LAW OFFICE OF FRED VOIGTMANN, P.C.

21700 Oxnard Street, Suite 360

Woodland Hills, CA 91367

Tel: (818) 887-7839

www.igvlaw.com

**From:** Joanna Luan [mailto:joanna.luan@gmail.com]
**Sent:** Monday, December 02, 2013 1:36 PM
**To:** Fredrick Voigtmann
**Subject:** About the Reciept

Dear Fred,

How is your holiday ? Would you please send me a receipt about the lawyers fee for 15k(write a receipt and then take a picture to me is fine)? I need to forward it to the investor Ran.Also kindly please tell me the paralegal 's contact info in China in case I need to ask him/her some questions in Chinese.

Ran also wants me to confirm with you one more time, if the bank in China doesn't allow her to transfer the money from personal account to The Company's Account here, do you prefer her to transfer the money from HK to the company's account or let her relatives help to transfer the money from different cities.If they are not allowed to transfer the money to company account. Can she transfer the money to Joe, my personal account? Then we do wire transfer to the company's account?

She is going to start transferring when she get the reply from you.

Thanks and Best Wishes,

Joanna

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## *Joanna Luan*

--

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## *Joanna Luan*

10 hillcrest mdws,
Rolling  Hills  Estates, CA 90274

| | |
|---|---|
| **From:** | Joanna Luan |
| **Sent:** | Wed, 20 Nov 2013 19:58:40 -0800 |
| **To:** | zhengranbeijing |
| **Subject:** | Fwd: Store design sketches |
| **Attachments:** | Design 1.PDF, Design 2.PDF |

Dear,

如图，Joe已经开始前面和后台要呈现的效果，这是他自己勾划的草图，然后会跟设计公司沟通，让他们按他的意思电脑合成图。所以一旦开始，就没有办法停下来。我们每进一步都会知会你的。当然你的合理中肯的建议他们也会倾听采纳。

悦悦

---------- Forwarded message ----------
From: <bluecadi@aol.com>
Date: 2013/11/20
Subject: Store design sketches
To: joanna.luan@gmail.com

As per Joe.

**From:**       joseph maroun
**Sent:**       Wed, 2 Apr 2014 11:21:06 -0700
**To:**         冉;Joanna Luan
**Subject:**    Re: Hi Joe

Hi Ran,

Good to hear from you.  Here is an update on the locations:

1.  We are in the final stages of a lease agreement for the first location located in Castro Valley California.  I should have the lease agreement by the beginning of next week.  Once I sign the lease, the landlord will give notice to the current tenant and they will have 30 days to vacate the building.  I have begun discussions with a contractor who will remodel and install all the equipment in the new location.  This process should take about 4 to 5 weeks if all goes well.

2.  We have sent a proposal to another landlord for a site in Mountain View California (Silicon Valley Area).  The site is brand new and currently under construction.  We should hear back from them in about two weeks.  This will be our second location and construction should be completed by June or July if all goes well.  It will take us another 4 to 5 weeks to install equipment and build the location.

Both locations are great and should do very well.  The goal is to have two locations operating by the end of the year and have a third location in operation by the first quarter of 2015.  I have been working with Joanna and the EB-5 lawyer on all the necessary information needed to keep the EB-5 application moving forward.  So far everything seems to be going as planned.  I will update you as soon a I sign the lease on the first location and let you know about the second.  I hear you might be coming to California to pay us a visit?  I look forward to meeting you in person.  Please if you have any other questions please let me know.

All the best,
Joe Maroun Jr.


On Wed, Apr 2, 2014 at 8:33 AM, 冉 <zhengranbeijing@163.com> wrote:

How's the project coming along? Are you sign the lease?
and What time can open restaurant？
Wish you good luck and look forward to your reply！

Ran

发自我的 iPhone

**From:**        joseph maroun
**Sent:**        Wed, 12 Feb 2014 15:03:54 -0800
**To:**          Joanna Luan;??
**Subject:**     Azour Statement
**Attachments:** Azour.pdf


Hi All,

Please find attached the latest bank statement as of today.
Thanks,
Joe

**From:**      Joanna Luan
**Sent:**       Fri, 17 Jan 2014 21:09:00 -0800
**To:**          zhengranbeijing
**Subject:**   Re: Amendment

Dear Joseph,

I got it and forward it to Ran, as soon as I recceive it , I will forward it to you.

Regards,

Joanna

Joanna Luan <joanna.luan@gmail.com>于2014年1月17日星期五写道：

> ---------- 转发的邮件 ----------
> 发件人: **joseph maroun** <joemarounjr@gmail.com>
> 日期: 2014年1月17日星期五
> 主题: Amendment
> 收件人: Joanna Luan <joanna.luan@gmail.com>
>
> Hi Joanna,
>
> Please find attached the copy of the amendment to the LLC.  Please have Ran sign the signature page and e-mail it back to me as soon as possible.  Joe Sr. and I have already singed the document.  Once I receive the singed  document from Ran I will have Jeff and Will sign as well.  I will then send you and Ran a copy of the document with all signatures for your records.  We have changed nothing to the original agreement.  The only change is Joe Sr. and I have given up half our shares to bring Jeff and Will on board.  Any questions please let me know.
>
> Thanks,
>
> Joe Jr.
>
>
> --
> **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
> ***Joanna Luan***

--
************************************
*Joanna Luan*

**From:**        joseph maroun
**Sent:**        Thu, 3 Apr 2014 16:04:14 -0700
**To:**          ??;Joanna Luan;marounjoesr
**Subject:**     Reply

Hi Ran,

Your English is very good.  Doing business in the states is a bit different than China.  I want you to remember that we respect your investment and we want to find locations that will be the most profitable.  With that said, it takes some time to find the right location and we want to make sure the business will be successful.  This is important for the EB-5 process as well.  I know we have not had the opportunity to meet face to face and now you have a visa, you might want to consider coming to the states for a meeting.   I ask you to be patient and let us do our job.  Your investment will allow us to open two POSSIBLY three stores depending on the location.  Please if you have any question e-mail me.  Joanna cannot give you the answers you require concerning the status of the business only I can.  I promise you as things unfold I will keep you updated.
All the best,
Joseph Maroun Jr.

**From:**     joseph maroun
**Sent:**     Thu, 12 Dec 2013 08:51:19 -0800
**To:**     郑冉;marounjoesr;Joanna Luan
**Subject:**     Re: Re: happy thanksgiving

Hello Ran,

I apologize for not getting back to you sooner.  Joe Sr. and I would like to thank you for your support and trust in us.  We are very excited about the new project and are working hard and fast to get the new business up and running.  We are currently in negotiations with a restaurant design firm and I have contracted a broker to find the first location.  I have been viewing several locations every week.  We must take our time and find the best location for the business. Currently we are focusing on the Silicon Valley area where there are several large tech companies with a very high concentration of employees.  As we progress I will keep you informed.  Thank you again for believing in us and the concept.  If you have any questions please feel free to e-mail me.

All the Best,
Joe Maroun Jr.


2013/12/10 郑冉 <[zhengranbeijing@163.com](mailto:zhengranbeijing@163.com)>

Hi ,Joe Jr

Today I send 150000 dollars to the AZOUR account, please inform me after the receipt, thank you!

All the best!

Ran ZHENG






郑冉 助理总经理

**[zhengranbeijing@163.com](mailto:zhengranbeijing@163.com)**

**公司名称：中航信托北京财富管理中心**

扫描该二维码，可以将电子名片迅
速保存到手机 使用帮助

地址：北京西城区金融大街甲9号金融街中心南楼50
1C(100033)
电话：010-66523696
手机：13910039025
微博：http://weibo.com/onetwostart

At 2013-11-29 14:00:40,"joseph maroun" <joemarounjr@gmail.com> wrote:

Hi Ran,

Thank you for the e-mail.  Joe Sr. and I are looking forward to meeting you.  We are very excited to start the new business and thank you for your support.

All the best,

Joe Jr.

2013/11/28 郑冉 <zhengranbeijing@163.com>

Hi,i'm Ran ZHENG.

Happy thanksgiving! Very glad to cooperate with you! Hope to meet in China!



郑冉 助理总经理

**zhengranbeijing@163.com**

公司名称：中航信托北京财富管理中心
地址：北京西城区金融大街甲9号金融街中心
南楼501C(100033)
电话：010-66523696
手机：13910039025
微博：http://weibo.com/onetwostart



扫描该二维码，可以将电子名片迅
速保存到手机 使用帮助

**From:**        joseph maroun
**Sent:**        Wed, 24 Sep 2014 14:48:42 -0700
**To:**          Fredrick Voigtmann;RAN ZHENG;marounjoesr
**Subject:**     Re: FW: Ran Zheng's I-539


Hi All,

Below please find the latest up date on Castro Valley and Mountain View.  Ran I might be repeating myself on some of the info I sent you a couple of weeks ago.  I would like to stress that I am doing everything possible to get the permitting process expedited through Alameda County and Santa Clara County.  But I am at the mercy of their plan check departments.  The goal is to have Castro Valley open in November and Mountain View open in December.  Below is a brief history and an update for both locations.  I will keep you informed if things change for the better or worse.  Any questions please let me know.

All the best,
Joe

Castro Valley:
1.  Tenants were to vacate July 1st.  The tenants decided to stay and go through the legal process of eviction.  They were finally ordered to move out on September 13th.
2.  We have taken possession of the location and we will begin the demolition process this week. We have received the Health Department permit and we are now waiting on the Building Department to OK the permit to begin construction.
3.  All construction bids are in and the General Contractor is ready to begin the remodel once the Building permit is issued which I think will be in the next week or two.
4.  The remodel will take about 4 to 6 weeks.  The goal is to have Castro Valley open by mid November.

Mountain View:

1.  We took possession of the location on August 16th.
2.  Health and Buildings plans were submitted two weeks ago.  I hope to have permits by mid October.
3.  All construction bid are in and the General Contractor is ready to begin construction once permits are received.
4.  Mountain View is a total new construction so there is not much we can do until the permits are received.
5.  If there are no issues with the plans and the city and county issues the permits sometime in October we should be open for business in December.


On Wed, Sep 24, 2014 at 12:57 PM, Fredrick Voigtmann <fred@igvlaw.com> wrote:

Hi Joe:

I hope all is well.  Would be kind enough to provide me and Ran with a brief update on the business progress?


Thanks,


Fred Voigtmann, Esq.

LAW OFFICE OF FRED VOIGTMANN, P.C.

21700 Oxnard Street, Suite 360

Woodland Hills, CA 91367

Tel: (818) 887-7839

www.igvlaw.com

---

**From:** Yolanda [mailto:yolanda201469@gmail.com]
**Sent:** Tuesday, September 23, 2014 9:08 PM
**To:** Fredrick Voigtmann
**Subject:** Re: Ran Zheng's I-539



**Hi,  Fred**

**How are you recently? I think the restrant is open? And now Joseph hired a few people ？**

**If you periodically get the report from Joseph about tax table or the process,   please cc to me? I want to know the business progress,   too,   thank you !**

**Best wishes !**


**Ran**

发自我的 iPhone

| | |
|---|---|
| **From:** | Joanna Luan |
| **Sent:** | Thu, 27 Mar 2014 20:16:22 -0700 |
| **To:** | zhengranbeijing |
| **Subject:** | Fwd: Azour, LLC - Form W-9 vs W-7 |

---------- 转发的邮件 ----------
发件人: **joseph maroun** <joemarounjr@gmail.com>
日期: 2014年3月27日星期四
主题: Re: Azour, LLC - Form W-9 vs W-7
收件人: Kailas Patel <KPatel@bpmcpa.com>, Joanna Luan <joanna.luan@gmail.com>
抄送: Dennis Brach <DBrach@bpmcpa.com>

Hi Joanna,

Please read the e-mail below and provide the information that is requested.  Please copy me on
the e-mail.  Any questions please let me know.
Thanks,
Joe

On Thu, Mar 27, 2014 at 1:04 PM, Kailas Patel <KPatel@bpmcpa.com> wrote:

Hi Joe,

Thanks so much for getting back to us with Zheng's address. We will need to file Form W-7 to obtain
an individual taxpayer identification number for her. In order for us to complete the form, we will
need to request the following information from Zheng.

1.   Her full name, as it appears on her passport (any middle initials, etc.)

2.   Date of Birth

3.   Country of Birth

4.   Has she visited the U.S. before? If so, can she please provide us with the type of U.S. Visa
she was issued (if any), the number, and the expiration date for the Visa?

Once we obtain this information, we will complete the form, and email it back to you. Zheng will have to sign the form and mail it to the IRS at the address listed below. She will also have to mail her original passport with the form. (It should take approximately 1-2 months for the IRS to process this form, therefore, if she is planning on taking a trip, she should submit the form and passport after she returns from her trip.)

**Form W-7 and her original passport should be mailed to:**

Internal Revenue Service

ITIN Operation

P.O. Box 149342

Austin, TX 78714-9342

Please feel free to contact us if you have any questions.

King Regards,

Kailas

**Kailas Patel, CPA**

**Burr Pilger Mayer, Inc.**

**60 South  Market St., Suite 800**

**San Jose, CA 95113**

**Tel:  408-961-6348**

www.bpmcpa.com



Building your future

**From:** joseph maroun [mailto:joemarounjr@gmail.com]
**Sent:** Thursday, March 27, 2014 12:04 PM
**To:** Kailas Patel; Dennis Brach

**Subject:** Fwd: Azour, LLC - Form W-9 vs W-7

Hi All,

Below is the address for the investor.  Please let me know if you have any other questions and when the filing will be complete.

Thanks,

Joe Maroun Jr.

---------- Forwarded message ----------
From: **Joanna Luan** <joanna.luan@gmail.com>
Date: Thu, Mar 27, 2014 at 7:48 AM
Subject: Fwd: Azour, LLC - Form W-9 vs W-7
To: joseph maroun <joemarounjr@gmail.com>

Hi,

Joseph,  pls check the address

---------- 转发的邮件 ----------
发件人：冉 <zhengranbeijing@163.com>
日期：2014年3月27日星期四
主题：Re: Azour, LLC - Form W-9 vs W-7
收件人：Joanna Luan <joanna.luan@gmail.com>


Beijing Xicheng District Baiyun Road, Baiyun Xili on No. eight two  unit 601（100045）Ran ZHENG


发自我的 iPhone


在 2014年3月27日，12:21，Joanna Luan <joanna.luan@gmail.com> 写道：


**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
*Joanna Luan*


---------- Forwarded message ----------
From: **joseph maroun** <joemarounjr@gmail.com>
Date: 2014-03-26 14:57 GMT-07:00
Subject: Re: Azour, LLC - Form W-9 vs W-7
To: Kailas Patel <KPatel@bpmcpa.com>, Joanna Luan <joanna.luan@gmail.com>
Cc: Dennis Brach <DBrach@bpmcpa.com>


Hi Joanna,


Please read the e-mail below and send the information to Kailas and Dennis as soon as possible please copy me on the e-mail you send.  Any questions please let me know.

Thanks,

Joe Jr.


On Wed, Mar 26, 2014 at 11:41 AM, Kailas Patel <KPatel@bpmcpa.com> wrote:

New                                         Tax                                         Laws

There have been many recent tax law changes. For more information about these new tax laws, please visit our website                                         at                                         www.bpmcpa.com

IRS CIRCULAR 230 NOTICE: Please be advised that, based on current IRS rules and standards, the advice above was not intended or written to be used, and it cannot be used by the taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer. If this message is provided in any manner to another taxpayer, he or she cannot use the advice and should seek advice based on his or her own particular circumstances from an independent                                         tax                                         advisor.

CONFIDENTIALITY NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.


--
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
*Joanna Luan*

**From:**       Yolanda
**Sent:**       Sun, 29 Mar 2015 17:23:47 +0800
**To:**         joseph maroun
**Subject:**    Re: Ribbon Cutting

I can't open the attachment.please send again, thank you and warm congratulations！
Ran

发自我的 iPhone

在 Mar 28, 2015, 7:49 AM, joseph maroun <joemarounjr@gmail.com> 写道：

> Hi All,
>
> Please open the attachment.  If you have the time please attend the Ribbon Cutting
> that will be hosted by the Castro Valley Chamber of Commerce for our first Posh
> location.  Any questions please contact me at 510-755-6200.
>
> Thank you all for your support,
> Joe Maroun
> Posh Bagel
>
> <Ribbon Cutting.pdf>

**From:**          joseph maroun
**Sent:**          Tue, 10 Jan 2017 18:07:17 -0800
**To:**            RAN ZHENG;Ran
**Subject:**       Azour LLC.

Hi Ran,

I hope all is well with you.  I have spoken to Fred several times concerning the business and your
path to citizenship.  I strongly suggest that you respond to Fred as soon as you can.  I am doing
my best to keep you on the path to gain your citizenship. Time is of the essence and if you do not
respond to Fred in the next two weeks we are going to have a a problem.  I am sorry to have to
deliver this news but I have done all I can.  Please do your best to respond to Fred ASAP.

Thanks,
Joe Maroun

**From:**      Joanna Luan
**Sent:**      Mon, 2 Dec 2013 16:33:18 -0800
**To:**      zhengranbeijing
**Subject:**      Fwd: Checking In


---------- 转发的邮件 ----------
发件人: **joseph maroun**
日期: 2013年12月2日星期一
主题: Checking In
收件人: Joanna Luan <joanna.luan@gmail.com>


Hi Joanna,

Hope all is well.  We received the $10,000 from Ran.  How are you coming along with Fred?  As you know we need to have the first $500,000 deposited by the end of this month.  If you need my help in giving Fred a push please let me know.  Any questions please let me know.

Take care,
Joe Jr.


--
**✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱**


*Joanna Luan*
10 hillcrest mdws,
Rolling  Hills  Estates, CA 90274

| | |
|---|---|
| **From:** | Joanna Luan |
| **Sent:** | Wed, 20 Nov 2013 20:13:15 -0800 |
| **To:** | zhengranbeijing |
| **Subject:** | Fwd: Store design sketches |
| **Attachments:** | Design 1.PDF, Design 2.PDF |

---------- 已转发邮件 ----------
发件人: **Joanna Luan** <joanna.luan@gmail.com>
日期: 2013年11月20日下午7:58
主题: Fwd: Store design sketches
收件人: zhengranbeijing <zhengranbeijing@163.com>

Dear,

如图, Joe已经开始前面和后台要呈现的效果, 这是他自己勾划的草图, 然后会跟设计公司沟通, 让他们按他的意思电脑合成图。所以一旦开始, 就没有办法停下来。我们每进一步都会知会你的。当然你的合理中肯的建议他们也会倾听采纳。

悦悦

---------- Forwarded message ----------
From: <bluecadi@aol.com>
Date: 2013/11/20
Subject: Store design sketches
To: joanna.luan@gmail.com

As per Joe.

**From:**       joseph maroun
**Sent:**       Thu, 3 Jul 2014 17:47:37 -0700
**To:**         RAN ZHENG;Joanna Luan;Fredrick Voigtmann;marounjoesr
**Subject:**    Re: Hi Joe

Location #1
20665 Rustic Dr.
Castro Valley, Ca 94546

The tenants will vacate July 15.  Architectural drawings will be completed in two weeks and will
be submitted to the city for approval.  The approval process takes two to four weeks. We are
doing a total remodel of the space so what you see is not what the location is going to look like.
We plan to open by September.  Please keep in mind this does not affect your application status.
 Fred is aware of everything I am doing.

Location #2
1040 Grant Rd.
Mountain View, Ca 94040

The site is still under construction.  The location is the last stall at the end of the shopping center
that is under construction.  This is a prime location.  Next Wednesday I will meet with the
Architect and builder to design a layout.  The site should be turned over to me sometime in
August.  We plan to be open for business early November.

Ran please keep in mind we are working as fast as we can and we are at the mercy of the county
and city for permits.  The most important thing to keep in mind is that your filing is not affected
by any delays.  As stated above Fred is fully aware of everything we are doing and is
comfortable with the progress we have made.  Starting a business in the US is very different than
China.  We need to make sure we comply will every regulation.  If you have any questions
regarding the locations please let me know.  My cell number is 510-755-6200

All the best,
Joe

On Thu, Jul 3, 2014 at 5:08 PM, RAN ZHENG <yolanda201469@gmail.com> wrote:
   My aunt has to go back to China on July 10, we plan to drive back to Los Angeles. It doesn't
   matter, or tell me the address of the two restaurants, we go and see if  pass by.

   2014-07-03 16:35 GMT-07:00 joseph maroun <joemarounjr@gmail.com>:

      Hi Ran,

I wish you could have given me more notice.  Joe Sr. and I will be out of town until Tuesday.  Would it be possible to reschedule your trip for Thursday of next week?  Please let me know.
Thanks,
Joe


On Thu, Jul 3, 2014 at 4:20 PM, RAN ZHENG <yolanda201469@gmail.com> wrote:
Hi, Joe,
My family and I are a line of seven people will stay on July 4-5 in San Francisco, I don't know whether this two days you have time to meet? We really want to see our restaurant. Looking forward to your reply .
Best wishes!

Ran


2014-04-02 11:21 GMT-07:00 joseph maroun <joemarounjr@gmail.com>:

Hi Ran,

Good to hear from you.  Here is an update on the locations:

1.  We are in the final stages of a lease agreement for the first location located in Castro Valley California.  I should have the lease agreement by the beginning of next week.  Once I sign the lease, the landlord will give notice to the current tenant and they will have 30 days to vacate the building.  I have begun discussions with a contractor who will remodel and install all the equipment in the new location.  This process should take about 4 to 5 weeks if all goes well.

2.  We have sent a proposal to another landlord for a site in Mountain View California (Silicon Valley Area).  The site is brand new and currently under construction.  We should hear back from them in about two weeks.  This will be our second location and construction should be completed by June or July if all goes well.  It will take us another 4 to 5 weeks to install equipment and build the location.

Both locations are great and should do very well.  The goal is to have two locations operating by the end of the year and have a third location in operation by the first quarter of 2015.  I have been working with Joanna and the EB-5 lawyer on all the necessary information needed to keep the EB-5 application moving forward.  So far everything seems to be going as planned.  I will update you as soon a I sign the lease on the first location and let you know about the second.  I hear you might be coming to California to pay us a visit?  I look forward to meeting you in person.  Please if you have any other questions please let me know.

All the best,
Joe Maroun Jr.


On Wed, Apr 2, 2014 at 8:33 AM, 冉 <zhengranbeijing@163.com> wrote:

How's the project coming along? Are you sign the lease?
and What time can open restaurant？
Wish you good luck and look forward to your reply！

Ran

发自我的 iPhone

**From:**        joseph maroun
**Sent:**        Thu, 28 Nov 2013 22:00:40 -0800
**To:**          郑冉;Joanna Luan
**Cc:**           marounjoesr
**Subject:**     Re: happy thanksgiving

Hi Ran,

Thank you for the e-mail.  Joe Sr. and I are looking forward to meeting you.  We are very excited to start the new business and thank you for your support.
All the best,
Joe Jr.

2013/11/28 郑冉 <zhengranbeijing@163.com>

  Hi,i'm Ran ZHENG.

  Happy thanksgiving! Very glad to cooperate with you! Hope to meet in China!



郑冉 助理总经理

**zhengranbeijing@163.com**



**公司名称：中航信托北京财富管理中心**
地址：北京西城区金融大街甲9号金融街中心南楼50
1C(100033)
电话：010-66523696
手机：13910039025
微博：http://weibo.com/onetwostart

扫描该二维码，可以将电子名片迅
速保存到手机 使用帮助

**From:**        joseph maroun
**Sent:**        Wed, 18 Dec 2013 15:55:06 -0800
**To:**          ??;Joanna Luan;marounjoesr
**Subject:**     Bank Account Update
**Attachments:** Bank Account.pdf

Hi All,

Please find attached a copy of the status of funds as of today that have been transferred to the
account.  Thank you all for your support.

All the Best,
Joe Maroun Jr.

| | |
|---|---|
| **From:** | RAN ZHENG |
| **Sent:** | Thu, 14 Mar 2019 09:52:38 -0700 |
| **To:** | lingliucpa@gmail.com |
| **Subject:** | Fwd: Amendment |
| **Attachments:** | Amendment 1.pdf, Amendment 2.pdf |

---------- 转发的邮件 ---------
发件人：**Joanna Luan** <joanna.luan@gmail.com>
日期：2014年2月6日 周四下午4:41
主题：Fwd: Amendment
收件人：zhengranbeijing <zhengranbeijing@163.com>

---------- 转发的邮件 ----------
发件人：**joseph maroun** <joemarounjr@gmail.com>
日期：2014年2月6日星期四
主题：Amendment
收件人：Joanna Luan <joanna.luan@gmail.com>

Hi Joanna,

Please find attached the copy of the signed amendment.  Please do your you best to have Ran transfer the remaining amount as soon as she can.  It will help us secure a location with the landlord if we have the most money possible in the account.  Any questions please let me know.

Thanks,
Joe

--
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
*Joanna Luan*

| | |
|---|---|
| **From:** | Joanna Luan |
| **Sent:** | Wed, 26 Mar 2014 21:21:00 -0700 |
| **To:** | zhengranbeijing |
| **Subject:** | Fwd: Azour, LLC - Form W-9 vs W-7 |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

***Joanna Luan***

---------- Forwarded message ----------
From: **joseph maroun** <joemarounjr@gmail.com>
Date: 2014-03-26 14:57 GMT-07:00
Subject: Re: Azour, LLC - Form W-9 vs W-7
To: Kailas Patel <KPatel@bpmcpa.com>, Joanna Luan <joanna.luan@gmail.com>
Cc: Dennis Brach <DBrach@bpmcpa.com>

Hi Joanna,

Please read the e-mail below and send the information to Kailas and Dennis as soon as possible please copy me on the e-mail you send.  Any questions please let me know.
Thanks,
Joe Jr.

On Wed, Mar 26, 2014 at 11:41 AM, Kailas Patel <KPatel@bpmcpa.com> wrote:

Hello Joe,

My name is Kailas, and I am working with Dennis in preparing the 2013 tax returns for Azour, LLC. We need some additional information for Zheng Ran, in order to determine what form we should file to obtain a ITIN for her, (an individual taxpayer identification number). Where does Zheng currently reside? Can you please provide us with her address?

There are two forms that we can file to obtain an individual taxpayer identification number for her: (1) Form W-9, which would be filed for a U.S. person (that includes a resident alien), or (2) Form W-7, which would be filed for individuals who are required for U.S. tax purposes to have a U.S. taxpayer identification number, *but who do not have and are not eligible* to get a social security number (SSN).

Once we receive her residency information, we will be able to determine if we need to file a Form W-9 or a Form W-7.


Please feel free to contact us if you have any questions.


We greatly appreciate your assistance.


Kind Regards,


Kailas



**Kailas Patel, CPA**

**Burr Pilger Mayer, Inc.**

**60 South  Market St., Suite 800**

**San Jose, CA 95113**

**Tel:  <u>408-961-6348</u>**

<u>www.bpmcpa.com</u>



**From:** joseph maroun [mailto:joemarounjr@gmail.com]
**Sent:** Tuesday, March 18, 2014 11:14 AM
**To:** Dennis Brach
**Cc:** Kailas Patel
**Subject:** Re: Ran


Yes please.  Dennis, I will also send you Jeff's Social Security number  I have asked Jeff to sent it to me today.  Please let me know when the filing is completed.

Thanks,

Joe


On Tue, Mar 18, 2014 at 10:25 AM, Dennis Brach <DBrach@bpmcpa.com> wrote:

I agree with Fred.  Do you want us to apply for the ITIN for your partner?


**From:** joseph maroun [mailto:joemarounjr@gmail.com]
**Sent:** Monday, March 17, 2014 5:09 PM
**To:** Dennis Brach; marounjoesr
**Subject:** Fwd: Ran


Hi Dennis,


I am back and made bail!!  Please read the e-mail below from the immigration lawyer.  Please let me know what information you need to complete the process.

Thanks,

Joe

---------- Forwarded message ----------
From: **Fredrick Voigtmann** <fred@igvlaw.com>
Date: Mon, Mar 17, 2014 at 2:44 PM
Subject: RE: Ran
To: joseph maroun <joemarounjr@gmail.com>, Joanna Luan <joanna.luan@gmail.com>, marounjoesr <marounjoesr@aol.com>

Hi Joe:

Thanks for your email.  I just received the priority mail package you sent on March 5th containing the agreements, company articles and tax id number.  We need to discuss the business plan and how to make it EB-5 compliant.  As for the other documentation, everything looks good so far.

As for the tax question, Ran is not eligible yet for a SSN so it will have to be a ITIN, an individual taxpayer identification number.  The form is Form W-9 and the accountant can submit it for her; that is not something I do.

Best regards,

Fred Voigtmann, Esq.

LAW OFFICE OF FRED VOIGTMANN, P.C.

21700 Oxnard Street, Suite 360

Woodland Hills, CA 91367

Tel: (818) 887-7839

www.igvlaw.com

**From:** joseph maroun [mailto:joemarounjr@gmail.com]
**Sent:** Monday, March 17, 2014 2:26 PM
**To:** Fredrick Voigtmann; Joanna Luan; marounjoesr
**Subject:** Ran

Hi Fred,

I spoke to our accountant and in order to file a 2013 tax return for Azour LLC, Ran needs to obtain a Social Security number or some sort of tax identification number before we can file.  If this is correct please let me know how we can complete this part of the process.

Thanks,

Joe Maroun Jr.

510-755-6200

New                                        Tax                                        Laws

There have been many recent tax law changes. For more information about these new tax laws, please visit our website                                        at                                        www.bpmcpa.com

IRS CIRCULAR 230 NOTICE: Please be advised that, based on current IRS rules and standards, the advice above was not intended or written to be used, and it cannot be used by the taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer. If this message is provided in any manner to another taxpayer, he or she cannot use the advice and should seek advice based on his or her own particular circumstances from an independent                                        tax                                        advisor.

CONFIDENTIALITY NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

New                                        Tax                                        Laws

There have been many recent tax law changes. For more information about these new tax laws, please visit our website                                        at                                        www.bpmcpa.com

IRS CIRCULAR 230 NOTICE: Please be advised that, based on current IRS rules and standards, the advice above was not intended or written to be used, and it cannot be used by the taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer. If this message is provided in any manner to another taxpayer, he or she cannot use the advice and should seek advice based on his or her own particular circumstances from an independent                                        tax                                        advisor.

CONFIDENTIALITY NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

**From:** joseph maroun
**Sent:** Fri, 3 Jan 2014 14:19:28 -0800
**To:** ??;Joanna Luan;marounjoesr
**Subject:** Bank Account Update
**Attachments:** Bank Account 1.pdf

Hi All,

Happy New year!  Please find attached a copy of the bank account status as of today.  If you have any questions please let me know.

All the Best in the New Year,

Joe Maroun Jr.

| | |
|---|---|
| **From:** | Joanna Luan |
| **Sent:** | Wed, 20 Nov 2013 20:13:15 -0800 |
| **To:** | zhengranbeijing |
| **Subject:** | Fwd: Store design sketches |
| **Attachments:** | Design 1.PDF, Design 2.PDF |

---------- 已转发邮件 ----------
发件人: **Joanna Luan** <joanna.luan@gmail.com>
日期: 2013年11月20日下午7:58
主题: Fwd: Store design sketches
收件人: zhengranbeijing <zhengranbeijing@163.com>

Dear,

如图, Joe已经开始前面和后台要呈现的效果, 这是他自己勾划的草图, 然后会跟设计公司沟通, 让他们按他的意思电脑合成图。所以一旦开始, 就没有办法停下来。我们每进一步都会知会你的。当然你的合理中肯的建议他们也会倾听采纳。

悦悦

---------- Forwarded message ----------
From: <bluecadi@aol.com>
Date: 2013/11/20
Subject: Store design sketches
To: joanna.luan@gmail.com

As per Joe.

**From:**        Yolanda
**Sent:**        Sun, 18 Jan 2015 23:06:26 -0800
**To:**          joseph maroun
**Subject:**     Re: Pics

Perfect, Joe！
please send me the two exact adresses, maybe I will take a look one day.
Thank you for all, and **Give my regards to your family, please！**

**Ran**
发自我的 iPhone

在 Jan 18, 2015, 5:59 PM, joseph maroun <joemarounjr@gmail.com> 写道：

> Hi Ran,
> Right now we have 9 employees and once Mountain View starts next month we will
> have another 9, So we will have enough employees to cover the EB 5
> requirements. Also I hope to have a third Cafe as well. I will keep you posted as
> things progress.
> Take care,
> Joe
>
> On Sunday, January 18, 2015, Yolanda <yolanda201469@gmail.com> wrote:
>> yes, I saw pics, good job！We are the perfect team. Now we have how many
>> staff？
>>
>> 发自我的 iPhone
>>
>> > 在 Jan 18, 2015, 10:18 AM, joseph maroun <joemarounjr@gmail.com> 写道：
>> >
>> > Hi Ran,
>> >
>> > Please let me know if you received the pics I sent?
>> > Thanks,
>> > Joe

**From:**       Joanna Luan
**Sent:**       Thu, 27 Mar 2014 20:16:22 -0700
**To:**         zhengranbeijing
**Subject:**    Fwd: Azour, LLC - Form W-9 vs W-7


---------- 转发的邮件 ----------
发件人: **joseph maroun** <joemarounjr@gmail.com>
日期: 2014年3月27日星期四
主题: Re: Azour, LLC - Form W-9 vs W-7
收件人: Kailas Patel <KPatel@bpmcpa.com>, Joanna Luan <joanna.luan@gmail.com>
抄送: Dennis Brach <DBrach@bpmcpa.com>


Hi Joanna,

Please read the e-mail below and provide the information that is requested.  Please copy me on
the e-mail.  Any questions please let me know.
Thanks,
Joe


On Thu, Mar 27, 2014 at 1:04 PM, Kailas Patel <KPatel@bpmcpa.com> wrote:

> Hi Joe,
>
>
> Thanks so much for getting back to us with Zheng's address. We will need to file Form W-7 to obtain
> an individual taxpayer identification number for her. In order for us to complete the form, we will
> need to request the following information from Zheng.
>
>
> 1.   Her full name, as it appears on her passport (any middle initials, etc.)
>
> 2.   Date of Birth
>
> 3.   Country of Birth
>
> 4.   Has she visited the U.S. before? If so, can she please provide us with the type of U.S. Visa
>      she was issued (if any), the number, and the expiration date for the Visa?

Once we obtain this information, we will complete the form, and email it back to you. Zheng will have to sign the form and mail it to the IRS at the address listed below. She will also have to mail her original passport with the form. (It should take approximately 1-2 months for the IRS to process this form, therefore, if she is planning on taking a trip, she should submit the form and passport after she returns from her trip.)

**Form W-7 and her original passport should be mailed to:**

Internal Revenue Service

ITIN Operation

P.O. Box 149342

Austin, TX 78714-9342

Please feel free to contact us if you have any questions.

King Regards,

Kailas

**Kailas Patel, CPA**

**Burr Pilger Mayer, Inc.**

**60 South  Market St., Suite 800**

**San Jose, CA 95113**

**Tel:  408-961-6348**

www.bpmcpa.com



---

**From:** joseph maroun [mailto:joemarounjr@gmail.com]
**Sent:** Thursday, March 27, 2014 12:04 PM
**To:** Kailas Patel; Dennis Brach

**Subject:** Fwd: Azour, LLC - Form W-9 vs W-7

Hi All,

Below is the address for the investor.  Please let me know if you have any other questions and when the filing will be complete.

Thanks,

Joe Maroun Jr.

---------- Forwarded message ----------
From: **Joanna Luan** <joanna.luan@gmail.com>
Date: Thu, Mar 27, 2014 at 7:48 AM
Subject: Fwd: Azour, LLC - Form W-9 vs W-7
To: joseph maroun <joemarounjr@gmail.com>

Hi,

Joseph,  pls check the address

---------- 转发的邮件 ----------
发件人：冉 <zhengranbeijing@163.com>
日期：2014年3月27日星期四
主题：Re: Azour, LLC - Form W-9 vs W-7
收件人：Joanna Luan <joanna.luan@gmail.com>

Beijing Xicheng District Baiyun Road, Baiyun Xili on No. eight two  unit 601（100045）Ran ZHENG

发自我的 iPhone

在 2014年3月27日，12:21，Joanna Luan <joanna.luan@gmail.com> 写道：

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**Joanna Luan**

---------- Forwarded message ----------
From: **joseph maroun** <joemarounjr@gmail.com>
Date: 2014-03-26 14:57 GMT-07:00
Subject: Re: Azour, LLC - Form W-9 vs W-7
To: Kailas Patel <KPatel@bpmcpa.com>, Joanna Luan <joanna.luan@gmail.com>
Cc: Dennis Brach <DBrach@bpmcpa.com>

Hi Joanna,

Please read the e-mail below and send the information to Kailas and Dennis as soon as possible please copy me on the e-mail you send.  Any questions please let me know.

Thanks,

Joe Jr.


On Wed, Mar 26, 2014 at 11:41 AM, Kailas Patel <KPatel@bpmcpa.com> wrote:

New                                              Tax                                              Laws

There have been many recent tax law changes. For more information about these new tax laws, please visit our website                                     at                                     www.bpmcpa.com

IRS CIRCULAR 230 NOTICE: Please be advised that, based on current IRS rules and standards, the advice above was not intended or written to be used, and it cannot be used by the taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer. If this message is provided in any manner to another taxpayer, he or she cannot use the advice and should seek advice based on his or her own particular circumstances from an independent                                     tax                                     advisor.

CONFIDENTIALITY NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.


--
*****************************************

*Joanna Luan*

| | |
|---|---|
| **From:** | Joanna Luan |
| **Sent:** | Thu, 6 Feb 2014 16:41:19 -0800 |
| **To:** | zhengranbeijing |
| **Subject:** | Fwd: Amendment |
| **Attachments:** | Amendment 1.pdf, Amendment 2.pdf |

---------- 转发的邮件 ----------
发件人: **joseph maroun** <joemarounjr@gmail.com>
日期: 2014年2月6日星期四
主题: Amendment
收件人: Joanna Luan <joanna.luan@gmail.com>

Hi Joanna,

Please find attached the copy of the signed amendment.  Please do your you best to have Ran transfer the remaining amount as soon as she can.  It will help us secure a location with the landlord if we have the most money possible in the account.  Any questions please let me know.

Thanks,
Joe

--
**************************************
*Joanna Luan*

**From:**     joseph maroun
**Sent:**     Thu, 19 Jun 2014 15:10:50 -0700
**To:**       Yolanda;Joanna Luan;Fredrick Voigtmann
**Subject:**  Re: Reply

Hi Ran,

Welcome to the USA!!!  Please let me know when you are available to come up to Northern CA. I will be out of town from July 29th to August 14th. I spoke to Fred the EB-5 lawyer today and he will file within the coming week.  I have provided all the necessary info and we are in good shape according to Fred.  Fred also told me that you will be meeting with him as well.  I hope you feel confident after the meeting.  Please let me know your feelings after the meeting.

Castro Valley Location:

1.  Tenants are due to vacate the property on July 1st.
2.  Two weeks ago we entered in to a contract with a construction company to do the drawings and permitting.  If all goes well with the city and permitting process we should have the location open by September.

Mountain View Location:

1.  The site is still under construction and we hope to take possession of a vacant building by end of August.
2..  Once the location is turned over to us it will be 6 to 8 weeks for construction.  I hope to have the store operational by October or November at the latest.  Please keep in mind timing of construction depends on the city and the permitting process.

I hope you enjoy you stay in the USA.  Please keep in mind that Fred is on top of your case and has been very committed to make sure you will achieve your goals.  Thank you for your confidence in the Maroun family and Joanna who is a very honest and caring Lady.  Any questions please let me know.

All the best,
Joseph Maroun Jr.

On Thu, Jun 19, 2014 at 12:31 AM, Yolanda <zhengranbeijing@163.com> wrote:
  hi,Joseph,
  You are all well? We have just arrived in Los angeles, everything is strange.
  you have already submitted materials I-526? How to progress in our restaurant? Completed the decoration?

I also arranged no time to see you, placed the new family needs to spend a lot of time and effort, but expect to meet with you。

Best regards!
Ran

Sent from my iPhone

On Apr 3, 2014, at 4:04 PM, joseph maroun <joemarounjr@gmail.com> wrote:

Hi Ran,

Your English is very good.  Doing business in the states is a bit different than China.  I want you to remember that we respect your investment and we want to find locations that will be the most profitable.  With that said, it takes some time to find the right location and we want to make sure the business will be successful.  This is important for the EB-5 process as well.  I know we have not had the opportunity to meet face to face and now you have a visa, you might want to consider coming to the states for a meeting.  I ask you to be patient and let us do our job.  Your investment will allow us to open two POSSIBLY three stores depending on the location.  Please if you have any question e-mail me.  Joanna cannot give you the answers you require concerning the status of the business only I can.  I promise you as things unfold I will keep you updated.
All the best,
Joseph Maroun Jr.

**From:** Joanna Luan
**Sent:** Wed, 11 Dec 2013 10:12:34 -0800
**To:** zhengranbeijing
**Subject:** Fwd: Transfer

---------- 转发的邮件 ----------
发件人：**joseph maroun**
日期：2013年12月11日星期三
主题：Transfer
收件人：Joanna Luan <joanna.luan@gmail.com>, marounjoesr <marounjoesr@aol.com>

Hi Joanna,

The full $150,000 has been deposited.
Thanks,
Joe

--
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
*Joanna Luan*

**From:**      Yolanda
**Sent:**       Wed, 27 May 2015 23:16:42 +0800
**To:**         joseph maroun
**Subject:**    Re: Ribbon Cutting


**Not now, may be at the end of each year. I need to know about the company's operations. Or you can give me some better advice.**
**Thank you !**
**Ran**

发自我的 iPhone

在 May 27, 2015, 10:37 AM, joseph maroun <joemarounjr@gmail.com> 写道:

> Hi Ran,
>
> I do not think at this point in time it would be wise to spend the money for an outside company to audit an operation that has just begun operation.  I am a bit confused why you would request this?
> Thanks,
> Joe
>
>
> On Tue, May 26, 2015 at 6:01 PM, Yolanda <yolanda201469@gmail.com> wrote:
>> Hi, Joseph
>> **I think our company need an external audit to approve each year expected economic goals, how do you think?**
>> **Wish your reply ! Thank you !**
>> **Ran**
>>
>> 发自我的 iPhone
>>
>> 在 Mar 28, 2015, 7:49 AM, joseph maroun <joemarounjr@gmail.com> 写道:
>>
>>> Hi All,
>>>
>>> Please open the attachment.  If you have the time please attend the Ribbon Cutting that will be hosted by the Castro Valley Chamber of Commerce for our first Posh location.  Any questions please contact me at 510-755-6200.
>>>
>>> Thank you all for your support,
>>> Joe Maroun

Posh Bagel

<Ribbon Cutting.pdf>

**From:**        Joanna Luan
**Sent:**        Mon, 11 Nov 2013 22:43:30 -0800
**To:**          zhengranbeijing@163.com
**Subject:**     Fwd: Passport
**Attachments:** Joanna CDL.PDF, Joe CDL.PDF, Joe Passport.PDF


Dear ,

Attached are my info and Joe's .I will forward his son's driver license to you tomorrow.

Regards,

Joanna

---------- Forwarded message ----------
From: <bluecadi@aol.com>
Date: 2013/11/11
Subject: Passport
To: joanna.luan@gmail.com

**From:** Yolanda
**Sent:** Sat, 17 Jan 2015 00:19:37 -0800
**To:** joseph maroun
**Subject:** Re: Merry Christmas

hi, Joe,
everything is OK？I'm waiting for your photos, thank you！
Best wishes！
Ran

发自我的 iPhone

在 Dec 15, 2014, 8:58 PM, joseph maroun <joemarounjr@gmail.com> 写道：

> I am very proud to announce we are OPEN FOR BUSINESS IN CASTRO
> VALLEY as of today.  I  am doing a soft opening this week and the response from
> word of mouth for our first day was beyond my expectation.  Ran I will try and send
> you pictures in the next day or two.  As I need to focus on training and getting all
> aspects of the business dialed in.  If you would like to plan a trip after the holiday's I
> would be more than happy to show you both locations.  Please let me know you
> thoughts.
> Thanks,
> Joe
>
> On Mon, Dec 15, 2014 at 10:05 AM, Yolanda <yolanda201469@gmail.com> wrote:
>
>> Hi, Joe
>> **How is our business? If open, don't forget to send photos to me, please！**
>> **I wish you and yours have a happy Christmas！**
>> **Best wishes！**
>> **RAN**
>> 发自我的 iPhone

**From:** Joanna Luan
**Sent:** Wed, 11 Dec 2013 10:12:34 -0800
**To:** zhengranbeijing
**Subject:** Fwd: Transfer

---------- 转发的邮件 ----------
发件人：**joseph maroun**
日期：2013年12月11日星期三
主题：Transfer
收件人：Joanna Luan <joanna.luan@gmail.com>, marounjoesr <marounjoesr@aol.com>

Hi Joanna,

The full $150,000 has been deposited.
Thanks,
Joe

--
*************************************
*Joanna Luan*

**From:**      joseph maroun
**Sent:**      Thu, 12 Dec 2013 08:51:19 -0700
**To:**        郑冉;marounjoesr;Joanna Luan
**Subject:**   Re: Re: happy thanksgiving

Hello Ran,

I apologize for not getting back to you sooner.  Joe Sr. and I would like to thank you for your support and trust in us.  We are very excited about the new project and are working hard and fast to get the new business up and running.  We are currently in negotiations with a restaurant design firm and I have contracted a broker to find the first location.  I have been viewing several locations every week.  We must take our time and find the best location for the business. Currently we are focusing on the Silicon Valley area where there are several large tech companies with a very high concentration of employees.  As we progress I will keep you informed.  Thank you again for believing in us and the concept.  If you have any questions please feel free to e-mail me.

All the Best,
Joe Maroun Jr.


2013/12/10 郑冉 <zhengranbeijing@163.com>

Hi ,Joe Jr

Today I send 150000 dollars to the AZOUR account, please inform me after the receipt, thank you!

All the best!

Ran ZHENG






郑冉 助理总经理
zhengranbeijing@163.com

公司名称：中航信托北京财富管理中心

扫描该二维码，可以将电子名片迅速保存到手机 使用帮助

地址：北京西城区金融大街甲9号金融街中心南楼50
1C(100033)
电话：010-66523696
手机：13910039025
微博：http://weibo.com/onetwostart

At 2013-11-29 14:00:40,"joseph maroun" <joemarounjr@gmail.com> wrote:

Hi Ran,

Thank you for the e-mail.  Joe Sr. and I are looking forward to meeting you.  We are very excited to start the new business and thank you for your support.

All the best,

Joe Jr.

2013/11/28 郑冉 <zhengranbeijing@163.com>

Hi,i'm Ran ZHENG.

Happy thanksgiving! Very glad to cooperate with you! Hope to meet in China!



郑冉 助理总经理

**zhengranbeijing@163.com**

公司名称：中航信托北京财富管理中心
地址：北京西城区金融大街甲9号金融街中心
南楼501C(100033)
电话：010-66523696
手机：13910039025
微博：http://weibo.com/onetwostart



扫描该二维码，可以将电子名片迅
速保存到手机 使用帮助

**From:** Joanna Luan
**Sent:** Tue, 19 Nov 2013 18:02:58 -0700
**To:** zhengranbeijing
**Subject:** Fwd: 汇款信息


## Wire instructions (匯款說明指示):


Bank Name                    :        Bank of America
銀行名稱                                美国銀行


Bank Address                         :        337 Main Street
銀行地址                             Pleasanton, CA 94566


Bank Routing Number          :        121000358
SWIFT Code (Bank ABA#)     :        BOFAUS3N
銀行電匯號碼(代號)


Account Name                  :        Linyue LUAN
帳戶名稱


Account Number              :        0235866070
帳戶號碼

Account Address      :     10 hillcrest mdws,
帳戶地址                 Rolling Hills Estates, CA 90274

Telephone Number    :     (213)880-0668
電話

| | |
|---|---|
| **From:** | Joanna Luan |
| **Sent:** | Tue, 19 Nov 2013 15:32:21 -0700 |
| **To:** | zhengranbeijing |
| **Subject:** | Fwd: Bank account info |
| **Attachments:** | Bank info 1.PDF |

---------- 转发的邮件 ----------
发件人：
日期：2013年11月19日星期二
主题：Bank account info
收件人：joanna.luan@gmail.com

Hi Joana,

Enclosed by attachment is the Bank savings account number and wiring instructions for Azour LLC.  Let me know if you need any further information.

Hope all is well.

Carmen

**From:** Joanna Luan
**Sent:** Wed, 11 Dec 2013 10:12:34 -0700
**To:** zhengranbeijing
**Subject:** Fwd: Transfer

---------- 转发的邮件 ----------
发件人：**joseph maroun**
日期：2013年12月11日星期三
主题：Transfer
收件人：Joanna Luan <joanna.luan@gmail.com>, marounjoesr <marounjoesr@aol.com>

Hi Joanna,

The full $150,000 has been deposited.
Thanks,
Joe

--
*************************************
*Joanna Luan*

**From:**      joseph maroun
**Sent:**      Thu, 19 Jun 2014 18:44:33 -0700
**To:**      Yolanda;Fredrick Voigtmann
**Subject:**    Re: Reply

Ran,

Ran, when you meet with Fred he will explain the process and that you are not compromised. Rest assured you have very competent people working for you.
Thanks,
Joe


On Thu, Jun 19, 2014 at 3:51 PM, Yolanda <zhengranbeijing@163.com> wrote:
**Hi,Joseph,**
**Fred reply me for two consecutive times that He will be in "this week", or "next week" submit the I - 526 material, today he tell you submitted until next week? I and he promised to submit materials after the time of entering the United States, don't know why has been delayed delivery date. I fear in the third quarter to submit, the situation is different。**

**All the best!**
**Ran**

Sent from my iPhone

On Jun 19, 2014, at 3:10 PM, joseph maroun <joemarounjr@gmail.com> wrote:


Castro Valley Location:

1. Tenants are due to vacate the property on July 1st.
2. Two weeks ago we entered in to a contract with a construction company to do the drawings and permitting. If all goes well with the city and permitting process we should have the location open by September.

Mountain View Location:

1. The site is still under construction and we hope to take possession of a vacant building by end of August.
2.. Once the location is turned over to us it will be 6 to 8 weeks for construction. I hope to have the store operational by October or November at the latest. Please keep in mind timing of construction depends on the city and the permitting process.

I hope you enjoy you stay in the USA.  Please keep in mind that Fred is on top of your case and has been very committed to make sure you will achieve your goals.  Thank you for your confidence in the Maroun family and Joanna who is a very honest and caring Lady.  Any questions please let me know.

**From:** Joanna Luan
**Sent:** Wed, 4 Dec 2013 10:23:45 -0700
**To:** zhengranbeijing
**Subject:** Fwd: Transfer

---------- 转发的邮件 ----------
发件人: **joseph maroun**
日期: 2013年12月4日星期三
主题: Transfer
收件人: Joanna Luan <joanna.luan@gmail.com>

Good Morning Joanna,

The $50,000 has been transferred and is in our account.  Any questions please let me know.
Thank you for your help,

Joe Jr.


--
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

*Joanna Luan*

10 hillcrest mdws,
Rolling  Hills  Estates, CA 90274

**From:**      Joanna Luan
**Sent:**      Mon, 2 Dec 2013 16:33:18 -0700
**To:**        zhengranbeijing
**Subject:**   Fwd: Checking In


---------- 转发的邮件 ----------
发件人: **joseph maroun**
日期: 2013年12月2日星期一
主题: Checking In
收件人: Joanna Luan <joanna.luan@gmail.com>


Hi Joanna,

Hope all is well.  We received the $10,000 from Ran.  How are you coming along with Fred?  As you know we need to have the first $500,000 deposited by the end of this month.  If you need my help in giving Fred a push please let me know.  Any questions please let me know.

Take care,
Joe Jr.


--
**✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱**


*Joanna Luan*
10 hillcrest mdws,
Rolling  Hills  Estates, CA 90274

**From:**        RAN ZHENG
**Sent:**        Thu, 3 Jul 2014 19:09:48 -0700
**To:**          joseph maroun
**Subject:**     Re: Hi Joe


My cell number is 310-9518-291
Best wishes!


2014-07-03 17:47 GMT-07:00 joseph maroun <joemarounjr@gmail.com>:
　　Location #1
　　20665 Rustic Dr.
　　Castro Valley, Ca 94546

　　The tenants will vacate July 15.  Architectural drawings will be completed in two weeks and
　　will be submitted to the city for approval.  The approval process takes two to four weeks. We
　　are doing a total remodel of the space so what you see is not what the location is going to look
　　like. We plan to open by September.  Please keep in mind this does not affect your application
　　status.  Fred is aware of everything I am doing.

　　Location #2
　　1040 Grant Rd.
　　Mountain View, Ca 94040

　　The site is still under construction.  The location is the last stall at the end of the shopping
　　center that is under construction.  This is a prime location.  Next Wednesday I will meet with
　　the Architect and builder to design a layout.  The site should be turned over to me sometime in
　　August.  We plan to be open for business early November.

　　Ran please keep in mind we are working as fast as we can and we are at the mercy of the
　　county and city for permits.  The most important thing to keep in mind is that your filing is not
　　affected by any delays.  As stated above Fred is fully aware of everything we are doing and is
　　comfortable with the progress we have made.  Starting a business in the US is very different
　　than China.  We need to make sure we comply will every regulation.  If you have any
　　questions regarding the locations please let me know.  My cell number is 510-755-6200

　　All the best,
　　Joe



On Thu, Jul 3, 2014 at 5:08 PM, RAN ZHENG <yolanda201469@gmail.com> wrote:
　　My aunt has to go back to China on July 10, we plan to drive back to Los Angeles. It doesn't
　　matter, or tell me the address of the two restaurants, we go and see if  pass by.

2014-07-03 16:35 GMT-07:00 joseph maroun <joemarounjr@gmail.com>:

Hi Ran,

I wish you could have given me more notice.  Joe Sr. and I will be out of town until
Tuesday.  Would it be possible to reschedule your trip for Thursday of next week?  Please
let me know.
Thanks,
Joe


On Thu, Jul 3, 2014 at 4:20 PM, RAN ZHENG <yolanda201469@gmail.com> wrote:
   Hi，Joe,
   My family and I are a line of seven people will stay on July 4-5 in San Francisco，I
   don't know whether this two days you have time to meet? We really want to see our
   restaurant. Looking forward to your reply .
   Best wishes!

   Ran


2014-04-02 11:21 GMT-07:00 joseph maroun <joemarounjr@gmail.com>:

   Hi Ran,

   Good to hear from you.  Here is an update on the locations:

   1.  We are in the final stages of a lease agreement for the first location located in
   Castro Valley California.  I should have the lease agreement by the beginning of next
   week.  Once I sign the lease, the landlord will give notice to the current tenant and
   they will have 30 days to vacate the building.  I have begun discussions with a
   contractor who will remodel and install all the equipment in the new location.  This
   process should take about 4 to 5 weeks if all goes well.

   2.  We have sent a proposal to another landlord for a site in Mountain View
   California (Silicon Valley Area).  The site is brand new and currently under
   construction.  We should hear back from them in about two weeks.  This will be our
   second location and construction should be completed by June or July if all goes
   well.  It will take us another 4 to 5 weeks to install equipment and build the location.


   Both locations are great and should do very well.  The goal is to have two locations
   operating by the end of the year and have a third location in operation by the first
   quarter of 2015.  I have been working with Joanna and the EB-5 lawyer on all the

necessary information needed to keep the EB-5 application moving forward.  So far everything seems to be going as planned.  I will update you as soon a I sign the lease on the first location and let you know about the second.  I hear you might be coming to California to pay us a visit?  I look forward to meeting you in person.  Please if you have any other questions please let me know.

All the best,
Joe Maroun Jr.


On Wed, Apr 2, 2014 at 8:33 AM, 冉 <zhengranbeijing@163.com> wrote:

How's the project coming along? Are you sign the lease?
and What time can open restaurant？
Wish you good luck and look forward to your reply！

Ran

发自我的 iPhone

**From:** Joanna Luan
**Sent:** Fri, 1 Nov 2013 19:20:39 -0700
**To:** zhengranbeijing@163.com
**Subject:** Fwd: FW: EB-5 advice

---------- 转发的邮件 ----------
发件人: **joseph maroun**
日期: 2013年10月31日星期四
主题: Fwd: FW: EB-5 advice
收件人: Joanna Luan <joanna.luan@gmail.com>

Hi Joanna,

Please read the thread of e-mails below.  I will give you a call after 2:00pm tomorrow to discuss the e-mail.  Please let me know if you will be available to chat.
Thanks,
Joseph

---------- Forwarded message ----------
From: **Shoesmith, Thomas M.** <thomas.shoesmith@pillsburylaw.com>
Date: Thu, Oct 31, 2013 at 11:55 AM
Subject: FW: EB-5 advice
To: "joemarounjr@gmail.com" <joemarounjr@gmail.com>, "Fredrick Voigtmann (fred@igvlaw.com)" <fred@igvlaw.com>
Cc: "Bebb, Richard S." <richard.bebb@pillsburylaw.com>

Joe, I took the liberty of reaching out to the son of a very close acquaintance of mine from Shanghai days, Fred Voigtmann. His father, also named Fred, was the Chairman of the board of directors of the Concordia International School Shanghai, on which I served for many years. The son is a leading EB-5 lawyer based in LA. Both father (who is also an immigration lawyer) and son speak Mandarin and spent much of their lives in Taiwan.

Please see the thread below about the threshold concern that I had, which I mentioned on our call the other day. I think it would be a very good idea to have an conference call at your convenience to let Fred introduce himself to you and have a preliminary chat about the EB-5 issues involved.

Fred, please meet Joe Maroun, a long-time client of one of my partners and a seasoned entrepreneur here in the Bay Area.

Joe, if you agree it would be useful to have a call, I will coordinate a time and circulate a dial-in.

**Tom Shoesmith** | Pillsbury Winthrop Shaw Pittman LLP
Partner
2550 Hanover Street | Palo Alto, CA 94304-1114
t 650.233.4553 | c 650.888.2611
tom.shoesmith@pillsburylaw.com | pillsburylaw.com

---

**From:** Fredrick Voigtmann [mailto:fred@igvlaw.com]
**Sent:** Thursday, October 31, 2013 11:38 AM
**To:** Shoesmith, Thomas M.
**Subject:** RE: EB-5 investor

Hi Tom:

You are not off base.

According to the USCIS, the new commercial enterprise must be principally doing business in a targeted employment area ("TEA") in order for the investor to qualify by investing the reduced capital investment amount of $500,000.  Otherwise, the requirement amount is $1 million.

Here is the language from the latest Policy Memo from USCIS (EB-5 Policy Memo, 05/30/2013):

*"For the purpose of the EB-5 Program, a new commercial enterprise is "principally doing business" in the location where it regularly, systematically, and continuously provides goods or services that support job creation. If the new commercial enterprise provides such goods or services in more than one location, it will be deemed to be "principally doing business" in the location that is most significantly related to the job creation. Factors to be considered in making this determination may include, but are not limited to, (1) the location of any jobs directly created by the new commercial*

*enterprise; (2) the location of any expenditure of capital related to the creation of jobs; (3) where the new commercial enterprise conducts its day-to-day operation; and (4) where the new commercial enterprise maintains its assets that are utilized in the creation of jobs. Matter of Izummi, 22 I&N Dec. at 174."*

I would be happy to discuss this with you or with them in greater detail.  Feel free to pass my information on to them.

Thanks,

Fred Voigtmann, Esq.

LAW OFFICE OF FRED VOIGTMANN, P.C.

21700 Oxnard Street, Suite 360

Woodland Hills, CA 91367

Tel: (818) 887-7839

www.igvlaw.com

---

**From:** Shoesmith, Thomas M. [mailto:thomas.shoesmith@pillsburylaw.com]
**Sent:** Thursday, October 31, 2013 10:18 AM
**To:** Fredrick Voigtmann
**Subject:** RE: EB-5 investor

We have a client in the fast-food business who has been approached by a Chinese finder about channeling EB-5 investment money into a new chain of restaurants. There is no Regional Center involved. The Chinese finder says "no problem" putting the principal place of business of the investee company in Location A (say, East Oakland), but hiring people and opening the restaurant in Location B (say, downtown Palo Alto). I am deeply skeptical. Am I off base?

**Tom Shoesmith** | Pillsbury Winthrop Shaw Pittman LLP
Partner
2550 Hanover Street | Palo Alto, CA 94304-1114
t 650.233.4553 | c 650.888.2611
tom.shoesmith@pillsburylaw.com | pillsburylaw.com

| | |
|---|---|
| **From:** | Joanna Luan |
| **Sent:** | Wed, 20 Nov 2013 20:13:15 -0700 |
| **To:** | zhengranbeijing |
| **Subject:** | Fwd: Store design sketches |
| **Attachments:** | Design 1.PDF, Design 2.PDF |

---------- 已转发邮件 ----------
发件人: **Joanna Luan** <joanna.luan@gmail.com>
日期: 2013年11月20日下午7:58
主题: Fwd: Store design sketches
收件人: zhengranbeijing <zhengranbeijing@163.com>

Dear,

如图, Joe已经开始前面和后台要呈现的效果, 这是他自己勾划的草图, 然后会跟设计公司沟通, 让他们按他的意思电脑合成图。所以一旦开始, 就没有办法停下来。我们每进一步都会知会你的。当然你的合理中肯的建议他们也会倾听采纳。

悦悦

---------- Forwarded message ----------
From: <bluecadi@aol.com>
Date: 2013/11/20
Subject: Store design sketches
To: joanna.luan@gmail.com

As per Joe.

| | |
|---|---|
| **From:** | Joanna Luan |
| **Sent:** | Thu, 27 Mar 2014 20:16:22 -0700 |
| **To:** | zhengranbeijing |
| **Subject:** | Fwd: Azour, LLC - Form W-9 vs W-7 |

---------- 转发的邮件 ----------
发件人: **joseph maroun** <joemarounjr@gmail.com>
日期: 2014年3月27日星期四
主题: Re: Azour, LLC - Form W-9 vs W-7
收件人: Kailas Patel <KPatel@bpmcpa.com>, Joanna Luan <joanna.luan@gmail.com>
抄送: Dennis Brach <DBrach@bpmcpa.com>

Hi Joanna,

Please read the e-mail below and provide the information that is requested.  Please copy me on the e-mail.  Any questions please let me know.
Thanks,
Joe

On Thu, Mar 27, 2014 at 1:04 PM, Kailas Patel <KPatel@bpmcpa.com> wrote:

Hi Joe,

Thanks so much for getting back to us with Zheng's address. We will need to file Form W-7 to obtain an individual taxpayer identification number for her. In order for us to complete the form, we will need to request the following information from Zheng.

1.   Her full name, as it appears on her passport (any middle initials, etc.)

2.   Date of Birth

3.   Country of Birth

4.   Has she visited the U.S. before? If so, can she please provide us with the type of U.S. Visa she was issued (if any), the number, and the expiration date for the Visa?

Once we obtain this information, we will complete the form, and email it back to you. Zheng will have to sign the form and mail it to the IRS at the address listed below. She will also have to mail her original passport with the form. (It should take approximately 1-2 months for the IRS to process this form, therefore, if she is planning on taking a trip, she should submit the form and passport after she returns from her trip.)

**Form W-7 and her original passport should be mailed to:**

Internal Revenue Service

ITIN Operation

P.O. Box 149342

Austin, TX 78714-9342

Please feel free to contact us if you have any questions.

King Regards,

Kailas

**Kailas Patel, CPA**

**Burr Pilger Mayer, Inc.**

**60 South  Market St., Suite 800**

**San Jose, CA 95113**

**Tel:  408-961-6348**

www.bpmcpa.com



---

**From:** joseph maroun [mailto:joemarounjr@gmail.com]
**Sent:** Thursday, March 27, 2014 12:04 PM
**To:** Kailas Patel; Dennis Brach

**Subject:** Fwd: Azour, LLC - Form W-9 vs W-7


Hi All,


Below is the address for the investor.  Please let me know if you have any other questions and when the filing will be complete.

Thanks,

Joe Maroun Jr.

---------- Forwarded message ----------
From: **Joanna Luan** <joanna.luan@gmail.com>
Date: Thu, Mar 27, 2014 at 7:48 AM
Subject: Fwd: Azour, LLC - Form W-9 vs W-7
To: joseph maroun <joemarounjr@gmail.com>


Hi,


Joseph,  pls check the address

---------- 转发的邮件 ----------
发件人：冉 <zhengranbeijing@163.com>
日期：2014年3月27日星期四
主题：Re: Azour, LLC - Form W-9 vs W-7
收件人：Joanna Luan <joanna.luan@gmail.com>


Beijing Xicheng District Baiyun Road, Baiyun Xili on No. eight two  unit 601（100045）Ran ZHENG


发自我的 iPhone


在 2014年3月27日，12:21，Joanna Luan <joanna.luan@gmail.com> 写道：


**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
***Joanna Luan***


---------- Forwarded message ----------
From: **joseph maroun** <joemarounjr@gmail.com>
Date: 2014-03-26 14:57 GMT-07:00
Subject: Re: Azour, LLC - Form W-9 vs W-7
To: Kailas Patel <KPatel@bpmcpa.com>, Joanna Luan <joanna.luan@gmail.com>
Cc: Dennis Brach <DBrach@bpmcpa.com>


Hi Joanna,


Please read the e-mail below and send the information to Kailas and Dennis as soon as possible please copy me on the e-mail you send.  Any questions please let me know.

Thanks,

Joe Jr.


On Wed, Mar 26, 2014 at 11:41 AM, Kailas Patel <KPatel@bpmcpa.com> wrote:

New                                    Tax                                    Laws

There have been many recent tax law changes. For more information about these new tax laws, please visit our website                                    at                                    www.bpmcpa.com

IRS CIRCULAR 230 NOTICE: Please be advised that, based on current IRS rules and standards, the advice above was not intended or written to be used, and it cannot be used by the taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer. If this message is provided in any manner to another taxpayer, he or she cannot use the advice and should seek advice based on his or her own particular circumstances from an independent                                    tax                                    advisor.

CONFIDENTIALITY NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.



--
*****************************************
*Joanna Luan*

**From:**      Joanna Luan
**Sent:**      Tue, 12 Nov 2013 08:37:41 -0700
**To:**      zhengranbeijing@163.com
**Subject:**      Exhibit A 翻译

购买价格计算

购买价格将按以下方式计算：

a：70万美金保证金，另加上b.Joseph  M Maroun和 Joseph J Maroun
在经营AZOUR公司五年税后盈利所得扣除70万本金的一半盈利.

## FOR INCOMING WIRES USE THE FOLLOWING INFORATION:

- Wire routing transit number (RTN/ABA): 121000248
  For international wires only — SWIFT BIC: WFBIUS6S
- Bank name: Wells Fargo Bank, N.A.
- Bank address: 420 Montgomery, San Francisco, CA 94104
- Beneficiary account number: Customer's complete Wells Fargo account number including leading zeros



BANK ACCOUNT
# 1541414775





# EXHIBIT E

**VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

15.

## EXHIBIT A
## FORMULA FOR CALCULATING PURCHASE PRICE

The Purchase Price under Article 1 of the Membership Interest Purchase Agreement shall be calculated in accordance with the following formula:

(a) $700,000, plus (b) one-half of the amount by which the aggregate of the income of Azour allocable to Joseph M. Maround and Joseph J. Maroun over the first five years after the [ * ] exceeds $700,000, calculated on an after-tax basis.

郑然

ZHENG RAN

Z.R.

11. 12. 2013

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT F

**VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

**201331710261**

| LLC-1 | **Articles of Organization**<br>**of a Limited Liability Company (LLC)** |
|---|---|

To form a limited liability company in California, you can fill out this form, and submit for filing along with:

- – A **$70** filing fee.
- – A separate, non-refundable **$15** service fee also must be included, if you drop off the completed form or document.

**Important!** LLCs in California may have to pay a minimum $800 yearly tax to the California Franchise Tax Board. For more information, go to https://www.ftb.ca.gov.

LLCs may not provide "professional services," as defined by California Corporations Code sections 13401(a) and 13401.3.

Note: Before submitting the completed form, you should consult with a private attorney for advice about your specific business needs.

**FILED** ꝺꝺ/ꞁꞷꝛ
Secretary of State
State of California

**NOV 1 2 2013**

1 CC

This Space For Office Use Only

**For questions about this form, go to** www.sos.ca.gov/business/be/filing-tips.htm.

**LLC Name**

① Azour LLC
   *Proposed LLC Name*

The name **must** end with: "LLC," "L.L.C.," "Limited Liability Company," "Limited Liability Co.," "Ltd. Liability Co." or "Ltd. Liability Company;" and **may not** include: "bank," "trust," "trustee," "incorporated," "inc.," "corporation," or "corp.," "insurer," or "insurance company." For general entity name requirements and restrictions, go to www.sos.ca.gov/business/be/name-availability.htm.

**Purpose**

② The purpose of the limited liability company is to engage in any lawful act or activity for which a limited liability company may be organized under the Beverly-Killea Limited Liability Company Act.

**LLC Addresses**

③ a. 33333 Western Ave., Union City, CA 94587
   *Initial Street Address of LLC*          *City (no abbreviations)*    *State*   *Zip*

   b.
   *Initial Mailing Address of LLC, if different from 3a*     *City (no abbreviations)*    *State*   *Zip*

**Service of Process** (List a California resident or an active 1505 corporation in California that agrees to be your initial agent to accept service of process in case your LLC is sued. You may list any adult who lives in California. You may **not** list an LLC as the agent. **Do not** list an address if the agent is a 1505 corporation.)

④ a. Joseph J. Maroun
   *Agent's Name*

   b. 33333 Western Ave., Union City                     CA 94587
   *Agent's Street Address (if agent is not a corporation)*     *City (no abbreviations)*    *State · Zip*

**Management** (Check only one.)

⑤ The LLC will be managed by:

   ☐ One Manager    ☐ More Than One Manager    ☑ All Limited Liability Company Member(s)

This form must be signed by each organizer. If you need more space, attach extra pages that are 1-sided and on standard letter-sized paper (8 1/2" x 11"). All attachments are made part of these articles of organization.

▶ *(signature)*              Thomas M. Shoesmith
   *Organizer - Sign here*         *Print your name here*

| Make check/money order payable to: **Secretary of State**<br>Upon filing, we will return one (1) uncertified copy of your filed document for free, and will certify the copy upon request and payment of a $5 certification fee. | **By Mail**<br>Secretary of State<br>Business Entities, P.O. Box 944228<br>Sacramento, CA 94244-2280 | **Drop-Off**<br>Secretary of State<br>1500 11th Street, 3rd Floor<br>Sacramento, CA 95814 |
|---|---|---|

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT G

**VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

Wells Fargo Account Summary                                                                          2/12/14, 8:44 AM

 THE PRIVATE BANK

Last Sign On: February 12, 2014
# Account Summary

AZOUR LLC Accounts

## Assets

| Account | Balance |
|---|---|
| | **$949,588.14** |
| **Cash Accounts** | |
| BUSINESS CHECKING XXXXXX1940 | $50.00 |
| BUSINESS MARKET RATE SAVINGS XXXXX4775 | $949,538.14 |
| **Total Assets** | **$949,588.14** |

## Wealth Management Resources

As of 11:28 AM ET 02/12/2014



| Index | Last | Change | %Change |
|---|---|---|---|
| DJIA | 15,951.22 | -43.55 | -0.27 ▼ |
| NASDAQ | 4,195.88 | 4.84 | 0.12 ▲ |
| AMEX | 2,340.19 | 29.48 | 1.28 ▲ |
| S&P 500 | 1,818.26 | -1.49 | -0.08 ▼ |
| Russell 2000 | 1,130.83 | 1.67 | 0.15 ▲ |

**Wells Fargo Reports and Analysis**

**The Return of Tax-Efficient Investing**

**Wells Fargo Conversations Magazine Winter 2013**

**Focus 2014 Special Report**

**Rethinking Credit**

**January 2014 Asset Allocation Strategy Report**

You need Adobe® Reader® to read PDF files.  Download Adobe Reader  for free.  **Important Reminder:** Accessing PDFs from a Mac or a PC may require additional customer action. Learn more

Brokerage products are offered through Wells Fargo Advisors, LLC (Member SIPC) and Wells Fargo Advisors Financial Network, LLC (Member SIPC), non-bank affiliates of Wells Fargo & Company.

Some of the data on this page is provided by a third party and is believed to be accurate. Wells Fargo & Company does not guarantee the accuracy of this data. You will need to evaluate the merits and risks associated with relying on any information provided.

Wells Fargo & Company cannot provide tax or legal advice and does not offer any advice regarding the nature, potential value or suitability of any particular security, transaction or investment strategy. Under no circumstances should the information contained herein be used or considered as an offer to sell or a solicitation of an offer to buy a particular investment. Please consult your tax and/or legal advisor to determine how any information provided may apply to your own situation.

System response and account access times may vary due to a variety of factors, including trading volumes, market conditions and system performance.

Market data and quotes are delayed at least 20 minutes during market hours, unless otherwise indicated.

Dow Jones Indexes(sm) are proprietary to and distributed by Dow Jones & Company, Inc.
S&P index data is the property of the Chicago Mercantile Exchange, Inc. and its licensors.
Russell® and the Russell 2000® Index are trademark/service marks of the Frank Russell Company.
MarketWatch, the MarketWatch logo, and BigCharts are registered trademarks of MarketWatch, Inc.

⌂ Equal Housing Lender
© 1995 – 2014 Wells Fargo. All rights reserved.



# THE PRIVATE BANK

Last Sign On: December 18, 2013
## Account Summary

AZOUR LLC Accounts

### Assets

| Account | Balance |
|---|---|
| **Cash Accounts** | **$557,723.13** |
| BUSINESS CHECKING XXXXXX1940 | $50.00 |
| BUSINESS MARKET RATE SAVINGS XXXXXX4775 | $557,673.13 |
| **Total Assets** | **$557,723.13** |

## Wealth Management Resources



| Index | Last | Change | %Change |
|---|---|---|---|
| DJIA | 16,167.97 | 292.71 | 1.84 ▲ |
| NASDAQ | 4,070.06 | 46.38 | 1.15 ▲ |
| AMEX | 2,337.92 | -8.15 | -0.35 ▼ |
| S&P 500 | 1,810.65 | 29.65 | 1.66 ▲ |
| Russell 2000 | 1,133.72 | 14.83 | 1.33 ▲ |

As of 4:30 PM ET 12/18/2013

### Wells Fargo Reports and Analysis

The Return of Tax-Efficient Investing

**Rethinking Credit**

**November 2013 Asset Allocation Strategy Report**

**Wells Fargo Conversations Magazine Summer 2013**

**Focus 2013 Mid-Year Update**

You need Adobe® Reader® to read PDF files.  Download Adobe Reader for free.  **Important Reminder**: Accessing PDFs from a Mac or a PC may require additional customer action. Learn more

Brokerage products are offered through Wells Fargo Advisors, LLC (Member SIPC) and Wells Fargo Advisors Financial Network, LLC (Member SIPC), non-bank affiliates of Wells Fargo & Company.

Some of the data on this page is provided by a third party and is believed to be accurate. Wells Fargo & Company does not guarantee the accuracy of this data. You will need to evaluate the merits and risks associated with relying on any information provided.

Wells Fargo & Company cannot provide tax or legal advice and does not offer any advice regarding the nature, potential value or suitability of any particular security, transaction or investment strategy. Under no circumstances should the information contained herein be used or considered as an offer to sell or a solicitation of an offer to buy a particular investment. Please consult your tax and/or legal advisor to determine how any information provided may apply to your own situation.

System response and account access times may vary due to a variety of factors, including trading volumes, market conditions and system performance.

Market data and quotes are delayed at least 20 minutes during market hours, unless otherwise indicated.

Dow Jones Indexes(sm) are proprietary to and distributed by Dow Jones & Company, Inc.
S&P index data is the property of the Chicago Mercantile Exchange, Inc. and its licensors.
Russell® and the Russell 2000® Index are trademark/service marks of the Frank Russell Company.
MarketWatch, the MarketWatch logo, and BigCharts are registered trademarks of MarketWatch, Inc.

⌂ Equal Housing Lender
© 1995 – 2013 Wells Fargo. All rights reserved.

致：交通银行
TO: BANK OF COMMUNICATIONS,
SHANGHAI, P.R. CHINA

APPLICATION FOR FUNDS TRANSFERS (OVERSEAS)

日期 Date 2014.2.11

| ☑电汇 T/T | ☐票汇 D/D | ☐信汇 M/T | 发电等级 Priority | ☐普通 Normal | ☐加急 Urgent |

| 中国号码 BOP Reporting No | ☐☐☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐☐☐☐ | ☐☐☐☐ |

| 20 | 银行业务编号 Bank Transac. Ret.No | | 收电行编号 Received/Drawn Bank |

| 32A 汇款币种及金额 Currency & Interbank Settlement Amount | USD 50000.— | 金额大写 Amount in Words | 美元伍万元整 |

| 其 | 现汇金额 Amount in FX | | 账号 Account No./Credit Card No. | |
| 中 | 购汇金额 Amount of Purchase | USD 50000 | 账号 Account No./Credit Card No. | UCFFI2909101847C6 |
| | 其他金额 Amount of Others | | 账号 Account No./Credit Card No. | |

| 50a 汇款人名称及地址 Remitter's Name & Address | 潘蓉   浙江杭州上金地丽池333 | 取蓉 |
| ☐对公 组织机构代码 Unit Code ☐☐☐☐☐☐☐☐—☐ | ☑个私 | 个人身份证件号码 Individual ID NO 110101197904342042  ☑中国居民个人 Resident Individual  ☐中国非居民个人 Non-Resident Individual |

| 54/56a 收款银行之代理行 名称及地址 Correspondent of Beneficiary's Bank Name & Address | |

| 57a 收款人开户银行 名称及地址 Beneficiary's Bank Name & Address | 收款人开户银行在其代理行账号 Bene's Bank A/C No.  SWIFT WFBIUS6S  ABA: 121000248
WELLS FARGO BANK. N.A.
420 Montgomery, San Francisco. CA 94104 |

| 59a 收款人名称及地址 Beneficiary's Name & Address | 收款人账号 Bene's A/C No. 1541414775
Joseph. J. Maroun
3222 Western Ave. Union City. CA 94587 |

| 70 汇款附言 Remittance Information | 只限140个字位 Not Exceeding 140 Characters | 71A 国内外费用承担 All Bank's Charges If Any Are To Be Borne By  ☐汇款人 OUR  ☐收款人 BEN  ☑共同 SHA |

| 收款人常驻国家（地区）名称及代码 Resident Country/Region Name & Code | ☐☐☐ |

| 请选择: ☐预付货款 Advance Payment | ☐货到付款 Payment Against Delivery | ☐退款 Refund | ☐其他 Others |

| 交易编码 BOP Transac Code ☐☐☐☐☐☐  ☐☐☐☐☐☐ | 相应币种及金额 Currency & Amount | 文易附言 Transac Remark |

| 本笔款项是否为保税货物项下付款 ☐是 ☐否 | 合同号 | 发票号 |

| 外汇局批件号/备案表号/业务编号 | |

| 银行使用栏 For Bank Use Only | 申请人签章 Applicant's Signature | 银行签章 Bank's Signature |
| 购汇汇率 Rate @ | | 请按照贵行背页所列条款代办以上汇款并进行申报 Please Effect The Upwards Remittance, Subject To The Conditions Overleaf. | 交通银行 北京市方庄支行 2014.02.11 会计业务章 (21) |
| 等值人民币 RMB Equivalent | | |
| 手续费 Commission | | 请您注意, 根据国际惯例、国际汇款汇出后, 转汇行或解付行一般要从本金中收取一定的费用, 此类费用我行不负责偿付。请您仔细阅读本提示后, 在本栏申请人姓名处签字。 | |
| 电报费 Cable Charges | | |
| 合计 Total Charges | | |
| 支付费用方式 In Payment of the Remittance | ☐现金 by Cash  ☐支票 by Check  ☐账户 from Account | 申请人姓名 Name of Applicant 潘蓉  电话 Phone No 6610585 | 核对人签字 Authorized Person  日期 Date |
| 核印 Sig. Ver. | | 经办 Maker | 复核 Checker |

填写前请仔细阅读各联背面条款及填报说明
Please read the conditions and instructions overleaf before filling in this application.

中国农业银行
AGRICULTURAL BANK OF CHINA
境 外 汇 款 申 请 书
APPLICATION FOR FUNDS TRANSFERS (OVERSEAS)

致 中国农业银行 行
TO AGRICULTURAL BANK OF CHINA
BRANCH

日 期
Date

□ 电汇 T/T  □ 票汇 D/D  □ 信汇 M/T

发电等级
Priority
□ 普通 Normal  □ 加急 Urgent

| 申 报 号 码 BOP Reporting No. | □□□□□□ □□□□ □□ □□□□□□ □□□□ |

| 20 | 银行业务编号 Bank Transac. Ref.No | | 收电行／付款行 Receiver/Drawn on |
| 32A | 汇款币种及金额 Currency & Interbank Settlement Amount | USD 51000 | 金 额 大 写 Amount in Words | 伍万美元整 |
| 其 | 现汇金额 Amount in FX | | 账号 Account No./Credit Card No. |
| 中 | 购汇金额 Amount of Purchase | | 账号 Account No./Credit Card No. |
| | 其他金额 Amount of Others | | 账号 Account No./Credit Card No. |

| 50a | 汇款人名称及地址 Remitter's Name & Address | 郑州市河南行市弘化陶瓷小商品城1号 | 个人身份证件号码 Individual ID NO. 36010____857____273361 |
| | □ 对公 组织机构代码 Unit Code □□□□□□□□—□ | □ 对私 ☑ 中国居民个人 Resident Individual □ 中国非居民个人 Non-Resident Individual |

| 54/56a | 收款银行之代理行 名称及地址 Correspondent of Beneficiary's Bank Name & Address | |
| 57a | 收款人开户银行 名称及地址 Beneficiary's Bank Name & Address | 收款人开户银行在其代理行账号 Bene's Bank A/C No. WFBIUS6S Wells Fargo Bank N.A. 420 Montgomery, San Francisco CA 94104 |
| 59a | 收款人名称及地址 Beneficiary's Name & Address | 收款人账号 Bene's A/C No. 1541414725 Azole LLC 3333 Western Ave, Union City, CA 94587 |
| 70 | 汇款附言 Remittance Information | 只限 140 个字位 Not Exceeding 140 Characters | 71A | 国内外费用承担 All Bank's Charges If Any Are To Be Borne By □ 汇款人 OUR □ 收款人 BEN □ 共同 SHA |

收款人常驻国家（地区）名称及代码 Resident Country/Region Name & Code □□□

请选择： □ 预付货款 Advance Payment  □ 货到付款 Payment Against Delivery  □ 退款 Refund  □ 其他 Others

| 交易编号 BOP Transac. Code | □□□□□□ □□□□□□ | 相应币种及金额 Currency & Amount | | 交易附言 Transac. Remark | |

本笔款项是否为保税货物项下付款 □ 是 □ 否  合同号 _____  发票号 _____

外汇局批件号／备案表号／业务编号 _____

| 银行专用栏 For Bank Use Only | | 申 请 人 签 章 Applicant's Signature | 银 行 签 章 Bank's Signature |
| 购汇汇率 Rate @ | 1.9 54 | 请按照贵行背页所列条款代办以上汇款并进行申报 Please Effect The Upwards Remittance, Subject To The Conditions Overleaf！ | |
| 等值人民币 RMB Equivalent | | | |
| 手续费 Commission | | | |
| 电报费 Cable Charges | | | |
| 合计 Total Charges | | | |
| 支付费用方式 In Payment of the Remittance | □ 现金 by Cash □ 支票 by Check □ 账户 from Account | 申请人姓名 Name of Applicant 电话 Phone No. | 核准人签字 Authorized Person 日期 Date |
| 钱印 Sig. Ver | | 经办 Maker | 复核 Checker |

填写前请仔细阅读各联背面条款及填报说明
Please read the conditions and instructions overleaf before filling in this application.

第二联 申报主体留存联

致: 招商银行
TO: CHINA MERCHANTS BANK

**APPLICATION FOR FUNDS TRANSFERS (OVERSEAS)**

日期 Date

凭证号: 000001474761

| | | |
|---|---|---|
| | ☑ 电汇 T/T ☐ 票汇 D/D ☐ 信汇 M/T | 发电等级 Priority ☑ 普通 Normal ☐ 加急 Urgent |

| 20 | 申报号码 BOP Reporting No | ☐☐☐☐☐☐ ☐☐☐☐ ☐☐ ☐☐☐☐☐☐ ☐☐☐☐ | |
|---|---|---|---|
| | 银行业务编号 Bank Transac Ref.No | 收电行／付款行 Receiver/Drawn on | |
| 32A | 汇款币种及金额 Currency & Interbank Settlement Amount | 美金 50000 | 金额／大写 Amount in Words |
| 其 中 | 现汇金额 Amount in FX | | 账号 Account No/Credit Card No. |
| | 购汇金额 Amount of Purchase | 15053100 | 账号 Account No/Credit Card No. |
| | 其他金额 Amount of Others | | 账号 Account No/Credit Card No. |
| 50a | 汇款人名称及地址 Remitter's Name & Address | 高维林 北京市朝阳区石佛营石佛里8号1,601 | 个人身份证件号码 Individual ID NO. 341500,9,7,4,031326 |
| | ☐ 对公 组织机构代码 Unit Code ☐☐☐☐☐☐☐☐-☐ | ☑ 对私 ☑ 中国居民个人 Resident Individual ☐ 中国非居民个人 Non-Resident Individual | |

| 54/56a | 收款银行之代理行 名称及地址 Correspondent of Beneficiary's Bank Name & Address | | |
|---|---|---|---|
| 57a | 收款人开户银行 名称及地址 Beneficiary's Bank Name & Address | 收款人开户银行在其代理行账号 Bene's Bank A/C No SWIFT WFBIUS6S WELLS FARGO BANK N.A 420 MONTGOMERY SAN FRANCISCO, CA 94104 | |
| 59a | 收款人名称及地址 Beneficiary's Name & Address | 收款人账号 Bene's A/C No. 1521414775 JOSEPH J. MAROUN 2933 WESTERN AVE, UNION CITI CA 94587 | |
| 70 | 汇款附言 Remittance Information | 只限 140 个字位 Not Exceeding 140 Characters | 71A 国内外费用承担 All Bank's Charges If Any Are To Be Borne By ☐ 汇款人 OUR ☐ 收款人 BEN ☑ 共同 SHA |

| 收款人常驻国家（地区）名称及代码 Resident Country/Region Name & Code | | 美国 1 0 0 |
|---|---|---|

请选择: ☐ 预付货款 Advance Payment ☐ 货到付款 Payment Against Delivery ☐ 退款 Refund ☐ 其他 Others

| 交易编码 BOP Transac Code | ☐☐☐☐☐☐ ☐☐☐☐☐☐ | 相应币种及金额 Currency & Amount | 美金 50000 人民币 | 交易附言 Transac Remark | |
|---|---|---|---|---|---|
| 本笔款项是否为保税货物项下付款 | ☐ 是 ☐ 否 | 合同号 | | 发票号 | |
| 外汇局批件号/备案表号/业务编号 | | | | | |

| 银行专用栏 For Bank Use Only | | 申请人签章 Applicant's Signature | 银行签章 Bank's Signature |
|---|---|---|---|
| 购汇汇率 Rate @ | | 请按照贵行背页所列条款代办以上汇款并进行申报 Please Effect The Upwards Remittance, Subject To The Conditions Overleaf | |
| 等值人民币 RMB Equivalent | | | |
| 手续费 Commission | | | |
| 电报费 Cable Charges | | | |
| 合计 Total Charges | | | |
| 支付费用方式 In Payment of the Remittance | ☐ 现金 by Cash ☐ 支票 by Check ☐ 账户 from Account | 申请人姓名 Name of Applicant 电话 Phone No. 18410034844 | 核准人签章 Authorized Person 日期 Date |
| 核印 Sig. Ver. | | 经办 Maker | 复核 Checker |

填写前请仔细阅读各联背面条款及填报说明
Please read the conditions and instructions overleaf before filling in this application.

AGRICULTURAL BANK OF CHINA    **APPLICATION FOR FUNDS TRANSFERS (OVERSEAS)**

致 中国农业银行 _____ 行
TO: AGRICULTURAL BANK OF CHINA
_____ BRANCH

日期 Date _____

□ 电汇 T/T  □ 票汇 D/D  □ 信汇 M/T

发电等级 Priority  □ 普通 Normal  □ 加急 Urgent

| 申报号码 BOP Reporting No. | □□□□□□ | □□□□ | □□□□□□ | □□□□ |
|---|---|---|---|---|

| 20 | 银行业务编号 Bank Transac. Ref.No | | 收电行／付款行 Receiver/Drawn on | |
|---|---|---|---|---|

| 32A | 汇款币种及金额 Currency & Interbank Settlement Amount | | 金额大写 Amount in Words | |
|---|---|---|---|---|

| 其中 | 现汇金额 Amount in FX | | 账号 Account No./Credit Card No. | |
|---|---|---|---|---|
| | 购汇金额 Amount of Purchase | | 账号 Account No./Credit Card No. | |
| | 其他金额 Amount of Others | | 账号 Account No./Credit Card No. | |

| 50a | 汇款人名称及地址 Remitter's Name & Address | HOU QIANG ... EAP XX JX CN |
|---|---|---|

个人身份证件号码 Individual ID NO. _____

□ 对公 组织机构代码 Unit Code □□□□□□□□—□   □ 对私   □ 中国居民个人 Resident Individual   □ 中国非居民个人 Non-Resident Individual

| 54/56a | 收款银行之代理行名称及地址 Correspondent of Beneficiary's Bank Name & Address | |
|---|---|---|

| 57a | 收款人开户银行名称及地址 Beneficiary's Bank Name & Address | 收款人在其代理行账号 Bene's Bank A/C No.  WFBIUS6S |
|---|---|---|
| | | WELLS FARGO BANK, N.A |
| | | 45 MONTGOMERY SAN FRANCISCO CA 94104 |

| 59a | 收款人名称及地址 Beneficiary's Name & Address | 收款人账号 Bene's A/C No.  1041410755 |
|---|---|---|
| | | AZUR LLC |
| | | 3333 WESTERN AVE, UNION CITY, CA 94587 |

| 70 | 汇款附言 Remittance Information | 只限140个字位 Not Exceeding 140 Characters | 71A | 国内外费用承担 All Bank's Charges If Any Are To Be Borne By |
|---|---|---|---|---|
| | | 旅游货团 | | □汇款人 OUR   □收款人 BEN   □共同 SHA |

收款人常驻国家（地区）名称及代码  Resident Country/Region Name & Code _____  □□□

请选择: □ 预付货款 Advance Payment   □ 货到付款 Payment Against Delivery   □ 退款 Refund   □ 其他 Others

| 交易编码 BOP Transac. Code | □□□□□□ □□□□□□ | 相应币种及金额 Currency & Amount  11,05150.C | 交易附言 Transac. Remark  旅游货团 |
|---|---|---|---|

本笔款项是否为保税货物项下付款  □ 是  □ 否   合同号 _____   发票号 _____

外汇局批件号／备案表号／业务编号 _____

| 银行专用栏 For Bank Use Only | | 申请人签章 Applicant's Signature | 银行签章 Bank's Signature |
|---|---|---|---|
| 购汇汇率 Rate @ | 6.0514 | 请按照贵行背页所列条款代办以上汇款并进行申报 Please Effect The Upwards Remittance, Subject To The Conditions Overleaf: | |
| 等值人民币 RMB Equivalent | ¥ 7,400.00 | | |
| 手续费 Commission | | | |
| 电报费 Cable Charges | | | |
| 合计 Total Charges | | | |
| 支付费用方式 In Payment of the Remittance | □ 现金 by Cash  □ 支票 by Check  □ 账户 from Account | 申请人姓名 Name of Applicant  侯强 | 核准人签章 Authorized Person |
| | | 电话 Phone No. | 日期 Date |
| 核印 Sig. Ver | | 经办 Maker | 复核 Checker |

填写前请仔细阅读各联背面条款及填报说明
Please read the conditions and instructions overleaf before filling in this application.

境外汇款申请书
APPLICATION FOR FUNDS TRANSFERS (OVERSEAS)

致 招商银行
TO: CHINA MERCHANTS BANK

凭证号 000302154641

日期
Date

☐ 电汇 T/T ☐ 票汇 D/D ☐ 信汇 M/T

发电等级
Priority ☐ 普通 Normal ☐ 加急 Urgent

| 申报号码 BOP Reporting No. | ☐☐☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐☐☐☐ | ☐☐☐☐ |
|---|---|---|---|---|---|

| 20 | 银行业务编号 Bank Transac. Ref No. | | 收电行/付款行 Receiver/Drawn on | |
|---|---|---|---|---|

| 32A | 汇款币种及金额 Currency & Interbank Settlement Amount | 1 0 79 4 | 金额大写 Amount in Words | 玖仟柒佰玖拾肆美元整 |
|---|---|---|---|---|
| 其中 | 现汇金额 Amount in FX | 9609 9 10 | 账号 Account No./Credit Card No. | bn 01000 65472 |
| | 购汇金额 Amount of Purchase | | 账号 Account No./Credit Card No. | |
| | 其他金额 Amount of Others | | 账号 Account No./Credit Card No. | |

| 50a | 汇款人名称及地址 Remitter's Name & Address | 郭闯 北京市海淀区信息路信息路军事号...1601室 |
|---|---|---|
| ☐ 号公 组织机构代码 Unit Code ☐☐☐☐☐☐☐☐-☐ | 个人身份证件号码 Individual ID NO | |
| | ☐ 对私 ☑ 中国居民个人 Resident Individual ☐ 中国非居民个人 Non-Resident Individual | |

| 54/56a1 | 收款银行之代理行名称及地址 Correspondent of Beneficiary's Bank Name & Address | 郭闯 |
|---|---|---|

| 57a | 收款人开户银行名称及地址 Beneficiary's Bank Name & Address | 收款人开户银行在其代理行账号 Bene's Bank A/C No. ✓ BUFAUS3N |
|---|---|---|
| | | Bank of America - 567 Main Street Pleasanton CA 94377 |

| 59d | 收款人名称及地址 Beneficiary's Name & Address | 收款人账号 Bene's A/C No. 0255 16070 |
|---|---|---|
| | | Lin Yue - QIAN - 70 Inthcrea - pidavs - Belting Hills Estates CA-70 |

| 70 | 汇款附言 Remittance Information | 只限140个字位 Not Exceeding 140 Characters | 71A | 国内外费用承担 All Bank's Charges If Any Are To Be Borne By ☐汇款人 OUR ☐收款人 BEN ☐共同 SHA |
|---|---|---|---|---|

| 收款人常驻国家（地区）名称及代码 Resident Country/Region Name & Code | ☐☐☐ |
|---|---|

| 请选择：☐ 预付货款 Advance Payment ☐ 货到付款 Payment Against Delivery ☐ 退款 Refund ☐ 其他 Others | | |
|---|---|---|
| 交易编码 BOP Transac. Code ☐☐☐☐☐☐ ☐☐☐☐☐☐ | 相应币种及金额 Currency & Amount Crysten | 交易附言 Transac. Remark Withhns |

| 本笔款项是否为保税货物项下付款 ☐是 ☐否 合同号 | 发票号 |
|---|---|
| 外管局批件号·备案表号·业务编号 | |

| 银行专用栏 For Bank Use Only | | 申请人签章 Applicant's Signature | 银行签章 Bank's Signature |
|---|---|---|---|
| 购汇汇率 Rate | | 请按照贵行背页所列条款代办以上汇款并进行申报 Please Effect The Upwards Remittance, Subject To The Conditions Overleaf | |
| 等值人民币 RMB Equivalent | | | |
| 手续费 Commission | | | |
| 电报费 Cable Charges | | | |
| 合计 Total Charges | | | |
| 支付费用方式 In Payment of the Remittance | ☐ 现金 by Cash ☐ 支票 by Check ☐ 账户 from Account | 申办人姓名 Name of Applicant 郭闯 电话 Phone No. 1861002086 | 核准人签字 Authorized Person 日期 Date |
| 柱印 Sig. Ver | | 经办 Maker | 复核 Checker |

填写前请仔细阅读各栏背面条款及填报说明
Please read the conditions and instructions overleaf before filling in this application

境 外 汇 款 申 请 书
APPLICATION FOR FUNDS TRANSFERS (OVERSEAS)

致：招商银行
TO: CHINA MERCHANTS BANK

日 期
Date

凭证号 000002154641

| | □ 电汇 T/T | □ 票汇 D/D | □ 信汇 M/T | 发电等级 Priority | □ 普通 Normal | □ 加急 Urgent |
|---|---|---|---|---|---|---|

| 申 报 号 码 BOP Reporting No | □□□□□□ □□□□ □□□□□□ □□□□ |
|---|---|

| 20 | 银 行 业 务 编 号<br>Bank Transac. Ref No | | 收 电 行 / 付 款 行<br>Receiver/Drawn on | |
|---|---|---|---|---|
| 32A | 结款币种及金额<br>Currency & Interbank Settlement Amount | | 金 额 大 写<br>Amount in Words | |
| 其 中 | 现汇 金额 Amount in FX | | 账号 Account No./Credit Card No. | |
| | 购汇 金额 Amount of Purchase | | 账号 Account No./Credit Card No. | |
| | 其他金额 Amount of Others | | 账号 Account No./Credit Card No. | |

| 50a | 汇款人名称及地址<br>Remitter's Name & Address | | |
|---|---|---|---|
| | □ 号公 组织机构代码 Unit Code □□□□□□□□□-□ | □ 对私 ☑ 中国居民个人 Resident Individual | 个人身份证件号码 Individual ID NO<br>□ 中国非居民个人 Non-Resident Individual |

| 54/56a | 收款银行之代理行<br>名称及地址<br>Correspondent of Beneficiary's<br>Bank Name & Address | |
|---|---|---|
| 57a | 收款人开户银行<br>名称及地址<br>Beneficiary's Bank Name<br>& Address | 收款人开户银行在其代理行账号 Bene's Bank A/C No |
| 59d | 收款人名称及地址<br>Beneficiary's Name & Address | 收款人账号 Bene's A/C No |

| 70 | 汇 款 附 言<br>Remittance Information | 只限 140 个字位 Not Exceeding 140 Characters | 71A | 国内外费用承担<br>All Bank's Charges If Any Are To Be Borne By<br>□ 汇款人 OUR  □ 收款人 BEN  □ 共同 SHA |
|---|---|---|---|---|

| 收款人常驻国家 (地区) 名称及代码  Resident Country/Region Name & Code | | □ □ □ |
|---|---|---|

| 请选择: □ 预付货款 Advance Payment | □ 货到付款 Payment Against Delivery | □ 退款 Refund | □ 其他 Others |
|---|---|---|---|

| 交易编码<br>BOP Transac.<br>Code | □□□□□□<br>□□□□□□ | 相应币种及金额<br>Currency & Amount | | 交 易 附 言<br>Transac. Remark | |
|---|---|---|---|---|---|

| 本笔款项是否为报税货物项下付款 | □ 是 □ 否 | 合同号 | | 发 票 号 | |
|---|---|---|---|---|---|
| 外汇局批件号. 备案表号. 业务编号 | | | | | |

| | 银行专用栏<br>For Bank Use Only | | 申 请 人 签 章<br>Applicant's Signature | 银 行 签 章<br>Bank's Signature |
|---|---|---|---|---|
| 购汇汇率<br>Rate | | | 请按照贵行背面所列条款办以上汇款并进行申报<br>Please Effect The Upwards Remittance, Subject To The<br>Conditions Overleaf | |
| 等值人民币<br>RMB Equivalent | | | | |
| 手 续 费<br>Commission | | | | |
| 电 报 费<br>Cable Charges | | | | |
| 合 计<br>Total Charges | | | | |
| 支付费用方式<br>In Payment of<br>the Remittance | □ 现金 by Cash<br>□ 支票 by Check<br>□ 账户 from Account | 申请人姓名<br>Name of Applicant<br>电话<br>Phone No. | | 核准人签字<br>Authorized Person<br>日期<br>Date |
| 核 印 Sig Ver | | 经 办 Maker | | 复 核 Checker |

填写前请详细阅读背面条款及填报说明
Please read the conditions and instructions overleaf before filling in this application



中国银行 BANK OF CHINA

中国银行网上银行电子回单
**BOC Internet Banking Payment Advice**

| 提交日期：2013/12/16<br>Submitting Date | | 交易日期：2013/12/16<br>Transaction Date | 打印日期：2013/12/17<br>Printing Date | |
|---|---|---|---|---|
| 付款人<br>Payer | 付款人<br>Payer | BAOXUEFEI | 收款人<br>Beneficiary | AZOUR LLC |
| | 付款账号<br>Debit A/C No. | 6217856500000772<br>523 | 收款账号<br>Bene A/C No. | 1541414775 |
| | 转出账户地区<br>Region of From Account | 江西 | 转入账户地区<br>Region of To Account | - |
| 金额<br>Amount | 美元（大写）：伍万元整<br>( in uppercase ) | | 美元（小写）：50,000.00<br>( in lowercase ) | |
| 转账批次号<br>Transfer Batch NO. | 1190445070 | | 执行方式<br>Transfer Method | 立即跨行 |
| 网银交易序号<br>Transaction No. | 1708933535 | | | |
| 附言<br>Description | LV YOU | | | |

提示：此回单为账户自行打印，仅供参考，实际交易信息请以银行盖章回单为准！

Notice:The slip is printed by the customer for reference purpose.The receipt affixed with!

中国银行网上银行电子回单
**BOC Internet Banking Payment Advice**

| 提交日期：2014/01/02<br>Submitting Date | | 交易日期：2014/01/02<br>Transaction Date | | 打印日期：2014/01/02<br>Printing Date | |
|---|---|---|---|---|---|
| 付款人<br>Payer | 付款人<br>Payer | BAOXUEFEI | 收款人<br>Beneficiary | 收款人<br>Beneficiary | AZOUR LLC |
| | 付款账号<br>Debit A/C No. | 6217856500000772<br>523 | | 收款账号<br>Bene A/C No. | 1541414775 |
| | 转出账户地区<br>Region of From<br>Account | 江西 | | 转入账户地区<br>Region of To<br>Account | - |
| 金额<br>Amount | 美元（大写）：伍万元整<br>（In uppercase） | | 美元（小写）：50,000.00<br>（In lowercase） | | |
| 特殊批次号<br>Transfer Batch<br>NO. | 1216548510 | | 执行方式<br>Transfer Method | 立即执行 | |
| 网银交易序号<br>Transaction No. | 1744155125 | | | | |
| 附言<br>Description | | | | | |

提示：此回单由客户自行打印，仅供参考，实际交易信息请以银行盖章回单为准！

中国银行 BANK OF CHINA

中国银行网上银行电子回单
BOC Internet Banking Payment Advice

交易日期 : 2014/01/02
Submitting Date

交易日期 : 2014/01/02
Transaction Date

打印日期 : 2014/01/02
Printing Date

| 付款人<br>Payer | | 收款人<br>Beneficiary | | |
|---|---|---|---|---|
| 付款人<br>Payer | FENGBING | 收款人<br>Beneficiary | AZOUR LLC | |
| 付款账号<br>Debit A/C No. | 6217856500000772<br>317 | 收款账号<br>Bene A/C No. | 15414 14775 | |
| 转出账户地区<br>Region of From<br>Account | 江西 | 转入账户地区<br>Region of To<br>Account | - | |
| 金额<br>Amount | 美元（大写）：伍万元整<br>( in uppercase ) | 美元（小写）：50,000.00<br>( in lowercase ) | | |
| 电照批次号<br>Transfer Batch<br>NO. | 1216571434 | 执行方式<br>Transfer Method | 立即执行 | |
| 电银交易序号<br>Transaction No. | 1744197150 | | | |
| 附言<br>Description | | | | |

示：此回单为客户自行打印，仅供参考，实际交易信息请以银行盖章回单为准！

中国银行 BANK OF CHINA

中国银行网上银行电子回单
BOC Internet Banking Payment Advice

| 提交日期：2013/12/17 Submitting Date | 交易日期：2013/12/17 Transaction Date | 打印日期：2013/12/18 Printing Date |
|---|---|---|

| 付款人 Payer | 付款人 Payer | | 收款人 Beneficiary | AZOUR LLC |
|---|---|---|---|---|
| | 付款账号 Debit A/C No. | FENG BING | 收款账号 Bene A/C No. | 1541414775 |
| | 转出账户地区 Region of From Account | 6217856500000772 317 | 转入账户地区 Region of To Account | - |
| | | 江西 | | |
| 金额 Amount | 美元（大写）：伍万元整 (in uppercase) | | 美元（小写）：50,000.00 (in lowercase) | |
| 转账批次号 Transfer Batch NO. | 1191360998 | | 执行方式 Transfer Method | 立即执行 |
| 网银交易序号 Transaction No. | 1710180462 | | | |
| 附言 Description | | | | |

提示：此回单请客户自行打印，仅供参考，实际交易信息请以银行官网回单为准。
Notice:The slip is printed by the customer for reference purpose.The receipt affixed with!

◎ 中 国 银 行 ◎
电子回单专用章

Page 1 of 1

 中国银行
BANK OF CHINA

中国银行网上银行电子回单
BOC Internet Banking Payment Advice

| 提交日期：2013/12/12 Submitting Date | | 交易日期：2013/12/12 Transaction Date | | 打印日期：2013/12/12 Printing Date | |
|---|---|---|---|---|---|
| 付款人 Payer | 付款人 Payer | HERENFEI | 收款人 Beneficiary | 收款人 Beneficiary | AZOUR LLC |
| | 付款账号 Debit A/C No. | 6217656500000809 473 | | 收款账号 Bene A/C No. | 1541414775 |
| | 转出账户地区 Region of From Account | 江西 | | 转入账户地区 Region of To Account | · |
| 金额 Amount | 美元（大写）：伍万元整 (in uppercase) | | | 美元（小写）：50,000.00 (in lowercase) | |
| 转账批次号 Transfer Batch NO. | 1184616490 | | 执行方式 Transfer Method | 立即执行 | |
| 网银交易序号 Transaction No. | 1701338375 | | | | |
| 附言 Description | YIN SI LV YOU | | | | |

提示：此回单为客户自行打印，仅供参考，实际交易信息请以银行正规回单为准！
Notice:The slip is printed by the customer for reference purpose.The receipt affixed with!

打印    关闭

中国银行
BANK OF CHINA

中国银行网上银行电子回单
BOC Internet Banking Payment Advice

| | | | | | |
|---|---|---|---|---|---|
| 提交日期：2014/01/02<br>Submitting Date | | 交易日期：2014/01/02<br>Transaction Date | | 打印日期：2014/01/02<br>Printing Date | |
| 付款人<br>Payer | 付款人<br>Payer | | 收款人<br>Beneficiary | 收款人<br>Beneficiary | AZOUR LLC |
| | 付款账号<br>Debit A/C No. | HERENFEI | | 收款账号<br>Bene A/C No. | 1541414775 |
| | | 6217856500000809<br>473 | | | |
| | 转出账户地区<br>Region of From<br>Account | 江西 | | 转入账户地区<br>Region of To<br>Account | - |
| 金额<br>Amount | 美元（大写）：(伍万元整)<br>( in uppercase ) | | 美元（小写）：50,000.00<br>( in lowercase ) | | |
| 转账批次号<br>Transfer Batch<br>NO. | 1216433303 | | 执行方式<br>Transfer Method | 立即执行 | |
| 网银交易序号<br>Transaction No. | 1743988761 | | | | |
| 附言<br>Description | | | | | |

提示：此回单为客户自行打印，仅供参考，实际交易信息请以银行盖章回单为准。

 中国银行 中国银行网上银行电子回单
BANK OF CHINA BOC Internet Banking Payment Advice

| 提交日期: 2013/12/10 Submitting Date | 交易日期: 2013/12/10 Transaction Data | 打印日期: 2013/12/10 Printing Date |
| --- | --- | --- |

| 付款人 Payer | 付款人 Payer | ZHENG KEQIANG | 收款人 Beneficiary | 收款人 Beneficiary | AZOUR LLC |
| --- | --- | --- | --- | --- | --- |
| | 付款账号 Debit A/C No. | 6217005500004212 231 | Beneficiary | 收款账号 Bene A/C No | 1541414775 |
| | 转出账户地区 Region of From Account | 江西 | | 转入账户地区 Region of To Account | - |
| 金额 Amount | 美元（大写）: 伍万元整 (In uppercase) | | | 美元（小写）: 50,000.00 (In lowercase) | |
| 转账批次号 Transfer Batch NO. | 1181005966 | | 执行方式 Transfer Method | 立即执行 | |
| 网银交易序号 Transaction No. | 1696357260 | | | | |
| 附言 Description | YIN SI LV.YOU | | | | |

提示：此回单为客户自行打印，仅供参考，实际交易信息请以银行后台回单为准！
Notice:The slip is ponted by the customer for reference purpose.The receipt affixed with!

打印   关闭

借记通知

致尊敬的客户：
　　贵司/您的账户已被扣划，详情如下：

招商银行
CHINA MERCHANTS BANK
日期：2013/12/10

业务类型： 汇款接单（个人网银）
客户号：7910D100895
名　称：王昌兰

我行业务编号： 7910R13005233
相关编号：
客户申请号：

地　址：西湖区慧园街1号2单元102室

扣账账号： 6225BD7910144314
扣账金额： USD*********50,000.00
起息日： 2013/12/10

收款人：JOSEPH J. MAROUN

收款银行：

收款人账号：1541414775
备　注：

第2次打印 请避免重复

20131210 154209

招商银行股份有限公司
CHINA MERCHANTS BANK CO.,LTD

A-049

# Mail-transfer Voucher of Bank of Beijing (receipt) 1

No.:03114528

Date of entrustment: Dec. 11, 2013

| Remitter | Full name | Bao Xiaofang | | Receiver | Full name | |
|---|---|---|---|---|---|---|
| | Account No. | 422160372500875 | | | Account No. | |
| | Place of remitting | Nanchang, Jiangxi Province | | | Place of receiving | of |
| Name of remitting bank | | Hongpu Mansion Branch of Bank of Beijing | | Name of receiving bank | | |
| Amount | RMB in letters | | | Amount | Fifty thousand US dollars only | |
| | | | | Payment password | | |
| | | | | Additional information and purpose: | | |

Remitter: Bao Xiaofang

Seal of remitting bank:

Hongpu Branch of
Bank of Beijing
Dec. 11, 2013

Re-checked by:

Bookkeeper:

This copy is for Remitter's acknowledgement
by the remitting bank.



# EXHIBIT H

**VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

# BUSINESS LEASE & SALE OF BUSINESS AGREEMENT

STATE OF CALIFORNIA

This agreement is made on February 9, 2017, between both "Business Lessees" and "Buyers" Hong Sok and Jeff Ottoveggio residing at 1774 41st Avenue, San Francisco, California 94122 and 810 Columbia Circle, Redwood City, California, 94065, respectively, and "Business Lessor" and "Seller" Azour LLC., who's entity address is at 34231 Perry Glen Terrace Union City, California 94587.

## ARTICLE I
## BUSINESS LEASE AGREEMENT

Effective on March 1, 2017, Business Lessors convey the right to Business Lessees to perform the day-to-day operations and management of the The Posh Bagel in Mountain View located at 1040 Grant Road #185, Mountain View, California 94040 and The Posh Bagel in Castro Valley located at 20665 Rustic Drive, Castro Valley 94546.

Business Lessees will have complete discretion, including, but not limited to, managing, operating, staffing and modifying menu items, its offerings and pricing, at any time as necessary to effectively operate the businesses.

Business Lessees will have the right to hire or terminate any staff as needed, and/or, terminate any existing Azour employees at any employment level, including management.

## ARTICLE II
## PAYMENT AMOUNT FOR BUSINESS LEASE

Effective on March 1, 2017, Business Lessees agree to commence monthly business lease payments of $14,000.00 (Fourteen thousand dollars) to Business Lessor for a period of 36 consecutive months, totaling a 3 year business lease period.  Business Lessees final business lease payment is February 1, 2020 and the business lease will conclude.  See attached SCHEDULE A.

## ARTICLE III
## TERMS OF BUSINESS LEASE

Effective March 1, 2017, Business Lessees will be responsible for all ingredients, labor, payroll, sales tax, personal property tax, local, state and federal tax for the aforementioned Posh Bagel retail businesses.  Business Lessees will pay these amounts direct to the appropriate vendors, companies and agencies.  Business Lessees also agree to make monthly rent payments direct to Azour, LLC., in the same amount as Azour LLC's monthly rent amount as specified in their original lease contract.

Seller/Lessor _____
Buyer/Lessee _____
Buyer/Lessee _____

Page 1 of 6

Business Lessor agrees to maintain and pay for permits, payments of rent, insurance, utilities, garbage, water, internet, phone/tv, for the businesses through the Business Lessees final business lease payment date of February 1, 2020.

Business Lessees agree to reimburse Azour LLC., by the 15th of every month, for Azour LLC's cost to maintain such permits, insurance, utilities, garbage, water, internet, phone, tv, through the Business Lessees final lease date of February 1, 2020.

## ARTICLE IV
### PURCHASE AND SALE OF BUSINESS

1.01. In consideration of the mutual promises and conditions contained in this agreement, Seller agrees to sell to Buyers, and Buyers agree to purchase from Seller, on the terms, conditions, warranties and representations set forth in this Agreement:

(a) The businesses owned by Seller, being conducted as "The Posh Bagel", located at 1040 Grant Road #185, Mountain View, California 94040 and, "The Posh Bagel" in Castro Valley located at 20665 Rustic Drive, Castro Valley 94546.

## ARTICLE V
### AMOUNT OF PURCHASE PRICE

2.01. The total purchase price to be paid by Buyer to Seller for all of the equipment, assets and rights of the Businesses described in this Agreement ("Purchase Price") shall be $46,000.00.

## ARTICLE VI
### PAYMENT OF PURCHASE PRICE

3.01. The total Purchase Price shall be paid as follows ;

On February 1, 2020, Buyers will issue a cashier's check to Seller in the amount of $46,000.00.  As such, on February 1, 2020, Buyers will assume complete possession and ownership of both stores.

## ARTICLE VII
### TERMS OF SALE

The sale of both businesses includes all rights to the name "The Posh Bagel", all signage, all equipment, fixtures, utensils, refrigeration, cleaning supplies, registers, tables, chairs, menu boards, all inventory, including any and all, components in existence to operate the stores, etc.

On February 1, 2020, Seller will transfer the all leases to Buyers, with the effective date of February 1, 2020, and at the same cost options granted to Seller.

Seller/Lessor
Buyer/Lessee
Buyer/Lessee

Seller agrees to transfer all permits, insurance, utilities, garbage, water, internet, phone and tv, to Buyers with the effective transfer date of February 1, 2020.

## ARTICLE VIII
## REPRESENTATIONS, WARRANTIES, COVENANTS AND AGREEMENTS BY SELLER

4.01. Seller agrees and warrants and represents to Buyers that:

(a) Seller is the lawful owner of this Business and has good right and due authorization to sell it. At the time of signing this Agreement, Seller neither knows nor has reason to know of the existence of any outstanding claim or title, or interest, or lien in, to, or on this Business;

(b) Seller owes no obligations and has contracted no liabilities affecting this Business or which might affect the consummation of the purchase and sale described in this Agreement that are not shown on the financial records inspected by Buyers.

(c) There are no taxes due and owing on account of Seller's operation of the Business for unemployment compensation, withholding tax, social security tax, sales tax, personal property tax, franchise tax, income tax, and other taxes of any nature;

(c) No litigation, actions or proceedings, legal, equitable, administrative, through arbitration or otherwise, including but not limited to lawsuits, claims or disputes with employees, customers and vendors, etc., are pending or threatened that might affect this Business, the assets being purchased, or the consummation of the purchase and sale described in this Agreement;

## ARTICLE IX
## REPRESENTATIONS, WARRANTIES AND AGREEMENTS BY BUYER

5.01. Buyers agree and warrant and represent to Seller that Buyers will duly notify all authorities, suppliers, creditors, and/or other entities that Buyers are to be responsible for all liabilities associated with the operation of the Business, including without limitation withholding taxes, social security taxes, unemployment contributions, salaries, and purchases incurred after the Closing, and Buyers specifically agree to assume such liabilities as of February 1, 2020.

## ARTICLE X
## COMPLIANCE WITH BULK SALES LAW

6.01  A list of all outstanding creditors will be provided to Buyers.

6.02. By reason of this list Seller and Buyers agree that notice to creditors under the Bulk Sales law of California will not be required and need not be given except in respect to any creditors named on this list.

6.03. Any such debt, unless otherwise provided for in this Agreement, is to be paid solely by buyer and buyer does indemnify and hold seller harmless from any and all loss, expense, damage or liability, including counsel fees, that Seller  may incur or become subject to by reason of noncompliance with the Bulk Sales law.

Seller/Lessor
Buyer/Lessee
Buyer/Lessee

Page 3 of 6

## ARTICLE XI
## TRADE NAME, TELEPHONE NUMBER AND POST OFFICE BOX

7.01. Seller assigns to Buyers the right to use the trade or business name and Seller agrees not to use, or authorize others to use, this name or a similar name in the State of California.

## ARTICLE XII
## INDEMNIFICATION OF SELLER

10.01. Buyers will indemnify and hold Seller and the property of Seller free and harmless from any and all claims, losses, damages, injuries and liabilities arising from all matters that were in the direct control or negligence of Buyers in connection with the operation of the Business after March 1, 2017.

## ARTICLE XIII
## DEFAULT

12.01. After execution of this Agreement by the parties, default shall consist in the failure of either party to perform its respective obligations and duties and/or a breach of a warranty or covenant in this agreement.

12.02. If at anytime Buyers default on a scheduled payment by more than 60 days after the payment date outlined in SCHEDULE A, interest at a rate of 1.5% will accrue on a monthly basis. If Buyers default on a scheduled payment for 6 consecutive payments, Seller has the right to repossess the businesses and not refund any of Buyers' deposit payments paid to date.

## ARTICLE XIV.
## COSTS AND EXPENSES

13.01. All costs and expenses incurred in finalizing the purchase and sale described in this Agreement in the manner prescribed by this Agreement shall be paid by:

(a) Buyers and Seller equally;

(b) Either party has the right to retain or consult with an attorney to review this agreement, each party shall bear their own costs. If both parties choose not to seek advice of an attorney, this agreement shall be binding to the both parties.

## ARTICLE XV
## GENERAL AND ADMINISTRATIVE PROVISIONS

14.01. Parties Bound. This Agreement shall be binding upon and inure to the benefit of the Parties to this Agreement and their respective heirs, executors, administrators, legal representatives, successors and assigns.

14.02. Corporate Authority. If any party to this Agreement is a legal entity (partnership, corporation and/or trust), such party represents to the other that this Agreement, the transaction contemplated in this Agreement, and the execution and delivery hereof, have been duly authorized by all necessary partnership, corporate or trust proceedings and actions, including without limitation the action on the part of the directors, if the party is a corporation.

Seller/Lessor
Buyer/Lessee
Buyer/Lessee

Page 4 of 6

14.03. Use of Pronouns. The use of the neuter singular pronoun to refer to the Seller, Buyers, Operators, Lessor, Lesseess or parties described in this Agreement shall be deemed a proper reference even though the parties may be an individual, a partnership, a corporation, or group of two or more individuals, partnerships or corporations. The necessary grammatical changes required to make the provisions of this Agreement apply in the plural sense where there is more then one party to this Agreement, and to either corporations, partnerships or individuals, males or females, shall in all instances be assumed as though in each case fully expressed.

14.04. California Law. This Agreement shall be subject to and governed by the laws of the State of California.

14.05. Severability. If any provision of this Agreement should, for any reason, be held violative of any applicable law, and so much of this Agreement be held unenforceable, then the invalidity of such a specific provision in this Agreement shall not be held to invalidate any other provisions in this Agreement, which other provisions shall remain in full force and effect unless removal of the invalid provisions destroys the legitimate purposes of this Agreement, in which event this Agreement shall be canceled.

14.06. Entire Agreement. This Agreement represents the entire understanding of the parties hereto. There are no oral agreements, understandings, or representations made by any party to this Agreement that are outside of this Agreement and are not expressly stated in it.

14.07. Notices. All notices or other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be considered as properly given if mailed from within the United States by first class mail, postage prepaid, and addressed as follows:

For Lessor / Seller:          Azour, LLC.
                              34231 Perry Glen Terrace
                              Union City, California 94587

For Lessees / Buyers :

                              Hong Sok
                              1774 41st Avenue
                              San Francisco, California 94122

                              Jeff Ottoveggio
                              810 Columbia Circle
                              Redwood City, California, 94065,

Seller/Lessor
Buyer/Lessee
Buyer/Lessee

Page 5 of 6

A party may change the address for notice by giving of such change to the other party in writing.


SIGNED, ACCEPTED, AND AGREED TO on Thursday, February 2, 2017 by the undersigned parties, who acknowledge that they have read and understand this Agreement and the Attachments and Schedules to it and they execute this legal document voluntarily and of their own free will.


Respectfully submitted,


LESSOR / SELLER:     _A2OUR LLC_

BY:                          _____


LESSESS / BUYER:     _____

BY:                          _JEFF OTTOJEGGIO_


LESSES / BUYER:      _____

BY:                          _Hong Sok_


Seller/Lessor
Buyer/Lessee
Buyer/Lessee


Page 6 of 6

# EXHIBIT I

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

# Cancellation of November 13, 2013 Purchase Agreement

This agreement is effective as of the date signed below. The purpose of this agreement is to cancel, void, and nullify the November 13, 2013 Purchase Agreement.

WHEREAS, Joseph M. Maroun ("JMM") and Joseph J. Maroun ("JJM") no longer wish to purchase any additional membership interest in Azour, LLC, a California Limited Liability Company (the "Company"):

WHEREAS, Zheng Ran ("ZR") no longer wishes to sell her ownership interest in the Company;

NOW, THEREFORE, the parties agree to cancel, void, and nullify the prior agreement they entered into on November 13, 2013, with the following effect:

1.  ZR will continue to own and hold her 50% interest in the Company.
2.  JMM and JJM will continue to manage the Company as before.

The parties also agree as follows:

3.  This agreement shall be governed by, and construed under, the laws of the State of California, without regard to the laws of the State of California regarding conflict of laws.

4.  All parties to this agreement consent to the exclusive jurisdiction of the state and federal courts in California in any action on a claim arising out of, under or in connection with this agreement.

5.  This agreement shall be binding on and inure to the benefit of the parties, their respective successors, and assigns.

6.  This agreement may not be amended or modified except in writing signed by the parties.

Z.R.

2017. 1.18. **Scanned by CamScanner**

IN WITNESS WHEREOF, each of the undersigned, intending to be legally bound hereby, has duly executed this agreement below:

ZHENG RAN        Date:

JOSEPH M. MAROUN, Date:

JOSEPH J. MAROUN, Date:

Scanned by CamScanner